1

2

3

4

5

6

7

8

9

10

11

12

United States District Court<br>Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RJ,<br><br>        Plaintiff,<br><br>    v.<br><br>CIGNA BEHAVIORAL HEALTH, INC., et al.,<br><br>        Defendants. | Case No.  5:20-cv-02255-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 32, 33 |

In this putative class action suit, Plaintiff "RJ," as the representative of her beneficiary son, SJ, challenges Defendant Cigna Behavioral Health, Inc.'s ("Cigna") alleged failure to reimburse covered mental health provider claims at the usual, customary, and reasonable ("UCR") rates. Presently before the Court are two motions to dismiss; one brought by Cigna and a separate motion brought by Defendant Viant, Inc. ("Viant"). Dkt. Nos. 32-33, respectively. Plaintiff filed oppositions (Dkt. Nos. 40-41) and Defendant filed replies (Dkt. Nos. 42-43). The Court finds it appropriate to take the motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, Defendants' motions will be granted in part and denied in part.

**I.      BACKGROUND[1]**

SJ is a member of a Cigna-administered employee benefit plan ("Plan") of which he is a beneficiary. Compl. ¶ 32. The Plan is funded by Plaintiff's employer and is governed by the

---

[1] The Background is a brief summary of the allegations in the Class Action Complaint. *See* Dkt. No. 1.

United States District Court
Northern District of California

1   Employee Retirement Income Security Act of 1974 ("ERISA"). *Id*. SJ sought treatment for

2   behavioral health disorders, including for mental health and substance use disorders, from Summit

3   Estate, Inc. ("Summit Estate"), a licensed and accredited treatment provider. *Id*. ¶ 173. The

4   healthcare provider contacted Cigna to verify out-of-network ("OON") benefits and was told that

5   benefits were paid at 70% of UCR rates until Plaintiff's out of pocket cost sharing responsibilities

6   were met, and thereafter benefits were paid at UCR rates calculated according to the "MRC-1

7   methodology." *Id*. ¶¶ 34, 174. "[B]ased upon Summit Estate's prior dealings with Cigna and upon

8   the representations made on the phone call and on the plain language of Plaintiff's employer

9   benefit plan, it was understood by all parties that 100% of MRC-1 was equivalent to 100% of the

10  billed charges of Summit Estate." *Id*. ¶ 175.[2] Based on Cigna's representations "and with an

11  understanding of the plain terms of the employer benefit plan," SJ and his IOP provider contracted

12  for SJ to receive treatment. *Id*. ¶¶ 37, 176. This contract obligated SJ to pay for any portion of the

13  bills for services not paid by Cigna. *Id*. ¶ 35.

14          Notwithstanding Cigna's representations, Cigna sent every claim at issue in the case to

15  Viant for repricing. *Id*. ¶ 42. Viant purported to offer payments at UCR rates, but in reality, the

16  amount offered bore no relationship to UCR rates as that term is defined in SJ's Cigna policy. *Id*.

17  ¶¶ 42-45. Viant offered essentially the same flat, lower rate that it offers across the entire country.

18  *Id*. ¶ 46. This rate is the "product of a secret, proprietary, database and/or pricing method." *Id*. ¶

19  52. For every dollar Viant "save[d]" Cigna, Viant received a kick-back. *Id*. ¶ 47.

20          Cigna never told Plaintiff, SJ or his IOP provider that claims were subject to third party

21  repricing until after SJ and his IOP provider entered into a contract for treatment. *Id*. ¶ 51. SJ does

22  not have any agreement with Viant that would permit Viant to negotiate with providers on his

23  behalf. *Id*. ¶ 42. As a result of Cigna's and Viant's actions, Cigna allowed only $6,225.12 of the

---

[2] Plaintiff alleges generally that healthcare providers ask and are told by Cigna that no prior authorization was required prior to rendering intensive outpatient treatment ("IOP") services, and that claims for IOP services were not subject to third-party repricing by Viant. *Id*. ¶ 34. However, it is unclear whether Summit Estate specifically asked and received this information from Cigna.

United States District Court
Northern District of California

1    $51,175.00 billed for IOP services (or 12% of billed charges). *Id*. ¶ 178. SJ was left responsible

2    for the balance. *Id*. ¶ 179. SJ paid the amount owing on the balance bill directly to his provider. *Id*.

3    ¶ 102. Cigna did not issue an "adverse benefit determination" in an Explanation of Benefits

4    ("EOB") letter, and consequently SJ is unable to appeal the underpayment under ERISA. *Id.* ¶¶

5    62-64.

