KATIE JOY SPIELMAN
DAVID M. LILIENSTEIN
**DL LAW GROUP**
345 Franklin Street
San Francisco, CA 94102
Phone:  (415) 678-5050
Fax: (415) 358-8484
david@dllawgroup.com
katie@dllawgroup.com

MATTHEW M. LAVIN (admitted *pro hac vice*)
**NAPOLI SCHKOLNIK, PLLC**
1750 Tysons Boulevard, Suite 1500
McLean, VA 22102
Phone:  (212) 397-1000
Fax: (646) 843-7603
Email: MLavin@napolilaw.com

Attorneys for Plaintiffs

WILLIAM P. DONOVAN, JR (SBN 155881)
**MCDERMOTT WILL & EMERY LLP**
wdonovan@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:     (310) 277-4110
Facsimile:     (310) 277-4730

JOSHUA B. SIMON (admitted *pro hac vice*)
WARREN HASKEL (admitted *pro hac vice*)
DMITRIY TISHYEVICH (SBN 275766)
**MCDERMOTT WILL & EMERY LLP**
jsimon@mwe.com
whaskel@mwe.com
dtishyevich@mwe.com
340 Madison Avenue
New York, NY  10173-1922
Telephone:     (212) 547-5400
Facsimile:     (212) 547-5444

Attorneys for Defendant
CIGNA BEHAVIORAL HEALTH, INC.

MOE KESHAVARZI
DAVID DWORSKY
**SHEPPARD MULLIN**
330 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone:     (213) 620-1780
Facsimile:     (213) 620-1398

1  ERROL J. KING, JR. (admitted *pro hac vice*)
   **PHELPS DUNBAR LLP**
2  II City Plaza
   400 Convention Street
3  Suite 1100
   Baton Rouge, LA 70802
4  225-376-0207
   Fax: 225--381-9197
5  Email: errol.king@phelps.com

6  Attorneys for Defendant
   MULTIPLAN CORP.
7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

11 RJ, as the representative of her beneficiary son
   SJ; LW as the representative of her
12 beneficiary spouse MW; and, DS, an            Case No.  5:20-cv-02255-EJD
   individual, on behalf of themselves and all
13 others similarly situated,                    **JOINT RULE 26(f) REPORT AND CASE
                                                 MANAGEMENT STATEMENT**
14              *Plaintiffs,*
                                                 CMC Date:  June 3, 2021
15        vs.                                    Time: 10:00 a.m.
                                                 Courtroom: 4, 5th Floor
16 CIGNA BEHAVIORAL HEALTH, a                    Judge: Honorable Edward J. Davila
   Minnesota Corporation, and MULTIPLAN
17 CORP., a Delaware Corporation,

18              *Defendants.*

19

20

21

22

23

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 26(f), the Local Rules of the Court, the Court's April 3, 2020 Order Setting Initial Case Management Conference and ADR Deadlines (Dkt. 3), this Court's April 28, 2020 Notice (Dkt. 20), this Court's June 19, 2020 Notice (Dkt. 39), this Court's September 22, 2020 Notice (Dkt. 52), this Court's November 3, 2020 Notice (Dkt. 55), and this Court's December 7, 2020 Notice (Dkt. 56), this Court's March 23, 2021 Notice (Dkt. 82), Plaintiffs RJ, LW, and DS, and Defendant MultiPlan Corp. ("MultiPlan") and Defendant CIGNA Behavioral Health, Inc. ("CBH" or "Cigna") (MultiPlan and CBH together, the "Defendants"), by and through their respective counsel of record, hereby submit this Joint Rule 26(f) Report and Case Management Statement.

## I.      JURISDICTION AND SERVICE

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff RJ is a resident of California, MultiPlan Corp. is a resident of Delaware with its principal place of business in New York, and CBH is a resident of Minnesota with its principal place of business in Minnesota. Plaintiffs have alleged that the amount in controversy exceeds $5,000,000.  MultiPlan Corp. and its wholly owned subsidiary, Viant, Inc. are referred to herein collectively as "Viant" and or "MultiPlan."  See First Amended Complaint, Dkt. No. 63, ¶43.  All named parties to the present action have been served.

