Matthew M. Lavin, Esq. (*pro hac vice*)
Aaron R. Modiano, Esq. (*pro hac vice*)
**NAPOLI SHKOLNIK PLLC**
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

David M. Lilienstein, Esq. (CA SBN 218923)
Katie J. Spielman, Esq. (CA SBN 252209)
**DL LAW GROUP**
345 Franklin Street
San Francisco, CA 94102
(415) 678-5050 / Fax (415) 358-8484

*Attorneys for Plaintiffs and Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE

| | |
|---|---|
| RJ, as the representative of her beneficiary son, SJ, LW as the representative of her beneficiary spouse, MW; and, DS an individual, on behalf of and all other similarly situated, <br><br> *Plaintiff,* <br><br> vs. <br><br> CIGNA BEHAVIORAL HEALTH, INC., and MULTIPLAN, INC., <br><br> *Defendants.* | Case No.: 5:20-CV-02255-EJD <br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO CIGNA BEHAVIORAL HEALTH, INC.'S MOTION TO DISMISS** <br><br> Complaint Filed: April 2, 2020 <br><br> Hearing Date:   August 12, 2021 <br> Hearing Time:   9:00 a.m. <br> Courtroom:     4-5th Floor |

# **Table of Contents**

Table of Contents ........................................................................................................ 2

Table of Authorities .................................................................................................... 3

Statement of Issues to Be Decided ............................................................................. 6

Argument ..................................................................................................................... 1

I.      Introduction ...................................................................................................... 1

II.     Defendant's Reimbursement Methodology ..................................................... 1

III.    Plaintiffs' RICO §§ 1962(c)&(d) Claims Should Not Be Dismissed. ........... 3

   A.   Plaintiffs Have Alleged Racketeering Activity and Predicate Acts with Particularity ............. 6

   B.   Defendant's "Federal Health Offenses" constitute a Specified Unlawful Activity for the Laundering of Monetary Instruments, a Predicate RICO Act. ................................................. 7

   C.   Plaintiffs Plausibly Allege the Existence of a RICO Enterprise ............................................ 10

   D.   Cigna Directed Affairs of the Enterprise ............................................................................... 13

   E.   Plaintiffs Plausibly Allege Causation & Injury ..................................................................... 14

   F.   Plaintiffs' RICO Claims for Mail and Wire Fraud Are Pled with Sufficient Particularity Under Rule 9(b) ........................................................................................................................ 17

   G.   Plaintiffs Have Alleged a Conspiracy to Violate RICO ........................................................ 18

I.      Plaintiff LW Has Adequately Pleaded Her Claims, and a 12(b)(6) Motion is Not the Appropriate Mechanism to Seek a Transfer of Venue ....................................................................... 18

II.     Conclusion ...................................................................................................... 21

1

## Table of Authorities

2

**Cases**

3

*Bias v. Wells Fargo & Co.,*
4
    942 F. Supp. 2d 915 (N.D. Cal. 2013) ........................................................................ 5, 15

5

*Boyle v. United States,*
    556 U.S. 938 (2009) ............................................................................................................ 12
6

*Bridge v. Phoenix Bond & Indem. Co.,*
7
    553 U.S. 639 (2008) ................................................................................................. 6, 8, 17

8

*Cisneros v. Petland, Inc.,*
9
    972 F.3d 1204 (11th Cir. 2020) ....................................................................................... 15

10

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.,*
11
    235 F. Supp. 3d 1132, 1172 (E.D. Cal. 2017) ................................................................. 9

12

*Cook v. Brewer,*
    637 F.3d 1002 (9th Cir. 2011) ............................................................................................ 3
13

*Desoto v. Condon,*
14
    371 F. App'x 822 (9th Cir. 2010) ..................................................................................... 9

15

*Holmes v. Sec. Inv. Prot. Corp.,*
16
    503 U.S. 258 (1992) ................................................................................................... 17, 18

17

*Horman v. United States,*
18
    116 F. 350 (6th Cir. 1902) .................................................................................................. 5

19

*Kelly v. United States,*
    140 S. Ct. 1565, 206 L. Ed. 2d 882 (2020) ...................................................................... 4
20

*Kyko Glob., Inc. v. Prithvi Info. Sols. Ltd.,*
21
    No. 2:18-CV-01290-WSS, 2020 WL 3654951 (W.D. Pa. July 6, 2020) ....................... 10

22

*LD v. United Behav. Health,*
23
    No. 4:20-CV-02254 YGR, 2020 WL 7432566 (N.D. Cal. Dec. 18, 2020) ............... passim

24

*LD v. United Behav. Health,*
25
    No. 4:20-CV-02254 YGR, 2021 WL 930624 (N.D. Cal. Mar. 11, 2021) ....................... 4, 7

26

*McNally v. United States,*
    483 U.S. 350 (1987) ............................................................................................................. 4
27

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.,*
28
    943 F.3d 1243 (9th Cir. 2019) ............................................................................................ 6

*Paroline v. United States,*
   572 U.S. 434 (2014) ........................................................................................................ 18

*Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.,*
   No. 3:17-CV-2055-FLW-DEA, 2021 WL 1686772 (D.N.J. Apr. 29, 2021) ..................... 2

*Reiter v. Sonotone Corp.,*
   442 U.S. 330 (1979) .......................................................................................................... 4

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993) .................................................................................................. 16, 17

*Rodriguez v. McKinney,*
   878 F. Supp. 744 (E.D. Pa. 1995) .............................................................................. 5, 20

*Samaan v. Aetna Life Ins. Co.,*
   2020 WL 4934363 (C.D. Cal. Aug. 21, 2020)............................................................... 21

*Schmuck v. United States,*
   489 U.S. 705 (1989) ........................................................................................................ 17

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
   806 F.2d 1393, 1400 (9th Cir. 1986) ............................................................................... 8

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
   473 U.S. 479 (1985) ........................................................................................................ 14

*Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.,*
   No. CV075620PSGAGRX, 2008 WL 11336835 (C.D. Cal. Feb. 20, 2008) ................... 4

*Taylor Grp. v. ANR Storage Co.,*
   24 F. App'x 319 (6th Cir. 2001) ...................................................................................... 6

*United States v. Goldin Indus., Inc.,*
   219 F.3d 1271 (11th Cir. 2000) ...................................................................................... 13

*United States v. Turkette,*
   452 U.S. 576 (1981) .................................................................................................. 12, 14

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.,*
   714 F.3d 414 (6th Cir. 2013) .......................................................................................... 19

*Weiner v. Ocwen Fin. Corp.,*
   2015 WL 4599427 (E.D. Cal. July 29, 2015) ................................................................. 15

**Statutes**

18 U.S.C. § 1027 ...................................................................................................................... 11

- 4 -

18 U.S.C. § 1035 ....................................................................................................................... 11

18 U.S.C. § 1349 ....................................................................................................................... 12