6           Plaintiff asserts the following claims on behalf of SJ: (1) violations of RICO, 18 U.S.C. §

7    1962(c) against both Defendants; (2) underpayment of benefits in violation of ERISA §

8    502(a)(l)(B) against Cigna; (3) breach of plan provisions in violation of ERISA § 502(a)(1)(B)

9    against Cigna; (4) failure to provide accurate materials and a request for declaratory and injunctive

10   relief against Cigna in violation of ERISA § 502(c); (5) violation of fiduciary duties of loyalty and

11   duty of care under ERISA § 502(a)(3) and a request for declaratory and injunctive relief against

12   Cigna; (6) violation of fiduciary duty of full and fair review under ERISA § 502(a)(3) and a

13   request for declaratory and injunctive relief against Cigna; (7) declaratory and injunctive relief

14   pursuant to ERISA § 502(a)(3) against both Defendants; and for (8) "Other Appropriate Equitable

15   Relief" against both Defendants under ERISA § 502(a)(3). *Id*. ¶¶ 193-295.

16   **II.    STANDARDS**

17          Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

18   specificity "to give the defendant fair notice of what the . . . claim is and the grounds upon which

19   it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

20   A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

21   upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

22          To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient

23   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

24   *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). A claim has facial

25   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

26   inference that the defendant is liable for the misconduct alleged. *Id.*

27

28   Case No.: 5:20-cv-02255-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

1    In evaluating the complaint, the court must generally accept as true all "well-pleaded

2    factual allegations." *Iqbal*, 556 U.S. at 664. The court must also construe the alleged facts in the

3    light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bhd. Of Carpenters &*

4    *Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (the court must "draw all reasonable inferences

5    in favor of the nonmoving party" for a Rule 12(b)(6) motion). The court, however, "does not have

6    to accept as true conclusory allegations in a complaint or legal claims asserted in the form of

7    factual allegations." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150-51 (9th Cir. 2016) (citing *Bell*

8    *Atl. Corp.*, 550 U.S. at 555-56); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

9    (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory,

10   unwarranted deductions of fact, or unreasonable inferences.").

11   **III.   DISCUSSION**

12   Cigna argues that the Complaint should be dismissed in its entirety. Specifically, Cigna

13   contends that (1) as to the second claim for underpayment of benefits and third claim for breach of

14   plan provisions, Plaintiff does not identify any terms in her ERISA Plan that required Cigna to pay

15   Summit Estate's claim at 100% of the billed charges, and in fact, the Plan does not require Cigna

16   to pay at that rate; (2) the fourth claim for failure to provide accurate materials cannot be

17   maintained against Cigna because Cigna is not the plan administrator; (3) the fifth claim for

18   violation for fiduciary duties is duplicative; (4) the sixth claim for violation of fiduciary duties is

19   duplicative, cannot be asserted against Cigna because Cigna is not the Plan, and Plaintiff cannot

20   show entitlement to 100% of the billed charges; (5) the seventh and eighth claims are duplicative;

21   and (6) the RICO claim fails because Plaintiff does not plausibly allege an association-in-fact

22   enterprise and predicate acts.

23   Viant seeks dismissal of the three claims pled against it, namely the RICO claim and the

24   seventh and eighth claims for equitable relief. Viant contends that all three claims sound in fraud

25   and are subject to dismissal for failure to plead fraud with the requisite particularity required under

26   Federal Rule of Civil Procedure 9(b). As to the RICO claim, Viant argues that Plaintiff fails to

27   Case No.: 5:20-cv-02255-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS
     4

United States District Court
Northern District of California

1   allege with particularity a pattern of racketeering activity and an association-in-fact enterprise.

2           **A.**     **ERISA CLAIMS**

3                    **1.**     **Second and Third Claims**

4          In the second and third claims, Plaintiff seeks unpaid benefits pursuant to ERISA §

5   502(a)(1)(B), 29 U.S.C. § 1132(a)(l)(B) equal to 100% of billed charges. Compl. ¶¶ 174-5, 252,

6   261. To state a claim under Section 502(a)(1)(B), "a plaintiff must allege facts that establish the

7   existence of an ERISA plan as well as the provisions of the plan that entitle it to benefits." *Almont*

8   *Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal.

9   2015) (citation and internal quotation marks omitted).

10          Here, Plaintiff does not point to any particular provision or term in the Plan that requires

11   Cigna to reimburse for IOP services at UCR rates or at 100% of billed charges. Accordingly,

12   Cigna contends that the Plaintiff's second and third claims for benefits under the Plan are subject

13   to dismissal. In *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, the court dismissed a

14   claim for benefits because the plaintiff merely alleged it "believe[d]" most of its 106 patients had

15   ERISA plans. 2019 WL 6329645, at *2 (C.D. Cal. Sept. 24, 2019); *see also Simi Surgery Ctr., Inc.*

16   *v. Conn. Gen. Life Ins. Co.*, 2018 WL 6332285, at *3 (C.D. Cal. Jan. 4, 2018) (dismissing

17   assignee's claim for benefits under 173 purported ERISA plans for, among other things, failure to

18   identify "the plan terms that allegedly entitle [plaintiff] to benefits"). In *Glendale Outpatient*

19   *Surgery Ctr. ("GOSC") v. United Healthcare Servs.*, the Ninth Circuit affirmed dismissal of

20   plaintiff's ERISA claim because the complaint failed to identify "(i) any ERISA plan, apart from

21   vague references to anonymous patients who allegedly assigned rights to GOSC; or (ii) any plan

22   terms that specify benefits that the defendants were obligated to pay but failed to pay." 805 Fed.

23   App'x 530, 2020 WL 2537317, at *1 (9th Cir. May 19, 2020). The Ninth Circuit also observed

24   that the pleading deficiencies "[we]re exacerbated by GOSC's decision to lump 44 separate events

25   — presumably involving distinct ERISA plans, coverage provisions, medical procedures, and

26   insurer communications — into a single set of generalized allegations." *Id*.