## II.     FACTS

### A.      Plaintiffs' Position.

RJ is a participant in a group health benefit plan ("the Plan"), sponsored by her private-sector employer, Intuit. The Plan is governed by ERISA, 29 U.S.C. § 1001, *et seq.*, and is administered by Cigna. RJ brings this class action on behalf of herself and similarly situated participants and beneficiaries of health plans administered by Cigna. RJ's son, SJ, suffers from mental health and substance use disorders. SJ is a covered beneficiary under the Plan. SJ attended an Intensive Outpatient treatment Program (IOP). In 2019, SJ was diagnosed with Alcohol Use Disorder, and sought treatment at Summit Estate, Inc., an out-of-network Intensive Outpatient Program ("IOP") provider located in Los Gatos, CA.

The treatment provided to RJ was medically necessary behavioral health treatment from an appropriately authorized, licensed, and accredited provider for treating mental health and/or substance use disorders. RJ's plan provided out-of-network benefits for SJ's treatment; however, the amount reimbursed was illegally and fraudulently low, causing RJ to incur significant, unnecessary out-of-pocket expenses.

Cigna and Viant have conspired together to withhold proper payment for IOP treatment services from Plaintiff. Cigna underpaid all of the claims for medically necessary treatment at issue in this litigation. Together, Cigna and Viant created, developed, managed, and administered the scheme to underpay Plaintiffs and the class.

Every claim at issue in this litigation was required to be paid at a percentage of the usual and customary rate ("UCR"); the rate charged by providers similar to those where SJ was treated in the same geographic area. Each of the claims at issue in this litigation was underpaid. The underpayment directly and proximately damaged RJ who had had to pay out of pocket to cover costs which Cigna should have paid.

The underpayment arose out of the fraudulent scheme of Cigna and Viant. Cigna and Viant's fraudulent scheme used the wires and mail to fraudulently represent that the claims would be and were paid at the usual and customary rate. Without Court intervention, this scheme will continue and continue to cause damage.

RJ paid the underpayment amount to SJ's treatment provider out of their own funds and resources. Cigna was required to pay each and every of these claims at the usual, customary, and reasonable rate ("UCR"). That is, it was required to pay an amount based on the competitive fees of similar MH/SUD treatment providers in the same geographic area. This did not occur despite representations to RJ, SJ and SJ's provider that the claims were being reimbursed at the UCR rate.

Patients, such as SJ, rely on their health insurance to properly pay claims for treatment that they receive. The full costs of MH/SUD treatment can be substantial and patients depend on their health insurance to shoulder their portion of the cost. Such is the case with the claims at issue in

this litigation. For all the claims here, the claims were paid by Cigna at less than the UCR based amount they were promised and was promised to their MH/SUD provider.

Every claim at issue was approved for payment, hence this case is about the rate of payment, not the right to payment which was already conceded by Cigna when it underpaid the claim. Every claim at issue was paid at a rate well below the UCR in violation of plan terms. The federal RICO enterprise formed between Cigna and Viant used Viant's OPR methodology to justify the fraudulent withholding of most of the payment owed on each and every claim at issue. Cigna and Viant exercised management and control over the enterprise as set forth in more detail in the following sections. Cigna and Viant used the enterprise to fraudulently represent to Plaintiffs and others that the rate paid was the UCR rate, using the wires for telephone calls and other communications and the mail by sending explanation of benefits ("EOBs") and other letters to Plaintiffs and similarly situated class members.

It was represented to Plaintiffs that their claims were paid based on the UCR rate, as required according to their plans, that the rate was commensurate with the rates paid similar providers in the same geographic area, and that their MH/SUD providers charged more than similar providers in the same geographic area. Multiple acts of racketeering activity were committed by Cigna and Viant against the Plaintiffs and those similarly situated as alleged in the complaint.

Cigna and Viant both profited from their participation in the enterprise. Specifically, the members of the enterprise retained some or all of the amount by which the Plaintiffs' and others' claims were underpaid. The purpose of the enterprise was for Defendants to profit from the underpayments on these claims. The Defendants acted in concert to achieve this and the enterprise was under their common control.

The rate generated by Viant's OPR methodology is significantly less than the UCR amount. Cigna and Viant retained the difference between these two amounts, at the direct expense of the Plaintiffs who paid this amount to SJ's providers.

Instead of reimbursing IOP claims, including Plaintiffs', at UCR rates, Cigna and Viant deployed a scheme to underpay claims for their own benefit, and for the benefit of their associates,

forming a RICO enterprise to reap profits from underpaying claims. Viant aided and abetted Cigna in developing and deploying this scheme. Viant knew that Cigna would and did use the mail and wires in interstate communications and that such communications would be fraudulent as more fully set out throughout the Complaint. Viant aided and abetted Cigna in these fraudulent, interstate communications using the mail and wires through its role in the RICO Enterprise. Viant knew that such mail fraud had been and was being committed in furtherance of the scheme to defraud. This scheme injured not only Plaintiffs but all patients whose plans covered out-of-network providers of IOP services.