18 U.S.C. § 1956 ................................................................................................................... 9, 10

18 U.S.C. § 1956(c)(7)(F) .......................................................................................................... 9

18 U.S.C. § 1961(4) .................................................................................................................. 12

18 U.S.C. § 1964(c) .................................................................................................................. 17

18 U.S.C. § 24 ....................................................................................................................... 8, 9

18 U.S.C. § 24(a) ...................................................................................................................... 10

18 U.S.C. § 24(b) ...................................................................................................................... 11

18 U.S.C. § 669 ......................................................................................................................... 11

18 U.S.C.A. § 1961 .................................................................................................................... 9

29 U.S.C. § 1001(b) ................................................................................................................... 1

ERISA § 502(a)(1)(B) ................................................................................................................ 1

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................................... 7

Rule 8(a)(2) ............................................................................................................................... 10

Rule 9(b) ....................................................................................................................... 9, 10, 20

RJ v. CIGNA and VIANT - PLAINTIFFS' OPPOSITION TO CIGNA MOTION TO DISMISS
5:20-CV-02255-EJD

**Statement of Issues to Be Decided**

Defendant Cigna's Motion to Dismiss Plaintiffs' First Amended Complaint should be denied because:

1. Count I (RICO, 18 U.S.C. § 1962(c)) has properly alleged predicate acts by Cigna, has properly alleged that Cigna committed RICO predicate acts, has properly alleged the existence of a RICO enterprise, and that Cigna conducted and participated in the affairs of the enterprise.

2. Count I (RICO, 18 U.S.C. § 1962(d)) has appropriately alleged a RICO conspiracy.

3. Counts I and II have properly alleged that LW and DS suffered a RICO injury.

4. LW's claims are not required to be brought in the United States District Court for the Western District of Tennessee.

**Argument**

I. **Introduction**

Plaintiffs' First Amended Complaint ("FAC") concerns a fraudulent scheme created by Cigna and Multiplan to underpay certain types of healthcare claims. Cigna and Multiplan deceptively portray these underpayments as representative of prevailing market rates (FAC ¶¶15-20). They are not. Cigna's underpayments equate to a fraction of the prevailing usual, customary, and reasonable market rates for the services received by Plaintiffs. This scheme enriches Cigna and Multiplan at the expense of patients such as Plaintiffs who are unjustly forced to make up the difference between the fair market rates charged by their healthcare providers and the amounts underpaid by Cigna. Adding insult to injury, the underpayments are paid by Cigna from self-funded health plans that Plaintiffs have paid into.  (FAC ¶59). This scheme has been ongoing since at least 2015 (FAC ¶30).

The central theme of Cigna's motion is obfuscation of the overarching scheme created by Cigna and Multiplan.  Cigna's motion attempts to distract from how their actions are directly at odds with one of the very purposes of ERISA, to protect "the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

This lawsuit is brought on behalf of ERISA plan participants and beneficiaries who have suffered harm as a direct result of illegally underpaid healthcare claims for which they have had to make up the difference. Plaintiffs' claims seek to hold the Defendants, Cigna and Multiplan, accountable for their fraudulent conduct, breach of responsibilities, and the harm that they have caused to those patients and beneficiaries that entrusted them with the administration of their healthcare benefits.

II. **Defendant's Reimbursement Methodology**

Plaintiff properly pleads claims for relief under ERISA § 502(a)(1)(B) based on Cigna's failure to comply with plan terms requiring payment of out-of-network claims using its "Maximum Reimbursable Charge" (MRC) methodology as to maximum reimbursable amount. *See* FAC ¶¶65,

67, 166, 276, 288, 320, 350, 368, and 370. Defendant misrepresents Plaintiffs' complaint when they state, "Plaintiffs allege that RJ's plan obligated Cigna to calculate MRC-1 based on a charge database maintained by FAIR Health" (Def. Mot. p. 5). Plaintiffs complaint states, "[f]or each of the claims at issue here, Cigna reported, in both plan language and on telephonic verification of benefits, that it would reimburse patients and/or their assignees at the UCR rate for MRC I policies, a term that Plaintiffs understood to mean the same as or substantially similar to the following statement published by Cigna on its own website" FAC ¶67. The complaint continues, "[t]he significant differences between the publicly available FAIR Health estimates and actual payments provide compelling evidence that the Plaintiffs' claims were not paid based on the UCR" FAC ¶76 and "[f]or all the claims here, the Plaintiffs' claims were paid by Cigna at less than the UCR based amount they were promised and was promised to their MH/SUD providers" FAC ¶79. Plaintiffs do not allege that Defendant was required to calculate UCR based on FAIR Health's charge database; instead, they allege that "[i]t was represented to Plaintiffs that their claims were paid based on the UCR rate and that, "[b]oth Defendants worked together to develop the false and fraudulent UCR rates that were applied to out-of-network IOP claims" FAC ¶79.

Defendant states that reimbursements under the MRC-2 methodology may be based on a "percentage…of a fee scheduled developed by Cigna that is based upon a methodology similar to…Medicare" or, as here, where there is no applicable Medicare rate, "a database selected by Cigna" and asks the Court to accept, with no support from Plaintiffs' complaint or otherwise, that is what they did. (CITE BRIEF) In construing essentially identical Cigna MRC language, another district court gently stated, "[t]he "Maximum Reimbursable Charge" provision in this case is far from "plain English." *Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, No. 3:17-CV-2055-FLW-DEA, 2021 WL 1686772, at *6 (D.N.J. Apr. 29, 2021). The court continued, "[t]he absence of a discernable methodology/schedule raises the possibility that Cigna inconsistently applied or followed procedures to determine the allowable amount for Plaintiff's bill, which could countenance an arbitrary and capricious decision. Critically, moreover, if Cigna were able to adopt the Medicare rate itself, then Plan language requiring Cigna to develop its own methodology/schedule would be meaningless." *Id.*

In a similar matter currently pending before a sister court, Judge Gonzalez-Rogers held

"Plaintiffs aver sufficient factual matter in the FAC to raise the inference that Viant's database and pricing tool did not generate rates that are consistent with the plans' requirements. Viant's database and pricing tool allegedly relied on data collected from Medicare Part B providers and services, which plaintiffs allege are not representative of the IOP services market for patients who have commercial insurance instead of Medicare." *LD v. United Behav. Health*, No. 4:20-CV-02254 YGR, 2020 WL 7432566, at \*5 (N.D. Cal. Dec. 18, 2020) and that "plaintiffs have alleged sufficient facts to raise the inference that MultiPlan knowingly participated in Cigna's alleged breach of its fiduciary duties (1) by collaborating with Cigna to develop and operate a database and pricing tool that generated the lowest possible reimbursement rates notwithstanding the requirements of the plans, which required the consideration of the customary rates of similar IOP-services providers in the geographic region; and (2) by sending PAD letters to plaintiffs that did not disclose that the methodology used to reimburse the IOP services claims at issue was not consistent with plan requirements." *Id.* at \*9.