27   Case No.: 5:20-cv-02255-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1           Unlike in *Bristol* and *GOSC*, the Complaint here is based on more than a belief and

2    includes  factual allegations to support Plaintiff's claims. Plaintiff identifies her Plan and alleges

3    unequivocally that her Plan is governed by ERISA and that SJ is a beneficiary of that Plan. Compl.

4    ¶ 32. Further, Plaintiff alleges that "SJ's insurance plan was an MRC I plan." *Id.* ¶ 22. Plaintiff

5    alleges that SJ's healthcare provider contacted Cigna for verification of benefits (*id*. ¶ 34, 174);

6    Cigna represented it would reimburse the claims at issue at UCR rates (*id*. ¶ 21), and that after

7    Plaintiff reached the out of pocket maximum, Cigna "would pay according to MRC-1

8    methodology which translates to 100% of billed charges" (*id*. ¶ 174). These allegations are

9    sufficient to plead not only the existence of an ERISA plan but also a Plan provision requiring

10   Cigna to pay benefits calculated according to the MRC-1 methodology. *See, e.g., Forest*

11   *Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724, at *5 (N.D.

12   Cal. July 13, 2011) ("To state a claim under [Section 502(a)(1)(B)], a plaintiff must allege facts

13   that establish the existence of an ERISA plan as well as the provisions of the plan that entitle

14   [him] to benefits."); *see also Reiten v. Blue Cross of Cal.*, 2020 WL 1032371, at *2 (C.D. Cal. Jan.

15   23, 2020) (same). Although Plaintiff does not cite to a specific Plan term or provision by page or

16   paragraph, that level of detail is not required at the pleading stage. *See Forest Ambulatory*, 2011

17   WL 2748724, at *5 ("Although the allegations in the complaint do not need to describe a given

18   plan in detail, such as to identify each plan's policy number, the allegations must be sufficient to

19   raise the existence of an ERISA plan above [a] speculative level.") (quoting *In re Managed Care*

20   *Litig.*, 2009 WL 742678,  at *3 (S.D. Fla. Mar. 20, 2009)).

21          Further, Plaintiff alleges that Cigna "reported, in both plan language and on telephonic

22   verification of benefits, that it would reimburse patients and/or their assignees at the UCR for

23   MRC I policies." Compl. ¶ 10. The Complaint also alleges that "based upon Summit Estate's prior

24   dealings with Cigna and upon the representations made on the phone call and on the plain

25   language of RJ's employer benefit plan, it was understood by all parties that 100% of MRC-1 was

26

27   Case No.: 5:20-cv-02255-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS
                                              6

*United States District Court*
*Northern District of California*

1   equivalent to 100% of the billed charges of Summit Estate." *Id.* ¶ 175.[3] Plaintiff's allegations are

2   sufficient to give rise to a "reasonable inference [that Cigna] is liable" for medical care covered by

3   the terms of [an] ERISA plan[]" at UCR rates calculated under the MRC I methodology. *See*

4   *Glendale*, 805 Fed. Appx. at 531.[4]

5          Cigna insists that Plaintiff's claims for benefits must be dismissed because Plaintiff fails to

6   allege that Cigna "paid less than her plan's MRC amount on her son's claims." Reply at 1. The

7   Court disagrees. Plaintiff alleges that "SJ has been denied the full benefits available under the

8   Intuit benefit plan." Compl. ¶ 179. This allegation, coupled with allegations that the Plan required

9   Cigna to pay benefits at UCR rates calculated under the MRC I methodology, is indistinguishable

10  from "an allegation that Cigna paid less than her plan's MRC amount on her son's claims."

11         In its Reply, Cigna argues that it did in fact, pay Summit Estate the MRC, as evidenced by

12  a revised EOB that Cigna filed with its brief. Reply at 2, 4. In particular, Cigna highlights a

13  notation on the revised EOB stating, "THIS IS A CORRECTION OF A PREVIOUSLY

14  PROCESSED CLAIM. . . . YOUR PLAN COVERS OUT OF NETWORK SERVICES TO A

15  MAXIMUM REIMBURSABLE AMOUNT." *Id.* at 3. Cigna asks that the Court take judicial

16  notice of this revised EOB because EOBs are referenced in the Complaint. *Id.*

17         As a general rule, a district court may not consider material beyond the pleadings in ruling

18  on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). One

19  exception to this general rule is the incorporation-by-reference doctrine relied upon by Cigna.

20  Thus, the court may consider the revised EOB. *IV Solutions, Inc. v. PacifiCare Life and Health*

21

22  _____

23  [3] In her Opposition brief, Plaintiff argues that Cigna should have used the FAIR Health database to
    calculate pricing. This allegation does not appear in the Complaint and will not be considered. *See*

24  *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1009 (N.D. Cal. 2015) ("In determining the propriety
    of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving

25  papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (quoting
    *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (emphasis in original)).