This formed a RICO enterprise between Cigna and Viant by using an illegal and fraudulent methodology to justify the fraudulent withholding of most of the payment owed on each and every claim at issue, thereby directly and proximately injuring Plaintiffs in their person and property. Defendants used the enterprise to fraudulently represent to Plaintiffs and others that the rate paid was the UCR rate. Both Defendants exerted management over the affairs of the enterprise.

Cigna and Viant fraudulently represented to the Plaintiffs and their Provider that the claims at issue were properly reimbursed at the UCR rate. Instead of reimbursing the claims at UCR rates, Cigna and Viant deployed a scheme to underpay claims for their own benefit and the benefit of the RICO enterprise. This scheme injured not only RJ but all patients whose plans covered out-of-network providers of MH/SUD services.

When Cigna processed the claims at issue in this case, it had to decide how much it would pay for services. Instead of deciding how much to pay based on it own hundreds of millions of lines of claim data and years of claims history to reference or the FAIR Health database, a database of payment information it paid to help create, Cigna and Viant created a fraudulent scheme using insufficient, inappropriate, and inapplicable data that could be distorted to produce illegally low reimbursement rates. Cigna knew that it was required to pay Plaintiffs' claims based on rates equivalent to amounts charged for similar services by similar providers in the same geographic area. However, instead of using the FAIR Health Database or its own internal data, Cigna used

Viant to produce rates and the lower the rate that Viant produced, the more money they were paid. Cigna and Viant knew that the payment rates produced using this methodology were artificially low.

The Viant Outpatient Review or "Viant OPR" is the specific methodology that was employed to provide the false appearance of legitimacy to the underpayment amount. Viant OPR represented that it produced reimbursement rates based on similar claims in the same geographic area; however, as will be shown through discovery, the data used by Viant OPR contained no "similar" claims. Every time Defendants made a representation that the Viant OPR rates that were paid were based on those of similar providers in a similar geographic area, they were lying, because the services and claims underlying the data used by Viant OPR were not the same as the services provided by Plaintiffs' provider.

In addition to the corrupted Viant OPR methodology, Cigna sent Viant a "target rate" for each claim. The "target rate" is Cigna's arbitrarily selected rate for treatment. Cigna sent Viant the target rate for each claim at issue in this litigation. The target rate thus became the benchmark amount to be paid for the claim. Within Viant this was known as a "meet or beat" price. In all cases, Cigna had complete control over the Target Price and Viant had complete control over its use in the Viant OPR methodology.

The dollar amount that Cigna ultimately paid for the claims in this case was the lowest of three numbers: Target Price, Billed Amount, or Viant OPR produced rate. In every case, the compensation structure agreed upon between Viant and Cigna incentivized artificially low rates and, invariably, the application of the Viant OPR produced rate. Once the Viant methodology yielded its supposedly data-backed rate, it returned the rate information to Cigna via the Electronic Data Interchange ("EDI"). Cigna or its subsidiary then issued under-payment to the Plaintiffs for their claims at the rate "derived" from the Viant OPR methodology.

While Cigna would represent, among other things, that the Viant OPR derived rate was comparable to, and based on, what similar providers in the same geographic area charged or

accepted for the same or similar services, in fact the purpose of the scheme was to produce a rate

that was neither reasonable nor customary.

Cigna partnered with Viant to use the Viant OPR methodology so that the "UCR" rate

produced could be, and ultimately was, presented as "independent" and "defensible," permitting

Cigna to abdicate their responsibility for the derived rates. All of this was hyperbole meant to hide

the fraud.

This litigation seeks to hold Cigna and Viant accountable for their conduct, have them pay

what they actually owe, and prohibit them from perpetuating their scheme.

**B.**    **Defendants' Position.**[1]

The original complaint in this action was filed by "RJ" on behalf of her son, "SJ," and other

members of health benefit plans for which Cigna Health and Life Insurance Company  ("CHLIC"

and together with CBH, "Cigna") administers claims.[2] Plaintiff alleged that claims for her son's out-

of-network ("OON") behavioral health treatment were allegedly underpaid as a result of CBH using

a third-party repricer, Viant Inc., to negotiate discounts on those claims.[3] Plaintiff brought claims

under ERISA and RICO.