In contravention to the well-established standards of this Court, Cigna seeks to inject issues and alleges facts that go far beyond the complaint, attempts to circumvent discovery and the procedural requirements of a motion for summary judgment, and instead, prematurely move the Court to engage in findings of fact. A complaint can be dismissed "only if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief" *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). The complaint makes it clear that Cigna told Plaintiffs' provider, Summit Estate, that it would be paid based on UCR. *See* FAC ¶¶136, 278, 344, 392, 397-400.

## III.   Plaintiffs' RICO §§ 1962(c)&(d) Claims Should Not Be Dismissed.

Just as the court in *LD v. United Behav. Health*, No. 4:20-CV-02254 YGR, 2020 WL 7432566 (N.D. Cal. Dec. 18, 2020) & 2021 WL 930624 (N.D. Cal. Mar. 11, 2021) has found the *LD* Plaintiffs' allegations sufficiently alleged a RICO cause of action based on mail and wire fraud, so should this Court on similar pleadings and allegations. Defendant's motion misapplies the court's *LD* holdings and raises many of the same arguments rejected in that matter. Defendant's assertions as to ERISA also have no bearing on Plaintiffs' RICO claims as "ERISA does not preempt Plaintiffs' RICO claims because § 1144(a) only preempts state laws, and not federal laws such as RICO." *Sheet Metal Workers*

1    *Nat'l Health Fund v. Amgen, Inc.*, No. CV075620PSGAGRX, 2008 WL 11336835, at *10 (C.D. Cal.

2    Feb. 20, 2008).

3            The mail and wire fraud statutes protect property rights. *See, generally, Kelly v. United States*,

4    140 S. Ct. 1565, 206 L. Ed. 2d 882 (2020); *McNally v. United States*, 483 U.S. 350, 356 (1987).

5    Plaintiffs' right to be paid for the unnecessary out-of-pocket expenses they incurred is a property

6    right. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979) ("Money, of course, is a form of

7    property"). Just as this Court found that a consumer who has been overcharged can claim injury to

8    property under RICO based on a wrongful deprivation of money, *see Bias v. Wells Fargo & Co.*, 942

9    F. Supp. 2d 915, 936 (N.D. Cal. 2013), unwarranted, out-of-pocket, expenses likewise constitute the

10   wrongful deprivation of money. Plaintiffs do not assert that their plans absolve them from *all* out-of-

11   pocket expenses; instead, Plaintiffs seek to recover those out-of-pocket expenses that were incurred

12   as the direct and consequential result of Defendants' underpayment of their claims. Further, the

13   incurring of debt as a direct consequence of racketeering activity also constitutes a direct, RICO

14   injury. *See, for example, Rodriguez v. McKinney*, 878 F. Supp. 744, 748 (E.D. Pa. 1995) ("In

15   assuming liability for tuition debts, plaintiffs experienced an immediate, cognizable injury."

16   [collecting cases]).

17           Plaintiffs' property is the object of the Defendants' scheme to defraud. *Pasquantino*, 544 U.S.

18   at 355. Cigna has joined together with Multiplan to reproduce the Ingenix scheme that led Cigna to

19   pay $400 million in settlements in 2009. They have joined together to interpose false and fraudulent

20   data as an excuse to avoid paying their obligations to Plaintiffs and others in full to their direct

21   financial benefit. (FAC ¶¶ 111-137). As set forth below, this scheme meets all of RICO's

22   requirements.

23           It has long been the law that "[i]f the scheme or artifice in its necessary consequence is one

24   which is calculated to injure another, to deprive him of his property wrongfully, then it is to defraud

25   within the meaning of the statute." *Horman v. United States,* 116 F. 350, 352-53 (6th Cir. 1902).

26   Every claim at issue has been adjudicated medically necessary and allowed as payable by the Cigna.

27   (FAC¶ 1-2, 6, 21, 29, 53-56). What is at issue is not the Plaintiffs' right to have their claims paid; but

28   rather, Plaintiffs have incurred unnecessary out-of-pocket expenses and seek to recover those as the

direct result of Cigna's <u>underpayments</u>.

Cigna's statement that, "Plaintiffs cannot plausibly plead reliance on VOB calls. This is an issue that the defendants in *LD* did not appear to raise, so the *LD* court did consider, but it is dispositive" (Def. Mot. p. 10) is contradicted by the *LD* court's holding. The court held:

> **That plaintiffs do not allege first-party reliance does not alter this conclusion.** "[T]he Supreme Court has explained that if there is a direct relationship between a defendant's wrongful conduct and a plaintiff's alleged injury, a RICO plaintiff who did not directly rely on the defendant's omission or misrepresentation can still satisfy the requirement of proximate causation of damages," because "a person may be injured 'by reason of' another person's fraud even if the injured party did not rely on any misrepresentation." *Painters*, 943 F.3d at 1259 (quoting *Bridge*, 553 U.S. at 648-49, 128 S.Ct. 2131). **"All that is required of [a plaintiff] at th[e pleading] stage is to allege that someone in the chain of causation relied on Defendants' alleged misrepresentations[.]"** *Id.* at 1260.

> *LD v. United Behav. Health*, No. 4:20-CV-02254 YGR, 2020 WL 7432566, at \*11 (N.D. Cal. Dec. 18, 2020) (emphasis added).

Defendant's citation to the out-of-circuit, unpublished *Taylor Grp. v. ANR Storage Co.*, 24 F. App'x 319 (6th Cir. 2001) ignores the *LD* holding above and controlling precedent set out therein of the Ninth Circuit's decision in *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243 (9th Cir. 2019) and the Supreme Court's decision in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). The *LD* court continued:

> **Plaintiffs have plausibly alleged that someone in the chain of causation relied on United's alleged misrepresentations.** Plaintiffs allege that, "when Plaintiffs' providers contacted United to verify out-of-network rates during the pre-admission VOB calls, United routinely represented that rates were available at a UCR rate and never stated that the claims would be subject to repricing by MultiPlan through Viant." FAC ¶¶ 430-31. Plaintiffs further allege that, based on these alleged representations by United to their providers, they expected that their claims for IOP services would be reimbursed based on the UCR rate pursuant to their plans. *Id.* These allegations are sufficient to satisfy RICO's proximate cause requirement. *See Painters*, 943 F.3d at 1260 (holding that **"it is sufficient to satisfy RICO's proximate cause requirement that Painters Fund alleged that prescribing physicians (also third parties, but not intervening causes) relied on Defendants' misrepresentations and omissions"**).

> **Accordingly, the Court concludes that plaintiffs have RICO standing.**

> *LD v. United Behav. Health*, No. 4:20-CV-02254 YGR, 2020 WL 7432566, at \*11–12 (N.D. Cal. Dec. 18, 2020) (emphasis added).