26
    [4] Moreover, Cigna attached Plaintiff's Plan to its motion to dismiss. Dkt. No. 32-2. Thus, Cigna is
27  well aware of Plaintiff's Plan and the MRC provision stated therein.
    Case No.: 5:20-cv-02255-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
    DISMISS

United States District Court
Northern District of California

1    *Insur. Co.*, 2006 WL 7888009, at \*4 (C.D. Cal. Dec. 19, 2016). However, the incorporation-by-

2    reference doctrine does not permit the court to accept the truth of the matters stated in the revised

3    EOB. *In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at \*3 n.2  (N.D. Cal. Sept. 15, 2014)

4    (considering documents incorporated by reference, but not for the truth of the matters stated

5    therein); *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052 (C.D. Cal. 2012) (court may

6    consider contents of documents under the doctrine of incorporation by reference, but "will not

7    consider these documents for the truth of the matters they assert."). Thus, at the pleading stage,

8    Cigna cannot rely on the notation in the revised EOB to prove it properly paid benefits calculated

9    using the MRC methodology.

10          Cigna's motion to dismiss the second and third claims for benefits is denied.

11                    **2.        Fourth Claim Under ERISA § 502(c)**

12          In the fourth claim, Plaintiff alleges that Cigna failed to fulfill its obligation to furnish

13    accurate materials summarizing its group health plans, known as SPD materials, under 29 U.S.C. §

14    1022, and failed to supply accurate EOBs, SPDs and other required information under 29 U.S.C. §

15    1132(c). Compl. ¶ 263. Cigna contends that the claim fails because a §502 claim can only be

16    maintained against the plan administrator, and Cigna is the claims administrator, not the plan

17    administrator.

18          ERISA § 502(c) imposes plan disclosure obligations only on the designated plan

19    administrator, *i.e.*, "the person specifically so designated by the terms of the instrument under

20    which the plan is operated." 29 U.S.C. § 1002(16)(A); *Vaught v. Scottsdale Healthcare Corp.*

21    *Health Plan*, 546 F.3d 620, 633 (9th Cir. 2008) ("only the plan 'administrator' can be held liable

22    for failing to comply with the reporting and disclosure requirements"). Here, the person designated

23    as plan administrator is Intuit. Decl. of William P. Donovan, Jr. Ex. 1, at 51 (the "Plan

24    Administrator" is the "Employer named above," *i.e.*, "Intuit Inc."), Dkt. No. 32-2. Implicitly

25    recognizing that Cigna is not the plan administrator, Plaintiff alleges that "[f]or ERISA Plans that

26    are self-funded, but do not specifically designate a Plan Administrator, Cigna functions as the de

27    Case No.: 5:20-cv-02255-EJD

28    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
      DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    facto Plan Administrator." Compl. ¶ 98. This allegation does not cure the defect in Plaintiff's

2    claim because the Ninth Circuit has rejected the "de facto" theory. *See e.g.*, *Bush v. Liberty Life*

3    *Assurance Co. of Bos.*, 77 F. Supp. 3d 900, 905 (N.D. Cal. 2015) (citing *Ford v. MCI Commc'ns*

4    *Corp. Health & Welfare Plan*, 399 F.3d 1076, 1081-82 (9th Cir. 2005), *overruled on other*

5    *grounds by Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011)); *see also, e.g.*,

6    *Driscoll v. MetLife Ins.*, 2016 WL 11529805, at *8 (S.D. Cal. May 2, 2016) (citing *Bush*).

7            The fourth claim is dismissed.

8                    **3.        Fifth Claim For Breach of ERISA Fiduciary Duties of Loyalty and Due**
                                **Care**
9

10           The fifth claim is brought under 29 U.S.C. § 1132(a)(3). Compl. ¶ 279. Under section

11   1132(a)(3), a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin

     any act or practice which violates any provision of this subchapter or the terms of the plan, or (B)
12

13   to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any

14   provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Plaintiff alleges

15   that Cigna breached its duties of loyalty and due care "by making out-of-network benefit

16   reductions and adverse benefit determinations that were not authorized by the plan documents and

17   were also misrepresented on EOBs sent to the Plaintiff and the Class, causing Plaintiff and the

     Class to incur, and pay, substantial balance bills at the benefit to Cigna's bottom line." *Id*. ¶ 272.
18

19           Cigna argues that the section 1132(a)(3) claim should be dismissed because "when relief is

20   available under section 1132(a)(1), courts will not allow relief under § 1132(a)(3)'s catch-all

21   provision." Mot. at 10 (quoting *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)). As

     Plaintiff points out, however, the Ninth Circuit has held post-*Johnson* that a plaintiff may pursue
22

23   simultaneous claims under sections 1132(a)(1) and 1132(a)(3). *Moyle v. Liberty Mut. Ret. Benefit*

24   *Plan*, 823 F.3d 948, 959-62 (9th Cir. 2016). The Ninth Circuit explained that allowing a plaintiff

25   to plead both claims (1) comports with the Supreme Court's decisions in *Varity Corp. v. Howe*,

26   516 U.S. 489 (1996) and *Cigna Corp. v. Amara*, 563 U.S. 421 (2011); (2) adheres to Federal Rule

27   of Civil Procedure 8(a)(3), which allows pleading relief in the alternative; and (3) is consistent

     Case No.: 5:20-cv-02255-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS
                                                      9

1    with ERISA's intended purpose of protecting participants' and beneficiaries' interests. *Id*. at 962.