After this Court's March 23, 2021 order dismissing many of Plaintiff RJ's claims, Plaintiffs

filed the First Amended Complaint. The amended complaint added two new named Plaintiffs (LW,

---

[1] This factual summary is based on allegations in Plaintiffs' First Amended Complaint and Plaintiffs' plan documents that are incorporated by reference into the complaint, and no discovery has taken place. Defendants deny any incorrect allegations.
[2] Counsel for CBH previously informed Plaintiffs that CHLIC typically administers claims, and is likely the party Plaintiffs intended to name. (*See* Dkt. 51, n.2.)  CBH also attached to its motion to dismiss the benefit booklet and EOBs covering RJ's disputed claims, which showed that CHLIC, not CBH, served as the claims administrator for RJ's claims. (*See* Dkt. 32-2; 42-2; 42-3.)  Despite this, Plaintiffs did not substitute CBH with CHLIC. When CBH raised this issue with counsel for Plaintiffs again on a May 18, 2021 meet and confer, counsel indicated they would be willing to stipulate to substitute defendants and dismiss CBH. If the parties are unable to agree to such a stipulation, CBH intends to move to dismiss on the basis that it is not the proper defendant in this action.
[3] Plaintiffs' counsel also filed the related class action *Pacific Recovery Solutions v. Cigna Behavioral Health Inc., et al.*, 5:20-cv-02251-EJD ("*Pacific Recovery*") on April 2, 2020. *Pacific Recovery* challenged the same type of payment practices but on behalf of several out-of-network behavioral health providers who provided intensive outpatient program ("IOP") substance abuse treatment services to Cigna plan members, including RJ. Defendants raised concerns that Plaintiffs' counsel had a conflict of interest in representing both members and providers. The complaint in *Pacific Recovery* was later dismissed in full, and rather than file an amended complaint, plaintiffs later voluntarily dismissed that action.

on behalf of her spouse MW, and DS), and replaced Viant with MultiPlan Corp.[4] Plaintiffs continue to name CBH as a Defendant, despite CBH's admonitions that it is not the correct Cigna entity.

Plaintiffs are all members of health benefit plan funded by their employers. Their plans are subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). CHLIC administers claims for their plans. In 2019, named Plaintiffs and/or their beneficiaries received treatment for behavioral health services at Summit Estate, a healthcare provider that is OON with Cigna. Summit Estate then submitted the claims to Cigna for pricing and payment. Under Plaintiffs' plans, the reimbursement amount for OON claims like Plaintiffs' is calculated (subject to other plan limitations) based the "Maximum Reimbursable Charge" ("MRC"). MRC is respectively defined as follows in Plaintiffs' plans:

- "[T]he lesser of the provider's normal charge for a similar service or supply; or a percentile of charges made by providers of such service or supply in the geographic area where the service is received. These charges are compiled in a database we have selected." (Intuit Plan).

- "[T]he lesser of: the provider's normal charge for a similar service or supply; or an Employer-selected percentage [of 110%] of a fee schedule developed by Cigna that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for the same or similar service within the geographic market." (Impossible Foods Plan).

- "[T]he lesser of: [t]he provider's normal charge for a similar service or supply; or [a] percentage (150%) of a fee schedule developed by Cigna that is based on a methodology similar to the one used by Medicare to determine the allowable fee for the same or similar service in a geographic area." (International Paper Plan).

Plaintiffs allege that the MRC requires their plans to reimburse their claims at the usual, customary, and reasonable ("UCR") rate, which they allege is equivalent to 80th percentile of the

---

[4] Like CBH, MultiPlan Corp.'s counsel has informed Plaintiffs that it is not a proper defendant in this action, as it is a holding company, and that instead, MultiPlan, Inc. is the proper defendant based on Plaintiffs' allegations. Plaintiffs' counsel has indicated that they would agree to substitute defendants, and dismiss Multiplan Corp. from this action.

charges for similar services in the same geographic area. Plaintiffs allege that because Summit Estate billed less for IOP treatment than the similar providers in the same geographic area, Plaintiffs' UCR rate is equal to 100% of that providers' billed charges. Plaintiffs further allege that rather than paying 100% of billed charges, CBH entered into a scheme whereby it used MultiPlan to negotiate a discount and underpay the claim.

CBH and MultiPlan dispute Plaintiffs' allegations for many reasons. Among those reasons, Plaintiffs' reimbursements were calculated in accordance with their plan terms. Furthermore, and as this Court already held in its initial dismissal order, Cigna has a legitimate commercial relationship with MultiPlan and therefore this arrangement cannot form the basis for an alleged RICO enterprise.

CBH and MultiPlan reserve the right to modify this summary as needed after discovery proceeds.