In their complaint, Plaintiffs have alleged the following, consistent with the allegations that the *LD* court found sufficient:

> Cigna intentionally led Plaintiffs and the Class as well as their treating providers and plans to believe that rates were determined based on a UCR rate. As alleged above, when Plaintiffs' providers contacted Cigna to verify out-of-network rates during the pre-admission VOB calls, Cigna routinely represented that rates were available at a UCR rate and never stated that the claims would be subject to repricing by MultiPlan through Viant. (FAC ¶¶397-8)

The *LD* court's following, March 11, 2021 order reaffirmed the above and held:

> In its order of December 18, 2020, **the Court held that plaintiffs had sufficiently alleged the requisite third-party reliance on United's alleged misrepresentations to satisfy the requirement of proximate cause to state a claim under RICO.** Docket No. 73 at 18-19. Accordingly, the Court need not revisit this issue in determining the present motion to dismiss notwithstanding MultiPlan's argument that plaintiffs have not alleged facts to satisfy the proximate cause requirement for stating a RICO claim by showing reliance on alleged misrepresentations. **As will be discussed below, MultiPlan can be held liable for United's alleged misrepresentations upon which plaintiffs' provider relied.**

*LD v. United Behav. Health*, No. 4:20-CV-02254 YGR, 2021 WL 930624, at *5 fn7 (N.D. Cal. Mar. 11, 2021) (emphasis added).

As such, and for the same reasons set forth above, Plaintiffs have satisfied RICO's proximate cause requirement.

A. *Plaintiffs Have Alleged Racketeering Activity and Predicate Acts with Particularity*

Rule 9(b) does not require a plaintiff to be omniscient or to provide every conceivable detail. Rather, "[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir. 1993) (internal quotations and citations omitted). Plaintiffs have met that standard.

Plaintiffs have identified the predicate acts of racketeering activity: as to *RJ & SJ* FAC ¶¶270-302, as to *MW and LW* FAC ¶¶303-333, as to *DS* FAC ¶¶ 334-339, as to *RH* FAC ¶¶ 340-358, the fraudulent and deceptive Patient Advocacy Department ("PAD") letters that crossed state lines (FAC ¶¶359-378) and has alleged for each of the three Plaintiffs/patients that VOB calls took place took place between the provider, Summit Estate, and Cigna prior to be admitted to treatment and that

claims would be paid based on a percentile of UCR (FAC ¶¶278, 310, 340). In *LD,* the court held that the VOB communications prior to receiving treatment satisfied the reliance requirement. *LD* at *3 citing *Bridge*, 553 U.S. at 658. The *LD* court continued:

> Although plaintiffs have not averred any other details of these VOB calls, such as the names of the persons who participated in such calls or the dates of the calls, the Court finds that **plaintiffs have alleged sufficient factual matter as to the circumstances constituting fraud so that United "can prepare an adequate answer from the allegations."** *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (citation and internal quotation marks omitted). Accordingly, plaintiffs have satisfied the element of pattern of racketeering with respect to United.

> *LD v. United Behav. Health*, No. 4:20-CV-02254 YGR, 2020 WL 7432566, at *14 (N.D. Cal. Dec. 18, 2020)

Defendant's attempts to distinguish *LD* fail and Plaintiffs have sufficiently alleged multiple predicate acts of racketeering that constitute a pattern of racketeering activity.

B.   *Defendant's "Federal Health Offenses" constitute a Specified Unlawful Activity for the Laundering of Monetary Instruments, a Predicate RICO Act.*

Plaintiffs have properly alleged in their First Amended Complaint that Defendants committed Federal health care offenses as defined in 18 U.S.C. § 24. Federal health care offenses, as defined in 18 U.S.C. § 24, constitute "specified unlawful activity" under the money laundering statute at 18 U.S.C. § 1956(c)(7)(F).

Defendant misreads the unpublished *Desoto v. Condon*, 371 F. App'x 822, 824 (9th Cir. 2010) as standing for the proposition that all claims for money laundering are subject to the heightened pleading standards of Rule 9(b) (Def. Mot. p. 14).

A claim for the laundering of monetary instruments is a specified predicate act under RICO. Under 18 U.S.C. § 1961 "(1) "racketeering activity" means…(B) any act which is indictable under any of the following provisions of title 18, United States Code…section 1956 (relating to the laundering of monetary instruments)" and pursuant to 18 U.S.C. § 1956(c)(7), "any act or activity constituting an offense involving a Federal health care offense" is included in the definition of "specified unlawful activity." 18 U.S.C. § 1956(c)(7)(F). Federal health care offenses are defined at 18 U.S.C. § 24. *Desoto* did not involve any allegations of Federal health care offenses; instead, the only predicate acts alleged involved mail and wire fraud. Plaintiff has alleged Defendants' violation

of Federal health care offenses in her Complaint as "specified unlawful activity" specifically identified in the money laundering statute. *See* [Compl. ¶ 197].

It is only fraud-based RICO claims, including mail and wire fraud, that are required to be pled with particularity subject to Rule 9(b). *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007); *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1172 (E.D. Cal. 2017). Defendant cites no authority that Federal health offenses, as defined by statute, or the money laundering statute are fraud based.

To the contrary, Federal health care offenses is not defined as unlawful activity that sound in fraud nor is money laundering, and, as such, are not subject to the heightened pleading requirements of Rule 9(b) and, instead, are governed by Rule 8(a)(2). Under a claim for money laundering pursuant to 18 U.S.C. § 1956, "Rule 8(a)(2) applies to MLCA claims, not Rule 9(b). The elements for a money laundering claim under the MLCA are fourfold: 1) a defendant conducted a financial transaction; 2) the transaction involved proceeds of a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7); 3) a defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and 4) a defendant knew that the financial transaction was designed in whole or in party to conceal or disguise the source, ownership, control, and so on, of those proceeds." *Kyko Glob., Inc. v. Prithvi Info. Sols. Ltd.*, No. 2:18-CV-01290-WSS, 2020 WL 3654951, at *10 (W.D. Pa. July 6, 2020) (internal citations omitted).

Under Rule 8(a)(2), Plaintiffs are only required to allege a "short and plain statement of the claim showing that the pleader is entitled to relief". Plaintiffs have done so. Plaintiffs have alleged that Defendants conducted financial transactions. *See* FAC ¶¶12-16, 33, 36, 58, 79, 82, 86, 89-91, 98, 139, 144-5, 177, 207, 211, 237-8, 286, 319, 349, 381, 395-6, 431. Plaintiffs have alleged that the Defendants' financial transactions represented the proceeds of unlawful activity. *See* FAC ¶¶93-5, 168-254, 299, 325, 329, 354, 356, 389. Defendants knew that the proceeds came from some form of illegal activity and intentionally designed these transactions to conceal their illegality. *See* FAC ¶¶119, 332, 357, 374, 377, 397, 440.