2    Plaintiff may not, however, obtain double *recoveries*. *Id*. at 961.

3         Cigna counters that even under *Moyle*, a plaintiff must allege a distinct theory of injury,

4    citing *Ihde v. United of Omaha Life Ins. Co.*, 2017 WL 5444551, at *8 (D. Colo. Nov. 14, 2017).

5    In *Ihde*, plaintiff asserted a claim for benefits under section 1132(a)(1)(B) and a claim for breach

6    of fiduciary duty under sections 1109(a) and 1132(a)(2). The latter claim was based on an

7    allegation that defendant omitted the insurance plan's name from the Summary Plan Description

8    ("SPD"). The magistrate judge recommended dismissal of plaintiff's section 1132(a)(3) claim,

9    reasoning that plaintiff failed to allege she was harmed by the omission of the plan's name in the

10   SPD, and that she could not "repackage" her claim for benefits under the guise of a breach of

11   fiduciary duty claim.

12        Although Plaintiff's claims for benefits and breach of fiduciary duty overlap substantially,

13   the latter is not just a "repackaging" of the former. In the breach of fiduciary duty claim, Plaintiff

14   seeks injunctive and declaratory relief, as well as removal of Cigna as a fiduciary. Plaintiff alleges

15   that separate and apart from the denial of benefits, Cigna breached its duty as a fiduciary by,

16   among other things, sending EOBs containing misrepresentations, failing to provide accurate

17   information about the methodology applied to calculate UCR rates, and failing to disclose that

18   Cigna would utilize Viant as a repricing agent. Compl. ¶¶ 272, 275-78. Further, unlike in *Ihde*,

19   Plaintiff's breach of fiduciary duty claim may entitle her to equitable relief, separate and apart

20   from an award of benefits.

21        Cigna's motion to dismiss the fifth claim is denied.

22              **4.    Sixth Claim for Failure to Provide "Full and Fair Review"**

23        In the sixth claim, Plaintiff alleges that Cigna failed to comply with its fiduciary duty to

24   provide a "full and fair review" of an "adverse benefit determination" pursuant to 29 U.S.C. §

25   1133. Compl. ¶¶ 280-86. Plaintiff seeks injunctive and declaratory relief to redress the alleged

26   failure to provide a full and fair review. *Id*. ¶ 286.

27   Case No.: 5:20-cv-02255-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

United States District Court
Northern District of California

1    Cigna argues that the sixth claim is subject to dismissal because, among other things, a

2    section 1133 claim can only be asserted against a plan, and Cigna is not the Plan. Plaintiff does not

3    provide any response to this argument. The claim is dismissed. *See Herzfeld v. Teva Pharm. USA,*

4    *Inc. Omnibus Welfare Plan*, 2019 WL 8647729, at *6 (C.D. Cal. Aug. 26, 2019) ("By its plain

5    language, § 1133 . . . impose[s] duties only upon benefit plans.").

6             **5.       Seventh and Eighth Claims for Equitable and Injunctive Relief**

7    Plaintiff asserts the seventh claim for equitable relief under 29 U.S.C. § 1132(a)(3)(A) and

8    the eighth claim for equitable relief under 29 U.S.C. § 1132(a)(3)(B). The claims are asserted

9    against both Defendants. *Id*.

10   Plaintiff does not address these claims in her Opposition to Cigna's motion. Accordingly,

11   the Court will dismiss the seventh and eighth claim as to Cigna.

12   Viant moves to dismiss the seventh and eighth claims on several grounds. First, Viant

13   argues that the Complaint fails to plead facts to establish Viant's fiduciary status or any underlying

14   breach of fiduciary duties. The Court disagrees.

15   Claims under §1132 can only be asserted against a fiduciary as that term is defined in

16   ERISA. *Brown v. Ca. Law Enf't Assoc.*, 81 F. Supp. 3d 930, 934 (N.D. Cal. 2015). A person is a

17   fiduciary with respect to an ERISA plan under three different circumstances:

18   
19   
20   
21   
22
> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

23   
24   29 U.S.C. § 1002(21)(A). Here, the Complaint does not allege that Viant is named as a fiduciary

25   in the Plan. Nor does the Complaint allege that Viant had responsibility or authority over the

26   Plan's management or administration. Nevertheless, Plaintiff argues that Viant had responsibility

27   and authority over Plan assets by virtue of negotiating and repricing patient claims. In *Monterey*

Case No.: 5:20-cv-02255-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

11

United States District Court
Northern District of California

1    *Peninsula Horticulture, Inc. v. Emp. Benefit Mgmt. Servs., Inc.* (hereinafter "*MPH*"), the plaintiff

2    asserted a similar theory of fiduciary liability. 2020 WL 2747846 (N.D. Cal. May 27, 2020). The

3    plaintiff alleged that defendant had authority and control over the plan assets "by determining the

4    amount and recipient of benefit payments," issuing checks and paying approved claims. *Id*. at *3.

5    The *MPH* court held that these allegations plausibly suggested that defendant had control over

6    disposition of plan assets, and therefore denied defendant's motion to dismiss the breach of

7    fiduciary claim.