## III.  LEGAL ISSUES

### A.  <u>Plaintiffs' Position.</u>

- Violation of RICO, 18 U.S.C. § 1962(c)-(d).
- Claim for Underpaid Benefits Under Group Plans Governed by ERISA, on behalf of Plaintiffs and the Class against Cigna.
- Breach of Plan Provisions in Violation of ERISA § 502(A)(1)(B), on behalf of Plaintiffs and the Class against Cigna.
- Violation of Fiduciary Duties of Loyalty and Due Care and Request for Declaratory and Injunctive Relief, on behalf of Plaintiffs and the Class against Cigna and MultiPlan.

Legal issues related to these claims include *inter alia*:

a.      Illegally using Viant's OPR to improperly and intentionally underprice and underpay out-of-network mental health and substance use disorder claims;

b.      Using a third-party repricing entity without disclosing this agreement to Plaintiffs during the VOB process or at any time prior to treatment being rendered;

c.      Using a third-party repricing entity without a contract or agreement with Plaintiffs, the Class, and/or patients, permitting them to do so for the underpaid claims at issue;

d.      Concealing and/or omitting material information in EOBs, and other correspondence concerning the manner in which Cigna and Viant determine the reimbursement amount for IOP out-of-network claims;

e.      Representing to Plaintiffs and the Class that Cigna would pay IOP services at the UCR, when in fact Cigna and Viant disregarded the UCR and paid Plaintiffs arbitrarily low rates.

f.      Paying arbitrarily low rates for uniformly across the country in disregard of the prevailing charges in the community.

g.      Knowingly and intentionally using inadequate datasets for the purpose of artificially deriving a fraudulent UCR rate.

h.      Misrepresenting the reasonable and customary rates of out-of-network services to Plaintiffs and the Class.

i.      Preventing the timely and full payment of claims.

j.      Preventing Plaintiffs and the Class from appealing the underpayment.

k.      Refusing to disclose the methodology by which claims are priced.

l.      Concealing and/or omitting material information in written and wire communications with Plaintiffs and the Class;

m.      Knowingly engaging in an "unfair payment pattern," including, but not limited to, delaying payment of claims, reducing the amount of payment, failing on a repeated basis to pay uncontested portions of claims, and not paying reasonable and customary rates.

Each of these causes of action are asserted on behalf of a putative class and there will be additional legal issues and questions to be resolved at the time this Court takes up the issue of class certification.

**B.      <u>Defendants' Position.</u>**

Plaintiffs' First Amended Complaint asserts the following five counts:   (1) Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, 18 U.S.C. § 1962(c); (2) RICO conspiracy, 18 U.S.C. § 1962(d);  (3)-(4) claims for underpaid benefits and breach of plan provisions under ERISA § 502(a)(1)(B);  (5)-(6) breach of ERISA fiduciary duties, ERISA § 502(a)(3) and

request for declaratory and injunctive relief as to both Cigna and MultiPlan, all of which Defendants deny.

If any of Plaintiffs' claims survive Defendants' anticipated motions to dismiss, other anticipated legal issues will include at least the following:

a.  Interpreting the relevant terms of Plaintiffs' benefit plans and/or the terms of each of the plans applicable to members of the putative class;

b.  whether CHLIC violated the terms of the plan applicable to Plaintiffs and/or each of the members of the putative class by using MultiPlan to negotiate discounts on certain OON claims;

c.  whether Plaintiffs can prove a claim for RICO conspiracy under 18 U.S.C. § 1962(c), including whether Plaintiffs can prove that Cigna and MultiPlan formed an association-in-fact conspiracy, and that CBH (or CHLIC) committed any predicate racketeering acts;

d.  whether Plaintiffs can prove a claim for violation of the terms of their Plans under 29 U.S.C. § 1132(a)(1)(B), including because those Plans do not pay OON claims at 100% of billed charges under its MRC payment methodology;

e.  whether Plaintiffs can prove a claim for violation of 29 U.S.C. § 1132(c), including because no Cigna entity is the designated plan administrator for Plaintiffs' Plans, and because Plaintiffs have not identified documents that were required to be provided by the ERISA statute but were not;

f.  whether Plaintiffs can prove a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3),

g.  whether Plaintiffs are entitled to injunctive or equitable relief;

h.  whether Plaintiffs' claims and/or the claims of any of the members of the putative class are precluded on the ground that they failed to exhaust their administrative remedies;

i. whether Plaintiffs and/or the members of the putative class exhausted their administrative remedies available under their respective benefit plans, and if so, whether Plaintiffs' claims and/or the claims of any of the members of the putative class are rendered moot by the outcome of an administrative appeal;