Defendant's motion ignores that "any act or activity constituting an offense involving a Federal health care offense" constitutes "specified unlawful activity" for purposes of money

laundering. 18 U.S.C. § 1956.

The definition of a Federal health care offense is set out in 18 U.S.C. § 24(a) as:

**(a)** As used in this title, the term "Federal health care offense" means a violation of, or a criminal conspiracy to violate--

**(1)** section 669, 1035, 1347, or 1518 of this title or section 1128B of the Social Security Act (42 U.S.C. 1320a-7b); or

**(2)** section 287, 371, 664, 666, 1001, 1027, 1341, 1343, 1349, or 1954 of this title section 301 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 331), or section 501 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1131), or section 411, 518, or 511 of the Employee Retirement Income Security Act of 1974,, [*sic*] if the violation or conspiracy relates to a health care benefit program.

The conduct alleged in the complaint satisfies several of the above. First, 18 U.S.C. § 669 applies to "[w]however…intentionally misapplies any of the moneys, funds, securities, premiums, credits, property, or other assets of a health care benefit program" and the illegal "savings" that Cigna and MultiPlan retained as profits (FAC ¶¶245, 255-6, 265, 299, 329, 356) satisfy this requirement as the underpayments were made from plan assets of ERISA plans. Such plans are included in the definition of "health care benefit program" in 18 U.S.C. § 24(b). 18 U.S.C. § 1035 includes "***any*** materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, / in connection with the delivery of or payment for health care benefits, items, or services". 18 U.S.C. § 664 specifically refers to monies from an employee welfare benefit plan such as are those at issue in the present complaint and Plaintiffs have alleged that Defendants unlawfully converted to their own use the monies of such plans when they profited from their illegal underpayments framed as "savings".No reliance is required at any point in the string of causation for this offense. Further, Plaintiffs have alleged numerous false statements and writings relating the healthcare matters throughout their complaint.

18 U.S.C. § 1347 does not require specific intent and makes it illegal "to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program". Plaintiffs have alleged throughout their complaint that Defendants have illegally profited from the underpayment of claims and they pay themselves these profits out of ERISA plan assets.

1   Plaintiffs' allegations as to Defendants false statements and concealment of facts that were
2   presented as to how MRC was represented and presented in plan documents constitute of a violation
3   of 18 U.S.C. § 1027 as to false statements and concealment of facts in relation to documents required
4   by the Employee Retirement Income Security Act of 1974. Federal health care offenses also include
5   18 U.S.C. §§ 1341, 1343, mail and wire fraud, discussed throughout Plaintiffs' response. Further,
6   under 18 U.S.C. § 1349, the attempt or conspiracy to commit Federal health care offenses likewise
7   constitutes a criminal offense.

8   Rule 9(b) applies to Plaintiffs' allegations of mail and wire fraud and, as set forth in the
9   following section, Plaintiffs have sufficiently pled acts of mail and wire fraud with specificity.

10   C.   *Plaintiffs Plausibly Allege the Existence of a RICO Enterprise*

11   RICO is generally regarded as a broad statute and, indeed, RICO's text "provides that its terms
12   are to be "liberally construed to effectuate its remedial purposes."'" *Boyle v. United States*, 556 U.S.
13   938, 944 (2009), *quoting* Pub. L. No. § 904(a), 84 Stat. 922, 947 (1970). RICO's breadth of language
14   and construction is particularly evident in the enterprise concept. *Boyle*, 556 U.S. at 949. Included
15   within the definition of enterprise is "**any** union or group of individuals associated in fact although
16   not a legal entity." 18 U.S.C. § 1961(4) (emphasis added). The Supreme Court has emphasized that
17   the "term 'any' ensures that the definition has a wide reach and the very concept of an association in
18   fact is expansive") *Boyle*, 556 U.S. at 944 (internal citation omitted).

19   Thus, an association-in-fact enterprise may be *any* group of persons associated together for a
20   common purpose of engaging in a course of conduct. *Boyle*, 556 U.S. at 946, *quoting United States*
21   *v. Turkette*, 452 U.S. 576, 583 (1981). An association-in-fact enterprise may be formal or informal,
22   and requires only three structural features: (1) a purpose; (2) relationships among those associated
23   with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's
24   purpose. *Turkette* 452 U.S. at 583. "[T]he definitive factor in determining the existence of a RICO
25   enterprise is the existence of an association of individual entities, however loose or informal, that
26   furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of
27   racketeering activity requisite to the RICO violation." *United States v. Goldin Indus., Inc.*, 219 F.3d
28   1271, 1275 (11th Cir. 2000).

Defendant argues that there cannot be an enterprise because the only relationship between Cigna and Multiplan is "an arms-length commercial relationship" (Def. Mot. p. 15). Plaintiffs' complaint alleges far more than the "routine commercial relationship" that Defendant claims. Defendant acknowledges that the very argument they are making to this Court is the same argument that was rejected by the court in *LD* that found the plaintiffs had sufficiently alleged an association-in-fact enterprise (Def. Mot. p 15) where the court held:

> Plaintiffs aver that defendants collaborated and conspired to develop and use a database and pricing tool that would generate the lowest possible reimbursement rates for the out-of-network IOP services at issue, which employed data that did not represent the customary rates of similar IOP providers in the geographic area as required by plaintiffs' plans. The enterprise's affairs existed for the common purpose of keeping the difference between the artificially low amounts that United reimbursed for the IOP claims and the amount at which the claims should have been reimbursed if the plan requirements had actually been followed by defendants. These allegations are sufficient to satisfy the enterprise element for a Section 1962(c) claim.

> *LD v. United Behav. Health*, No. 4:20-CV-02254 YGR, 2020 WL 7432566, at *12 (N.D. Cal. Dec. 18, 2020)

Plaintiffs here have made substantially similar allegations and, as in *LD*, these allegations are sufficient to satisfy the enterprise element. Defendant's attempts to argue that *LD* was incorrect in its holding are unpersuasive and should be rejected for the same reasons set out by the court in the *LD* decision.

The *LD* court also addressed a 'cost-containment' argument substantially similar to Defendant's characterization of its use of Viant "to negotiate discounts for certain OON claims" (Def. Mot. p 15), finding "Defendants' argument that this was merely a routine contractual relationship with a goal of cost-containment is premature." *Id*. The same holds for this matter.

An association does not stop becoming an association because the relationships between its members are documented in a contract, nor does anything in the definition of enterprise insulate from liability those whose common purpose includes some legal activity. RICO's definition of enterprise "include[s] both legitimate and illegitimate enterprises within its scope; it no more excludes criminal enterprises than it does legitimate ones." *Turkette*, 452 U.S. at 580-81 (1981). *See also, Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985) ("Yet Congress wanted to reach both

'legitimate' and 'illegitimate' enterprises. The former enjoy neither an inherent capacity for criminal activity nor immunity from its consequences.") (internal citation omitted).