8          As in *MPH*, Plaintiff alleges that Viant had authority and control over Plan assets. Plaintiff

9    alleges that Viant "determined the reimbursement rate for every underpaid claim in the present

10   litigation." Compl. ¶ 7. Viant counters that other allegations in the compliant show that Viant did

11   not exercise authority or control over Plan assets.  Specifically, Viant points to allegations

12   indicating that Viant could only negotiate and/or reprice benefit claims pursuant to strict pricing

13   terms established by Cigna. *See id*. ¶¶ 53, 112, 116-19, 128.  However, there is nothing in Section

14   1002(21)(A) to suggest that a person or entity with limited control over plan assets cannot be

15   considered a fiduciary. Plaintiff's allegation, although thin, is sufficient at the pleading stage to

16   plausibly suggest that Viant is a fiduciary by virtue of its alleged authority and control over plan

17   assets. *See Josef K. v. California Physicians' Serv.*, 2019 WL 2342245 at *7 (N.D. Cal.)

18   ("'Congress commodiously imposed fiduciary standards on persons whose actions affect the

19   amount of benefits retirement plan participants will receive'. . . . Thus, although fiduciary status

20   does not attach to a party who 'merely perform[s] ministerial duties or processes claims,' a party

21   may qualify as a fiduciary 'if it has the authority to grant, deny, or review denied claims.'"

22   (internal citations omitted)).

23         Viant raises several other grounds for dismissal of the seventh and eighth claims, which the

24   Court finds unnecessary to address at this time. This is because the claims do not meet the basic

25   pleading requirements of Rule 8: to give notice of what the claims are and the grounds upon which

26   they rest.  Plaintiff prefaces each claim by stating, "Plaintiff brings this count . . . only to the

27   Case No.: 5:20-cv-02255-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

United States District Court
Northern District of California

1    extent that the Court finds that injunctive relief sought to remedy Counts III through VI are

2    unavailable." Compl. ¶¶ 288, 295. Although this prefatory language is followed by a smattering of

3    additional allegations, Plaintiff fails to clearly differentiate the seventh and eighth claims from

4    others in the Complaint.

5         The seventh and eighth claims are dismissed as to Viant.

6    **B.    RICO Claim**

7         Defendants raise essentially two challenges to the RICO claim: failure to plead with

8    particularity (1) an association-in-fact enterprise and (2) predicate RICO acts.

9              **1.    Association-in-Fact Enterprise**

10        To plead an association-in-fact enterprise for a RICO claim, "plaintiffs must plead that the

11   enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary

12   to accomplish the purpose." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990,

13   997 (9th Cir. 2014) (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

14        Here, the Complaint describes a contractual relationship between Defendants. Courts have

15   uniformly held that a routine commercial dealing is insufficient to establish RICO liability. *See

16   e.g.*, *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("characterizing routine

17   commercial dealing as a RICO enterprise is not enough"); *Gomez v. Guthy-Renker, LLC*, 2015

18   WL 4270042, at *8 (C.D. Cal. July 13, 2015). Plaintiff relies on *Odom v. Microsoft Corp.*, 486

19   F.3d 541, 543, 545 (9th Cir. 2007), as well as other cases[5], in which the courts found seemingly

20   routine contractual relationships could form the basis of an association-in-fact enterprise. Here,

21   however, Plaintiffs fails to plead with particularity sufficient facts to plausibly show that Cigna

22   and Viant knowingly formed an enterprise to fraudulently underpay claims at below the UCR

23

24   _____

25   [5] *See In re Wells Fargo Ins. Mktg. & Sales Practices Litig.*, 2018 WL 4945541, at *4 (C.D. Cal. June 18, 2018); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 981 (N.D. Cal. 2018); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 942 (N.D. Cal. Apr 25, 2013); *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985 (C.D. Cal. 2008); *Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2013 WL 12114069, at *12 (C.D. Cal. Mar. 12, 2013).

26

27   Case No.: 5:20-cv-02255-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    rates. In an attempt to transform Defendants' commercial dealing into a RICO enterprise, Plaintiff

2    alleges that Defendants' common purpose was to deceive, but there are insufficient facts pled with

3    particularity to plausibly support this theory. Plaintiff alleges that Cigna contracted with Viant to

4    negotiate amounts to pay for OON claims, but does not to explain how this contract shows a

5    common purpose to commit fraud. That the contract includes financial incentives for Viant does

6    not, without more, suggest a common purpose to commit fraud. Plaintiff's characterization of

7    Defendants' contractual relationship as an "alliance" (Compl. at 7), "collusion" (*id*. ¶ 33), "cover-

8    up" (*id.*), and "con" (*id*. ¶ 44), does not transform Defendants' contract into a RICO enterprise

9    without pleading facts to support these characterizations.

10          Plaintiff's RICO claim is therefore subject to dismissal for failure to allege an association-

11   in-fact. *See LD v. United Behavioral Health*, 2020 WL 5074195, at *8 (N.D. Cal. Aug. 26, 2020)

12   (dismissing similar RICO claim against United Behavioral Health and Viant with leave to amend);

13   *see also Stitt v. Citibank, N.A.*, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 F. Appx

14   99, 101 (9th Cir. 2018) (dismissing RICO claim because, among other things, the plaintiffs offered

15   no factual allegations to render plausible their claim that the enterprise members actually knew of

16   the alleged fraudulent common purpose, or that they "formed" the enterprise to participate in that

17   purpose).