j. whether Plaintiffs' claims and/or the claims of any of the members of the putative class are barred by terms of their benefit plans other than the MRC payment methodologies (e.g., the plan does not cover OON services, the claim was not medically necessary, provider did not obtain appropriate pre-authorization, etc.);

k. whether Plaintiffs and/or each of the members of the putative class have standing to state a claim under ERISA to the extent they assigned any of their rights under ERISA to their OON providers;

l. whether Plaintiffs' claims and/or the claims of any of the members of the putative class fail for lack of Article III standing to the extent their claims were not paid at levels below those set forth in the applicable benefit plans and/or Plaintiffs did not suffer any out-of-pocket loss;

m. whether Plaintiffs can satisfy the requirements for class treatment under Federal Rule of Civil Procedure 23; and

n. whether Plaintiffs and or each of the members of the putative class are entitled to any of the relief sought in the First Amended Complaint or to any damages they seek.

To the extent any of Plaintiffs' claims survive CBH's and MultiPlan's motions to dismiss and this case proceeds to discovery, additional legal issues may arise after discovery begins.

## IV.   MOTIONS

**Motions to Dismiss the Original Complaint**: CBH and Viant filed motions to dismiss on June 4, 2020, each seeking to dismiss Plaintiff RJ's Complaint in its entirety. Plaintiff RJ opposed both motions. On March 23, 2021, the Court issued a decision on the motions to dismiss. (Dkt. 60.) Judge Davila dismissed five out of Plaintiff RJ's eight claims. Plaintiff RJ's claims under ERISA §

502(c) for failure to provide accurate plan materials (count IV) and under ERISA § 502(a)(3) for violation of the fiduciary duty to provide a full and fair review (count VI) were dismissed without leave to amend, while Plaintiff RJ's RICO claim (count I), claim for equitable relief to enjoin acts (count VII), and "claim for other appropriate equitable relief" (count VIII) were dismissed with leave to amend. Plaintiff RJ's claims for underpayment of benefits and breach of plan provisions claims brought under § 502(A)(1)(B) (counts II and III), and the claim based on the alleged violation of fiduciary duties of loyalty and duty of care under ERISA § 502(a)(3), survived.

**Motions to Dismiss the First Amended Complaint**: Defendants do not believe that Plaintiffs' First Amended Complaint resolves the deficiencies in the original Complaint, and therefore Defendants anticipate moving to dismiss under Rule 12, including to dismiss both defendants as improperly pled in the event that Plaintiffs do not agree to substitution.

**Additional Motions**: Given the early stage of the case, the parties anticipate that they have additional motions that they will file as the case progresses (e.g., motions over discovery disputes, *Daubert* motions, summary judgment, etc.).

**Plaintiffs' Additional Motions**: Plaintiffs note that the pleadings in *LD v. United,* currently pending before Judge Gonzalez Rogers, are closed with Defendants United and MultiPlan having answered the complaint. (*LD, et al. v. United Behavioral Health, et al.*, 4-20-cv-02254 (YGR))  In that matter, Judge Gonzalez Rogers has found the operative complaint sufficiently alleges RICO and ERISA causes of action against both defendants and the pleadings are now closed. Plaintiffs may consider filing a motion to consolidate this case with *LD v. United* for purposes of discovery. Defendants would oppose any such motion.

## V.    AMENDMENT OF PLEADINGS

Plaintiffs filed their First Amended Complaint on April 30, 2021, adding additional plaintiffs as named plaintiffs/class representatives, adding MultiPlan Corp. as a named defendant, and adding a cause of action under 18 U.S.C. § 1964(d), RICO conspiracy.

Defendants anticipate filing motions to dismiss the First Amended Complaint, raising grounds for dismissal under Rule 12.

## VI.     EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that they have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the claims and defenses. Relatedly, the parties plan to negotiate and enter into an ESI protocol to govern this matter.

## VII.    DISCLOSURES

Plaintiffs will produce a list of relevant claims by June 28, 2021.  On the same day, Defendants will produce, under the Protective Order, internal White Papers regarding OPR pricing methodologies, as well as national Network Access contracts between Cigna and MultiPlan.

The parties then agree to exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A) by July 9, 2021.  Given the early stage of this case, the initial disclosures are subject to modification and supplementation.

## VIII.   DISCOVERY

No discovery has taken place so far. The parties have agreed to the discovery schedule set forth in Section XVII.