The enterprise between Cigna and Multiplan is the vehicle for the illegal, racketeering activity of mail and wire fraud. Plaintiffs have alleged a solid basis for their belief that the rates paid to them are a fraction of what they should be (FAC ¶¶125-167); they set forth the mechanics of the scheme (FAC ¶¶168-203); the claims submission process (FAC ¶¶204-207); the purpose of the underpayments (FAC ¶¶125-154); how Multiplan and Cigna utilized the distorted Viant methodology of distorted databases and inappropriate "target" pricing ((FAC ¶¶215-241), and how all of this was developed, implemented, and managed by the Defendants (FAC ¶¶242-268).

The FAC alleges a common unlawful purpose amongst the members of the enterprise to avoid paying the required usual and customary reimbursement rates for the services in question. This common purpose is achieved by manipulating reimbursement rates through a false and fraudulent database. The fraudulent reimbursement rates are developed jointly by Multiplan and Cigna. Indeed, the rates are what the Cigna has directed Multiplan to "target." Defendants know that the rates they are using are not based on objective, reliable data.

Had Plaintiffs here not been victimized by the RICO enterprise, they would not have had to pay balance bills out of their own pockets (FAC ¶¶59, 281, 313, 343). Further, claims paid by Cigna and priced by Viant/Multiplan were **$1,600 *less* than what Cigna paid to Summit Estate when claims were not processed through Viant** and, instead, were priced by Zelis, a third-party repricer not affiliated with MultiPlan (FAC ¶316). Thus, it is more than plausible that Defendants' RICO enterprise caused Plaintiffs to suffer large balance bills and damages. The surprise rates priced by Viant were *anything but* a competitive fee.

If the reimbursement rates were above-board, Defendants would not be paying several vastly different rates and claim them all to be MRC. Nor would a reliable pricing program produce wildly different reimbursements for the same services provided so close in time. Likewise, comparison of the reimbursement paid by Defendants against the FAIR Health Benchmark (FAC ¶¶155-167), confirms that Plaintiffs claims were grossly underpaid.

A common purpose of making money does not insulate members of an enterprise from

liability where their methods are illegitimate. The common purpose of making money <u>by fraud</u> is sufficient to find a RICO enterprise. *See, for example, Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1212 (11th Cir. 2020) (collecting cases). *Weiner v. Ocwen Fin. Corp.*, 2015 WL 4599427, at *10 (E.D. Cal. July 29, 2015). Because the complaint clearly alleges that the members of the enterprise stand to gain sufficient financial benefits from their scheme to avoid paying Plaintiffs what they are owed, Plaintiffs have properly alleged a "common purpose" for the purposes of RICO. *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 941 (N.D. Cal. 2013) ("Plaintiffs have also explicitly alleged that the enterprise members, including the vendors and brokers, "devised a scheme to defraud borrowers and obtain money from them by means of false pretenses."")

### D.  *Cigna Directed Affairs of the Enterprise*

Cigna contends that the FAC fails to allege facts sufficient to establish that they participated in the operation or management of the enterprise. As set out by the Supreme Court:

> Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus. In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.

*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

Plaintiffs specifically allege numerous ways in which Cigna has satisfied this requirement in the FAC, stating, for example:

> Cigna determined the fraudulent rates for under-payment that would be presented as UCR, showing its management over the enterprise, and MultiPlan developed the methodology employed through Viant to achieve Cigna's low rates, without regard to actual usual and customary rates. Cigna's management of the enterprise is also shown by the fraudulent information Cigna provided when it verified each Plaintiffs' out-of-network rates to their treatment providers. Cigna "verified" that it would pay the UCR reasonable rate for services knowing that it would never do so. Cigna's communication of these same fraudulent representations over the wires and by the mail also show its management over the enterprise. Cigna's issuing of the actual under-payment for the Plaintiffs' and other IOP claims shows its management over the scheme. FAC ¶¶134-7.

The Viant methodology's crosswalking, reflects a subjective decision that is directed by Cigna and implemented by Multiplan. The crosswalking is not subject to independent review, scrutiny, or oversight. FAC ¶195.

The "proxies" are selected by Multiplan based on direction given by Cigna and used by the Viant methodology to provide fraudulently low payment amounts. FAC ¶198.

Executives from Cigna including Michael Batastoni, Director of Contracting, Non-Par Cost Containment at CIGNA Healthcare and Mario Vangeli, Vice President-National Ancillary Contracting, Strategy and Solutions at CIGNA, reviewed, commented, and provided feedback on MultiPlan's Whitepapers in order to structure Cigna's relationship with MultiPlan and implement the Viant methodology to underpay claims that were required to be paid at the UCR in whatever manner would make the most money for Cigna and Multiplan. Cigna's representatives provided direction to MultiPlan such that Multi-Plan would revise its Whitepapers to ensure that the Viant methodology would underpay claims in violation of plan language such as those of the Plaintiff. The Whitepapers explain that Cigna would set performance standards which were defined by Target Prices. MultiPlan would use Viant to derive a price under the Target Price. Cigna would pay MultiPlan a percentage of the "savings" generated by use of the Viant methodology. The Whitepapers also explain that Cigna could represent "savings" to its customers that were not the actual amounts it paid the healthcare services at. As such, these jointly developed Whitepapers provide a partial blueprint of the Enterprise, the vehicle that would be used to carry out the fraudulent racketeering acts that directly damaged Plaintiffs through the underpayment of valid, medically necessary IOP claims. FAC ¶¶ 261-4.

These facts, if proven, would establish that Cigna played a role in operating or managing the RICO enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

E.  *Plaintiffs Plausibly Allege Causation & Injury*

RICO creates a civil cause of action on behalf of "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter. . . ." 18 U.S.C. § 1964(c). In a RICO case based upon acts of mail or wire fraud, "[t]he gravamen of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (*quoting Schmuck v. United States*, 489 U.S. 705, 712 (1989)). This is true even if the mailing itself contains no false information, *Schmuck*, 489 U.S. at 715, because "the indictable act under § 1341 is not the fraudulent misrepresentation, but rather the use of the mails with the purpose of executing or attempting to execute a scheme to defraud." *Bridge*, 553 U.S. at 652.

Although a plaintiff seeking to recover damages in a civil RICO action must establish that the

defendant's violation was a proximate cause of the plaintiff's injury (*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)); fundamentally, RICO proximate causation is "a flexible concept that does not lend itself to 'a black-letter rule that will dictate the result in every case.'" *Bridge*, 553 U.S. at 654 (quoting *Holmes*, 503 U.S. at 272 n. 20), and 659 (refusing to "ignore *Holmes*' instruction that proximate cause is generally not amenable to bright-line rules"); *Paroline v. United States*, 572 U.S. 434, 444 (2014) (quoting *Bridge*'s description of proximate cause as "a flexible concept")[1]. Having rejected a bright-line test for proximate causation, the Court identified a series of motivating principles to guide application of the directness requirement:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors.  Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely. *Holmes*, 503 U.S. at 269-70 (citations omitted).