18                          **2.      Predicate RICO Acts**

19          Plaintiff's RICO claim is also subject to dismissal for the independent reason that the

20   Complaint fails to allege predicate RICO acts. "To state a claim under § 1962(c)," a plaintiff must

21   also allege "a pattern . . . of racketeering activity." *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th

22   Cir. 2008). "To plead a RICO pattern, at least two predicate acts of racketeering activity need to be

23   alleged." *Synopsis, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1077 (N.D. Cal. 2018)

24   (citation omitted). "Racketeering activity" is defined as "the commission of a predicate act that is

25   one of an enumerated list of federal crimes." *Id*. at 1076. "[W]here RICO is asserted against

26   multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." *In re*

27   Case No.: 5:20-cv-02255-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

United States District Court
Northern District of California

1   *Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012)

2   (emphasis in original); *accord*, *Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, at *5 (N.D.

3   Cal. Apr. 26, 2004).

### a.   Federal Health Offenses

5   The alleged commission of "Federal Health offenses" (Compl. ¶ 197), as defined by 18

6   U.S.C. § 24, are not among the statutory list of predicate acts that can constitute racketeering

7   under 18 U.S.C. § 1961(1), and Plaintiff does not contend otherwise. Instead, Plaintiff's theory is

8   that "laundering of monetary instruments" in violation of 18 U.S.C. § 1956 is listed as a predicate

9   act in § 1961(1); that 18 U.S.C. §1956(c)(7)(F) criminalizes laundering the proceeds of a federal

10  health care offense; and therefore, a Federal health offense can constitute a predicate act of

11  racketeering. This money laundering theory does not appear anywhere in Complaint, and therefore

12  will not be considered. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998))

13  (instructing that a deficient pleading cannot be cured by new allegations raised in a plaintiff's

14  response to a motion to dismiss).

### b.   Mail/Wire Fraud

16  The remaining alleged predicate acts—mail fraud and wire fraud—are among the statutory

17  predicate acts listed in section 1961(1). Mail fraud and wire fraud have four essential elements:

18  "(1) a scheme to defraud, (2) the statements made and facts omitted as part of the scheme were

19  material, (3) use of the wires, or United States mail, in furtherance of the scheme, and (4) a

20  specific intent to deceive or defraud." *United States v. Woody's Trucking, LLC*, 2018 WL 443454,

21  at *2 (D. Mont. Jan. 16, 2018) (citing *United States v. Woods*, 335 F.3d 993, 997–99 (9th Cir.

22  2003)). RICO fraud claims must be pled with particularity in accordance with Federal Rule of

23  Civil Procedure 9(b). *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405

24  (9th Cir. 1991). To satisfy this standard, a plaintiff must allege "the who, what, when, where, and

25  how" of the fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (citation

26  omitted); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (requiring

27  Case No.: 5:20-cv-02255-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
28  DISMISS

1    pleader of RICO fraud claim to allege the time, place and specific content of false representations

2    as well as the identities of the parties to the misrepresentation); *Lancaster*, 940 F.2d at 405

3    (requiring pleader asserting RICO claim with predicate act of mail fraud to allege the time, place

4    and manner of each act of fraud plus the role of each defendant in each scheme).

5           Here, Plaintiff's allegations of mail and wire fraud do not come close to complying with

6    Rule 9(b). The Complaint lacks any specifics as to the who, what, when, where, and how of any

7    particular fraudulent communication. The RICO claim is subject to dismissal based on these

8    deficiencies alone. *See, e.g.*, *Edwards*, 356 F.3d at 1065-66 (affirming dismissal of RICO fraud

9    claim for failure to allege "the time, place, and specific content of the false representations as well

10   as the identities of the parties to the misrepresentation").

11          Further, the Complaint fails to plead with particularity that any alleged misrepresentation

12   was sent over the United States wires or mail (or were communicated by a different means).

13   Plaintiff alleges in only vague and conclusory terms that some communications were transmitted

14   by wire and that "interstate wire facilities" were used. Compl. ¶¶ 210, 228, 232-34. Cigna

15   allegedly made false representations in EOBs, which, in theory, could have been transmitted over

16   interstate wires or mail. *Id*. ¶ 206. But Plaintiff does not identify any particular EOB, much less

17   identify any fraudulent statement within an EOB. These deficiencies are also fatal to Plaintiff's

18   RICO claim. *Saniefar v. Moore*, 2017 WL 5972747, at *10 (E.D. Cal. Dec. 1, 2017) (claim

19   dismissed where no allegation of interstate communication).

20          Plaintiff counters that Rule 9(b) only requires that the elements of mail fraud or wire fraud

21   be pled with particularity, and not the circumstances of the mailed or wired communication, citing

22   *Sebastian Int'l., Inc. v. Russolillo*, 128 F. Supp. 2d 630, 635 (C.D. Cal. 2001). In *Sebastian*, the

23   plaintiff alleged that the defendants received and sold diverted authentic products, as well as

24   distributed and sold counterfeit products. The parties disputed which facts or elements were

25   required to be pled with particularity under Rule 9(b). *Id.* The plaintiff argued that Rule 9(b)

26   "merely require[d] that the elements of mail fraud or wire fraud be pled with specificity," whereas

27   Case No.: 5:20-cv-02255-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

16

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the defendant argued that Rule 9(b) "required a plaintiff to plead the specific falsity in the mailed