## IX.     CLASS ACTIONS

Plaintiffs have brought the present action as a class action and believe that all of the requirements required under Fed. R. Civ. P. 23 have been met. Plaintiffs have set forth class allegations in their First Amended Complaint and anticipate that substantial, additional briefing and motion practice will occur as to class certification after the pleadings are closed.

Defendants contend that this case is not suitable for class adjudication under Federal Rule of Civil Procedure 23, and Plaintiffs will be unable to show entitlement to damages or equitable/injunctive relief on a class-wide basis. Defendants will provide additional bases in opposition of class certification at an appropriate time in accordance with any class certification briefing schedule.

Counsel for all parties have reviewed the Court's Procedural Guidance for Class Action Settlements.

## X.   RELATED CASES

On May 18, 2020, this case was deemed related to *Pacific Recovery Solutions v. Cigna Behavioral Health Inc., et al.*, 5:20-cv-02251-EJD ("Pacific Recovery"). *Pacific Recovery* was voluntarily dismissed on April 30, 2021. *See* Dismissal Order, *Pacific Recovery Solutions v. Cigna Behavioral Health Inc., et al.*, 5:20-cv-02251-EJD (Dkt. 86-87).

On August 24, 2020, this case was also deemed related to *Summit Estate, Inc. v. Cigna Health and Life Insurance Co.*, Case No. 5:20-cv-04697-EJD.

## XI.   RELIEF

### A.   <u>Relief Sought by Plaintiff</u>

Plaintiff, on their own behalf and on behalf of the Class, pray for judgment against the Defendants as follows:

1.   Ordering Defendants to reimburse Plaintiffs claims in accordance with the plan Benefits.

2.   Certifying the Class and their claims, as set forth in this Complaint, for class treatment;

3.   Appointing the Plaintiffs as Class Representatives for the Class;

4.   Designating the law firm of Napoli Shkolnik, PLLC, as counsel for the Class;

5.   For general, special, restitutionary and compensatory damages in an amount according to proof.

6.   For treble damages for those claims arising under the Federal RICO Act;

7.   For prejudgment interest on amounts benefits wrongfully withheld.

8.   Injunctive and equitable relief enjoining Defendants from the conduct alleged herein and/or other appropriate equitable relief;

9.   Declaring that Cigna's payments were improper underpayments,

10.   Declaring that Cigna's payment methodologies were and are improper;

11. Declaring that MultiPlan's benefit determination and negotiation methodologies are improper;

12. Declaring that Cigna and MultiPlan have engaged in an illegal, prohibited, RICO enterprise;

13. Ordering Cigna to reprocess all underpaid claims using an appropriate methodology;

14. Ordering Cigna and MultiPlan to provide transparency as to the methodology applied in reprocessing claims and that the methodology be approved by the Court;

15. Ordering Cigna to pay benefits in accordance with the plan terms;

16. For attorney's fees and costs pursuant to statute;

17. and such other and further relief as the Court may deem appropriate, including but not limited to awarding a surcharge, disgorging Defendants unjust enrichments from their wrongful conduct.

**B.** **Relief Sought by Defendants**

At this time, Defendants do not seek any affirmative relief in this action, but reserve the right to seek monetary and equitable relief entitled to them in connection with defense of their claims, including attorneys' fees under ERISA. Defendants deny that Plaintiffs are entitled to the relief they seek in this action.

## XII. SETTLEMENT AND ADR

Pursuant to ADR Local Rule 3-5(b), the parties have submitted their respective "ADR Certification by Parties and Counsel" to the Court. The parties have met and conferred in accordance with the ADR Local Rules. While Defendants are open to ADR in the future, Defendants' position is that ADR would be premature at this time.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Defendants do not consent to have a magistrate judge conduct all further proceedings, including trial and entry of judgment.

## XIV.   OTHER REFERENCES

This case is not suitable for, nor do the parties consent to, reference to binding arbitration or a special master. This case is not referable to the Judicial Panel on Multidistrict Litigation.

## XV.   NARROWING OF ISSUES

At this point in this litigation, the parties are unaware of any ways to narrow the issues other than through the motions to dismiss discussed in Section 4 above.

## XVI.   EXPEDITED TRIAL PROCEDURE

The parties do not believe that this case is appropriate to be handled under the Expedited Trial Procedure of General Order No. 64.