Reliance is (1) not an element of mail fraud itself, *Bridge* 553 U.S. at 648-50, (2) not an element of 18 U.S.C. § 1962(c), *id.*, (3) and is not required by 18 U.S.C. § 1964(c). *Id. at 654-58*. If a plaintiff's injuries are directly caused by the violator, its conduct cannot be barred from recovery by a reliance requirement that is not to be found in the mail or wire fraud statutes or in RICO itself.

*Bridge* unequivocally holds that <u>directness</u> does not contain within it a requirement of <u>reliance</u>: "the mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as an element of a civil RICO claim." 553 U.S. at 653, quoting *Anza*, 547 U.S. at 476 (Thomas, J. concurring in part and dissenting in part). Removing any doubt, *Bridge* specifies that "One can

---

[1] The application of the direct injury requirement in RICO is sui generis. *Holmes*, 503 U.S. at 272 n. 20 (Consequently, "use of the term 'direct' should merely be understood as a reference to the proximate-cause enquiry that is informed by the concerns set out in the text. We do not necessarily use it in the same sense as courts before us have and intimate no opinion on results they reached.")

conduct the affairs of a qualifying enterprise through a pattern of . . . [racketeering activity indictable as mail fraud] without anyone relying on a fraudulent misrepresentation." *Bridge*, 553 U.S. at 649. In other words, while reliance *may* serve as a proxy for legal and factual causation, *it is not* a condition of their existence.  553 U.S. at 649 ("one can conduct the affairs of a qualifying enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation."). "For RICO purposes, reliance and proximate cause remain distinct—if frequently overlapping—concepts. While reliance is 'often used to prove . . . the element of causation,' that does not mean it is the only way to do so." *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 420 (6th Cir. 2013) (internal quotations omitted). As *Bridge* put it, "the fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance itself into an element of the cause of action." 553 U.S. at 659 (citation omitted). The unavoidable conclusion is that reliance does not matter if facts plausibly showing direct injury are alleged. *See also*, *Wallace*, 714 F.3d at 420 ("A plaintiff need only show use of the mail in furtherance of a scheme to defraud and an injury proximately caused by that scheme."). Plaintiffs have done so here.

As in *Bridge*, Plaintiffs' injuries are "a foreseeable and natural consequence" of Defendants' scheme. 553 U.S. at 658. And, as in *Bridge*, there are no independent factors that could account for Plaintiffs' injury and no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation. Because none of the harm for which Plaintiffs seek to recover was first visited upon a third person, their claims do not require the court to go beyond the first step in regard to damages. Similarly, there are no more immediate victims who are better situated or motivated to sue than Plaintiffs. Because no one other than Plaintiffs is entitled to claim reimbursement for the out-of-pocket expenses that Plaintiffs' incurred as the direct result of underpaid care, no one else has a better incentive to vindicate the law as a private attorney general. *Bridge*, 553 U.S. at 658.

Defendant's argument that there is no "allegation that Plaintiffs LW and DS actually paid" and that this is fatal to their claims (Def. Mot. p 18) lacks merit. The Complaint clearly alleges, "[t]he Plaintiffs paid the underpayment amounts to their treatment providers from their own funds and resources." (FAC ¶59). The word "Plaintiffs" has its plain meaning and refers to all Plaintiffs, including LW and DS. Further, even if this were not the case, the incurring of debt as a direct

1    consequence of racketeering activity also constitutes a direct, RICO injury. *See, for example,*

2    *Rodriguez v. McKinney*, 878 F. Supp. 744, 748 (E.D. Pa. 1995) ("In assuming liability for tuition

3    debts, plaintiffs experienced an immediate, cognizable injury." [collecting cases]). Plaintiffs have

4    sufficiently alleged that they sustained direct injury.

5       F. *Plaintiffs' RICO Claims for Mail and Wire Fraud Are Pled with Sufficient Particularity*

6        *Under Rule 9(b)*

7       Rule 9(b) does not require a plaintiff to be omniscient or to provide every conceivable detail.

8    Rather, "[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud

9    so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6

10   F.3d 666, 671–72 (9th Cir. 1993) (internal quotations and citations omitted). This standard is met.

11   Much of Defendant's attack on the fraud claims is predicated on fundamentally misunderstanding the

12   fraud alleged in the FAC. In addition to the racketeering activity, the predicate acts of mail and wire

13   fraud identified in the FAC, the FAC goes into great detail identifying the dates, content, and other

14   information of the misrepresentations made to Plaintiffs by Defendants in addition to the activity that

15   directed and implemented the fraudulent, illegal Viant methodology. Therefore, Cigna knows exactly

16   the factual basis for the fraud causes of action asserted against it.

17      Further, Plaintiffs have plead that what Cigna underpays is not UCR in the relevant zip code

18   (FAC ¶¶164, 280, 312, 342). While Plaintiffs *do not* assert that Cigna is required to use FAIR Health

19   to determine UCR, as a sister court recently held, "[t]he Plan states that "R&C is based on available

20   data resources of competitive fees in that geographic area." **FAIR Health is one source of such**

21   **data.**" *Samaan v. Aetna Life Ins. Co.*, 2020 WL 4934363, at *4 (C.D. Cal. Aug. 21, 2020) (bolding

22   added). It is entirely plausible that a FAIR Health rate would not then be several multiples of another

23   data source's UCR / R&C for the exact same service. Ultimately, it will be through discovery that

24   Plaintiffs will prove this. It will also be shown through discovery that terms such as "Usual,

25   Customary and Reasonable" rate, the "Reasonable and Customary" amount, the "Usual and

26   Customary" amount, the "Reasonable Charge," the "Prevailing Rate," the "Usual Fee," the

27   "Competitive Fee," or some other similar phase, in the context of the health industry, mean the same

28   thing and the industry shorthand for these terms is "UCR."

G. *Plaintiffs Have Alleged a Conspiracy to Violate RICO*

The only argument asserted by the Defendants with regard to Plaintiffs' claim under 18 U.S.C. § 1962(d) is that it should fail because no claim is properly alleged under § 1962(c). Because a claim has been alleged under § 1962(c), that argument necessarily fails.