2    or wired communications." *Id*. The *Sebastian* court concluded that both parties were right,

3    depending on the circumstances of the fraud alleged, explaining:

4              [t]he mail and wire fraud statutes encompass two types of fraud: those
               in which misrepresentations [are] made, and those in which no
5              misrepresentations are made. [citations] In a case of mail or wire fraud
               that does not involve a misrepresentation of fact, the 'circumstances'
6              [referencing the language of 9(b) ] ... would consist of four elements:
               (1) a scheme to defraud; (2) intent to defraud; (3) reasonable
7              forseeability that the mails (or wires) would be used; and (4) use of
               the mails (or wires) in furtherance of the scheme.
8

9    *Id*. (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Services Co.*, 48 F.3d 1066, 1070 n.6 (9th

10   Cir. 1995)). The *Sebastian* court also quoted from a Seventh Circuit decision to further explain the

11   two types of fraud:

12             We recognize, of course, that a given mailing or wire communication
               need not be fraudulent on its face in order to constitute an act of mail
13             or wire fraud; even innocuous communications can qualify for this
               purpose so long as they are incident to an essential part of the
14             [fraudulent] scheme. [citations] But in this case the plaintiffs rely on
               the mailings and wire communications themselves as the acts of
15             fraud.

16   *Sebastian*, 128 F. Supp. 2d at 635 (quoting *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1330 (7th

17   Cir. 1994)). The *Sebastian* court ultimately held that the plaintiff was not required to plead with

18   particularity the circumstances of the mailed or wired communication because the plaintiff was not

19   relying on mailings and wirings as the acts of fraud; the mailings and wirings were only "incident

20   to an essential part of the scheme" to receive and sell diverted authentic products, and to distribute

21   and sell counterfeit products. *Id*. at 636.

22        Plaintiff in the instant case analogizes to *Sebastian* and argues that she similarly is not

23   relying on any mailings or wirings as the acts of fraud for the RICO claim. Plaintiff instead argues

24   that the RICO scheme in this case "is the creation and use of Outpatient Repricing (OPR) tied to a

25   target price that is not made known to plan sponsors, insured, beneficiaries, and healthcare

26   providers and then paying claims at or below the target price while *representing* to the world that

27   Case No.: 5:20-cv-02255-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

United States District Court
Northern District of California

1  the MRC methodology was used." Opp'n at 13 (emphasis added). Even accepting this

2  characterization of the RICO claim, however, Plaintiff's RICO scheme necessarily hinges on an

3  allegedly fraudulent "*represent[ation]* to the world that the MRC methodology was used."

4  Because this case involves an alleged misrepresentation, Plaintiff must plead the circumstances

5  constituting the fraud with particularity. Fed. R. Civ. P. 9(b). And if this alleged misrepresentation

6  (or any others Plaintiff intends to rely on for her RICO claim) was made through the mail or over

7  the wire, then Plaintiff must plead with particularity the circumstances of the mailed or wired

8  communication. *Sebastian*, 128 F. Supp. 2d at 635-36.

9        More fundamentally, the Complaint also lacks sufficient factual allegations to support a

10  reasonable inference that Defendants acted with specific intent to deceive or defraud. The Ninth

11  Circuit recently clarified that to be guilty of mail or wire fraud, "a defendant must act with the

12  intent not only to make false statements or utilize other forms of deception, but also to deprive a

13  victim of money or property by means of those deceptions. In other words, a defendant must

14  intend to deceive and cheat." *United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020)

15  (emphasis in original). The Complaint in this case lacks sufficient facts to support a reasonable

16  inference that Cigna, and especially Viant, acted with the requisite intent to deceive and cheat.

17        Plaintiff requests leave to conduct limited discovery in the event the Court dismisses the

18  RICO claim, citing *Neubronner v.Milken*, 6 F.3d 666 (9th Cir. 1993). The request is denied.

19  Although in some cases, discovery may be appropriate where evidence of fraud is exclusively in

20  the defendant's possession, that is not the situation Plaintiff faces. In *Neubronner*, the Ninth

21  Circuit stated, "surely we can not expect a private plaintiff in an insider trading case to plead with

22  the specificity Rule 9(b) requires without allowing some limited opportunity for discovery." *Id*. at

23  671. This is not an insider trading case. Moreover, the who, what, when and how of the

24  misrepresentations Defendants allegedly made are not exclusively within Defendants' knowledge.

25  **IV.   CONCLUSION**

26        For the reasons stated above, Defendants' motions to dismiss are GRANTED as to the

27  Case No.: 5:20-cv-02255-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS

1    first, fourth, sixth, seventh and eighth claims. The first, seventh and eighth claims are dismissed

2    with leave to amend; the fourth and sixth claims are dismissed without leave to amend.

3    Defendants' motions are DENIED as to the remaining claims.

4         Plaintiff's request to add Intuit as a party-defendant is denied without prejudice to filing a

5    separate motion seeking such relief consistent with the Federal Rules of Civil Procedure.

6

7         **IT IS SO ORDERED.**

8    Dated: March 23, 2021

9

10                                                    EDWARD J. DAVILA
                                                      United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
Case No.: 5:20-cv-02255-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS

United States District Court
Northern District of California