## XVII.  SCHEDULE

The parties jointly propose the following schedule:

| Date | Event |
|---|---|
| June 28, 2021 | Under the Protective Order already in place, Plaintiffs will identify details of the relevant claims (including dates of services, billed amounts, and amounts paid) and any related correspondence and Defendants will provide the national Network Access Agreement between Cigna and MultiPlan, including any Exhibits and Amendments, governing the pricing practices at issue in the complaint, as well as internal, non-public "Whitepapers" kept by MultiPlan and its marketing dept. reflecting the relevant OPR pricing methodologies and EOMs related to OPR Pricing |
| July 9, 2021 | Parties to exchange Rule 26(a) disclosures |
| July 9, 2021 | Parties to meet and confer and submit ESI protocol and claims sampling protocol to the Court |
| July 23, 2021 | Parties to serve initial discovery requests |
| November 29, 2021 | Deadline for exchange of claims sampling lists (assuming agreement of ~100-125 sampled claims) |
| April 1, 2022 | Completion of party document production, including production of named plaintiffs' claims files, custodian discovery, and claims samples |
| April 15, 2022 | All requests for admission must be served |
| April 29, 2022 | Disclosure of party privilege logs |
| April 29, 2022 | Service of 30(b)(6) deposition notices for class certification topics |
| May 27, 2022 | Completion of 30(b)(6) depositions for class certification topics |
| June 3, 2022 | Motion for class certification with any expert reports |
| June 24, 2022 | Close of all fact discovery |

| July 22, 2022 | Opposition to class certification with any expert reports |
| August 22, 2022 | Reply in support of motion for class certification |
| TBD | Complete merits expert reports |
| TBD | Motions for summary judgment |
| TBD | Pretrial conference and trial to be scheduled after ruling on class certification motion |

## XVIII. TRIAL

Plaintiffs believe that multiple issues will arise during the course of litigation that will guide the Court as to the most efficient way to conduct the trial or trials as will be appropriate. Given the extent and scope of the fraudulent Enterprise formed by Cigna and MultiPlan and the nature of the class allegations, Plaintiffs estimate that the trial will take at least four-weeks.

As to the ERISA claims that survive dispositive motions, the trial will be a bench trial. Defendants currently estimate that the bench trial on any ERISA claims, to the extent necessary and appropriate, will not take one week. As to the RICO 18 U.S.C. § 1962(c)-(d) claims, to the extent they survive dispositive motions, Defendants currently estimate that the jury trial will not take more than one week.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED PERSONS OR ENTITIES

Plaintiffs have no interested persons or entities to disclose.

Pursuant to Civil Local Rule 3-16, Defendants certify that the following entities, other than themselves, might have a financial interest in the outcome of this proceeding: Cigna Corporation, as the ultimate parent of wholly owned subsidiary CBH and CHLIC, the claims administrator. Cigna Corporation is a publicly traded company. No publicly held corporation owns 10% or more of Cigna Corporation stock.

Defendants further certify that Viant, Inc. is a wholly-owned subsidiary of Viant Holdings, Inc.; that Viant Holdings, Inc. is a wholly-owned subsidiary of MultiPlan, Inc.; and that MultiPlan, Inc. is a wholly-owned subsidiary of MultiPlan Holding Corporation. No publicly held corporation owns 10% or more of Viant, Inc.'s or MultiPlan, Inc.'s stock.

**XX.   PROFESSIONAL CONDUCT**

The attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**XXI.   OTHER MATTERS TO BE CONSIDERED**

The parties do not believe there are other matters that need to be considered at this time.

1

2      Dated:  May 24, 2021              **NAPOLI SHKOLNIK, PLLC**

3
                                        By:    */s/ Matthew M. Lavin*
4                                       MATTHEW M. LAVIN
                                        WENDY A. MITCHELL
5
                                        **DL LAW GROUP**
6                                       DAVID M. LILIENSTEIN
                                        KATIE J. SPIELMAN
7
                                        Attorneys for Plaintiffs
8

9      Dated:  May 24, 2021              **MCDERMOTT WILL & EMERY LLP**

10

11                                      By:    */s/ William P. Donovan, Jr.*
                                        WILLIAM P. DONOVAN, JR.
12                                      JOSHUA B. SIMON
                                        WARREN HASKEL
13                                      DMITRIY TISHYEVICH

14                                      Attorneys for Defendant
                                        CIGNA BEHAVIORAL HEALTH, INC.
15

16
       Dated:  May 24, 2021              **PHELPS DUNBAR LLP**
17

18                                      By:    */s/ Errol J. King, Jr.*
                                        ERROL J. KING, JR.
19                                      CARYS A. ARVIDSON

20                                      Attorneys for Defendant
                                        MULTIPLAN CORP.
21

22

23

24

25

26

27

28