IV.     **Plaintiff LW Has Adequately Pleaded Her Claims, and a 12(b)(6) Motion is Not the Appropriate Mechanism to Seek a Transfer of Venue**

Cigna does not contend that LW has failed to adequately plead her claims for relief under ERISA, and Plaintiffs have addressed Cigna's arguments for dismissal of LW's RICO claims, *supra*. Rather, Cigna asks the court to dismiss LW's claims under F.R.C.P. 12(b)(6) based on an alleged forum selection clause in a benefits booklet associated with LW's ERISA plan.  Neither the benefits booklet that Cigna attaches to its motion, nor the forum selection clause are pleaded in Plaintiffs' complaint, and a 12(b)(6) motion to dismiss for failure to state a claim is not the appropriate mechanism for seeking to transfer venue on the basis of the purported forum selection clause. *See Atlantic Marine Construction Company, Inc. v. U.S. Dist. Ct. for the Western Dist. Of Tex., et al.*, 571 U.S. 49 (2013) (holding that a forum selection clause may be enforced by a motion to transfer under 28 U.S.C. § 1404(a), and affirming denial of motion to dismiss under F.R.C.P. 12(b)(3) and 28 U.S.C. § 1406(a)).

Even if Cigna moved to transfer using the appropriate procedure, 28 U.S.C. § 1404(a), transfer on the basis of the forum selection clause should be denied.  First, the benefits booklet Cigna attaches to its motion containing the purported forum selection clause is not the governing plan document.  It states that it is a "Summary Plan Description" and that "[i]f there is any conflict between the information in this summary and the provisions of the Plan document, the Plan document will always control." (Tishyevich Decl. ISO Cigna's MTD, Ex. 3, at 37)  In *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011), the Supreme Court ruled that "summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)." Second, the plan sponsor, LW's employer, International Paper Company, is the only entity located in Tennessee, and it is not a party to this action.  LW is a California resident, her spouse, MW, is a California resident, the disputed

healthcare treatment was received at a facility in California (FAC ¶ 308), the Plan breach and associated RICO violations occurred in California (Id. ¶¶ 53, 308-333), and the named defendants are located in Minnesota (Id. ¶ 41) and New York (Id. ¶ 43), respectively. Third, and relatedly, this is not "an action in connection with the plan" as the plan is not a defendant. (Tishyevich Decl., Ex. 3 at 42)  To be sure, Plaintiff alleges that Cigna and Multiplan violated ERISA and violated the terms of her ERISA plan in particular, but these violations are alleged against Cigna and Multiplan – not the plan itself, and not the plan sponsor.  Finally, this action involves much more than an action to recover benefits owed to LW under her ERISA plan; it involves allegations of a broad conspiracy to defraud behavioral health and substance use patients nationwide, and includes both ERISA and RICO causes of action.

The forum selection clause Cigna cites from LW's purported benefits booklet is also void as a matter of public policy, and contrary to the plain language and purpose of the ERISA statute.  In this case, it would require plaintiff to litigate her right to benefits in a forum over 2,000 miles away from her home and the location where her spouse received treatment.  Under ERISA, venue is proper (1) where the plan is administered, (2) where the breach occurred, and (3) where a defendant resides or may be found.  29 U.S.C. § 1132(e). A defendant "resides or may be found" in any district in which its "minimum contacts" would support the exercise of personal jurisdiction. *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 646 (6th Cir. 2006).  The Ninth Circuit held that Congress "intended to expand, rather than restrict, the range of permissible venue locations" in order to provide ERISA plaintiffs with easy access to the courts.  *Varsic v. U.S. Dist. Ct. for Cent. Dist. Of Calif.*, 607 F.2d 245, 247-48 (9th Cir. 1979).

ERISA's venue provision is consistent with the purpose of ERISA, as memorialized in the preamble to the statute, which states that it is "the policy of this subchapter to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by providing . . . ready access to the federal courts."  29 U.S.C. § 1001(b).  The legislative history confirms that Congress enacted ERISA, in part, "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities."  H.R. Rep. No. 930533, 93d Cong., 1st Sess. 17 (1973), U.S. Code Cong. & Admin. News 1974, pp. 4639, 4655.  The court of appeals

for the Eleventh Circuit has similarly characterized § 1132(e)(2) as a "broad venue provision" that "can provide broad access to federal courts." *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1522 (11th Cir. 1987).   Similarly, a district court in the Fifth Circuit, applying these principles, rejected an attempt to enforce a forum selection clause in an ERISA plan, finding that doing so would "override a Congressionally enacted statutory framework aimed at assisting employees." *Nicolas v. MCI Health and Welfare Plan No. 501 et al.*, 453 F.Supp.2d 972 (2006) (denying motion to dismiss under 12(b)(3) and/or 28 U.S.C. § 1406 based on forum selection clause that would require the plaintiff to prosecute his suit more than 1,200 miles from his home); *See also Coleman v. Supervalu, Inc. Short Term Disability Plan*, 920 F.Supp.2d 901 (N.D. Ill 2013) (noting that "ERISA plans are rarely the subject of arms' length negotiation" and holding that the plan's forum selection clause was void as a matter of public policy).

Enforcement of the forum selection clause here would run the very real risk of depriving LW of her day in court.   Unlike a typical ERISA § 501(a)(1)(b) benefits claim, this case will not be decided solely on the administrative record through cross motions for summary judgment.   There are breach of fiduciary duty and RICO claims that will require discovery and trial.   LW, her spouse, and her spouse's medical provider are all located in California.   LW's spouse is in recovery from a substance use disorder.   Requiring all these parties to fly across the country to pursue this action could preclude plaintiff from having her day in court, while enforcement of the clause would serve to benefit none of the plaintiffs or defendants in this action, since none are located in Tennessee.   Additionally, LW is recently retired and no longer employed by a Tennessee plan sponsor.

*In re Becker*, 993 F.3d 731 (9th Cir. 2021), cited by Cigna, is inapposite to this action.   There, the plaintiff was bringing suit against her employer, Wells Fargo, under ERISA alleging mismanagement of the employer's 401(k) retirement plan.   The nature of the claim required inquiry into Wells Fargo's management and oversight of its 401(k) plan and discovery centered in the selected forum. Wells Fargo and the Wells Fargo Employee Benefit Review Committee – parties to the operative plan which contained a forum selection clause, and residents of the named forum – were among the named defendants.   Here, LW does not allege any causes of action against International Paper or the International Paper Plan.   Her allegations and causes of action pertain to Cigna and

Multiplan's handling of her spouse's individual claim for behavioral health benefits, and their scheme to underpay valid, medically necessary mental health claims.

**V.    <u>Conclusion</u>**

By reason of the foregoing, it is respectfully submitted that the motion to dismiss should be denied. If the court is inclined to sustain any part of the motion, Plaintiff respectfully requests leave to amend any deficiencies.

Dated: June 30, 2020                                   **NAPOLI SHKOLNIK PLLC**

                                                        */s/ Matthew M. Lavin_____*
                                                        Matthew M. Lavin
                                                        Aaron R. Modiano


                                                        **DL LAW GROUP**

                                                        */s/ David M. Lilienstein___*
                                                        David M. Lilienstein
                                                        Katie J. Spielman

                                                        *Attorneys for Plaintiffs*
                                                        *And the Putative Class*