WILLIAM P. DONOVAN, JR (SBN 155881)
**MCDERMOTT WILL & EMERY LLP**
wdonovan@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:     +1 310 277 4110
Facsimile:      +1 310 277 4730

JOSHUA B. SIMON (admitted *pro hac vice*)
WARREN HASKEL (admitted *pro hac vice*)
DMITRIY TISHYEVICH (SBN 275766)
CAROLINE INCLEDON (admitted *pro hac vice*)
CHELSEA COSILLOS (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
jsimon@mwe.com
whaskel@mwe.com
dtishyevich@mwe.com
cincledon@mwe.com
ccosillos@mwe.com
One Vanderbilt Avenue
New York, NY 10017
Telephone:     +1 212 547 5400
Facsimile:      +1 212 547 5444

Attorneys for Defendant
CIGNA HEALTH AND LIFE INSURANCE COMPANY
[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RJ, as the representative of her beneficiary son SJ; LW as the representative of her beneficiary spouse MW; and, DS, an individual, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br> vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, and MULTIPLAN, INC.,<br><br>    *Defendants*. | Case Number:   5:20-cv-02255-EJD<br><br>**[PROPOSED] STIPULATED ORDER RE: USE OF TECHNOLOGY ASSISTED REVIEW**<br><br>Hon. Edward J. Davila |

Plaintiffs RJ, as the representative of her beneficiary son SJ, LW as the representative of her beneficiary spouse MW, and, DS, an individual, on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), Cigna Health and Life Insurance Company ("Cigna") and MultiPlan, Inc. ("MultiPlan", or, collectively with Cigna, "Defendants"), referred to individually as a "Party" or collectively as the "Parties," by and through their respective counsel, stipulate as follows and for the reasons set forth below, the Court orders as follows:

I. **GENERAL TERMS**

    A.    <u>Application</u>. The procedures set forth in this Stipulation shall govern the use of Technology Assisted Review ("TAR") in this Action, as defined in F(5) below.

    B.    <u>Scope of Discovery</u>. This Stipulation does not affect the proper subject matter of discovery in this Action. Nor does this Stipulation imply that Documents produced under its terms are relevant or admissible in this Action or in any other litigation.

    C.    <u>Privileges</u>. Nothing in this Stipulation shall be interpreted to require the disclosure of Documents that a Party contends are protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

    D.    <u>Modification and Amendment</u>. This Stipulation may be modified or amended by written agreement of the Parties submitted to and ordered by the Court.

    E.    <u>Reservation of Rights</u>. The Parties reserve all rights under the Federal Rules of Civil Procedure, the Local Rules of Practice of the U.S. District Court for the District of Connecticut, and applicable Judicial Practice Standards.

    F.    <u>Definitions</u>.

        1.    "Document" or "Electronically stored information" or "ESI" as used herein, is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).

2.  "Metadata" is defined as (i) information embedded in, or associated with, a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

3.  "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified.

4.  "Statistically Valid Sample" means a random sample of sufficient size and composition to permit statistical extrapolation with a margin of error of 5% at the 95% confidence level.

5.  "Technology Assisted Review" or "TAR" means generally the process whereby software scores and ranks (or presents) documents based on their likely responsiveness, and human reviewers review for responsiveness the documents prioritized (or presented) by the process. As used herein, TAR refers to TAR 2.0 protocols.

6.  "TAR Software" means the software a Party elects to use to perform the TAR.

7.  "Continuous Active Learning" or "CAL" shall refer to TAR 2.0 protocols that enable a system to continuously analyze the machine learning results as manual reviewers review documents for their responsiveness. CAL is a form of TAR that continuously improves through re-ranking the entire data set as it receives new batches of data.

## II.   SEARCH OF ESI AND TECHNOLOGY ASSISTED REVIEW

A.  In responding to discovery requests, a reasonable inquiry must be made. The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken and the conclusions drawn therefrom are reasonable under the circumstances. The parties recognize that any search methodology they use, including manual human review, will miss some

responsive documents. The parties further recognize that although precision, efficiency, and effectiveness of the search methodologies are important, perfection is neither required nor possible.

B. As part of this reasonable inquiry, the producing Parties may use keyword searching or TAR (in conjunction with the use of keyword searching) to help them to identify responsive ESI.

C. If any Party chooses to use keyword searching to identify potentially responsive ESI, that Party shall offer to meet and confer regarding the same and agree to exchange (1) names of all custodians; (2) date range restrictions; and (3) keyword search terms to be used. If the parties disagree on the custodians, date range restrictions and/or keyword search terms, and are unable to resolve any disputes, any Party may file an appropriate motion for determination by the Court. During the pendency of any such motion, the producing party's production obligation (to the extent it is dependent on the resolution of these issues) will be stayed.

D. If any party chooses to use a TAR protocol in conjunction with search terms, that Party shall offer to meet and confer regarding search terms to be used and the sources of ESI to be searched. If the Parties disagree on the TAR protocol or keywords to be used or sources of ESI to be searched, and are unable to resolve any disputes, any Party may file an appropriate motion for determination by the Court. During the pendency of any such motion, the producing Party's production obligation (to the extent it is dependent on resolution of such TAR protocol or keywords) will be stayed.

E. <u>Producing Party Initial TAR Disclosures</u>. Prior to the commencement of any production using TAR, the producing Party shall disclose to the requesting Party in writing its intention to use TAR and disclose the name of the TAR Software and vendor.

F. <u>Requesting Party Response</u>. Within ten (10) days of receiving any TAR disclosure provided for in Section III below, the requesting Party may raise with the producing Party any concerns with the proposed TAR process. If the parties are unable to

agree after meeting and conferring, either party may submit the disputed issue(s) to the Court for resolution.

  G. <u>Cooperation</u>. The Parties agree to meet and confer in good faith over any disputes that might arise with respect to the use of TAR. Should the Parties be unable to resolve their disputes on any issues stemming from the use of TAR, the producing Party may proceed to employ its proposal after conferring, or either party may submit those issues to the Court for resolution.

III. **TAR PROTOCOL**

  A. Identifying the TAR Review Set.

    1. <u>Search Terms</u>. A producing Party using TAR may use search terms, if agreed to by the Parties, to cull the universe of documents into the set of documents that shall be subject to the TAR process (the "TAR Review Set") if the Parties agree that the use of search terms would cause the TAR process to be more efficient, cost-effective, and proportional to the needs of the case. The Parties agree to meet and confer and attempt to reach an agreement on search terms that the producing Party will to use to create the TAR Review Set. If the parties are unable to agree after meeting and conferring, either party may submit the disputed issue(s) to the Court for resolution.

    2. <u>Documents and Data Not Subject to TAR</u>. Certain files and/or documents may be excluded from the TAR process because they would be poor candidates to train the system, *e.g.*, documents with too much or too little text, documents with poor quality text, photographs, etc. The producing Party may review certain sources of data for responsiveness outside of the TAR process. The producing Party will identify data sources or types of documents that will not be reviewed using TAR. Excluded system-generated files do not need to be reviewed. Regardless of TAR filtering/scoring, known responsive documents and data shall be produced.

    3. <u>Disclosure of TAR Process</u>. A producing Party shall disclose in writing the vendor, TAR Software, and general process they are utilizing.

4. <u>Global Deduplication Across Custodians/Data Sources</u>. Consistent with the Parties' Stipulated Order re: Discovery of Electronically Stored Information (Dkt. 86), the parties agree that global de-duplication will be applied across all custodians and data sources that comprise the TAR Review Set. The parties will maintain metadata for any such duplicate documents sufficient to identify all custodians who possessed the de-duplicated documents in their files. The parties may also utilize email threading.

B. Disclosure of Documents in Review Set.

1. <u>First Disclosure</u>. Prior to beginning the application of CAL to the TAR Review Set or reviewing any Samples, the producing Party will disclose to the requesting Party:

    a. The number of documents collected from custodians; and

    b. The number of documents in the TAR Review Set.

C. Continuous Active Learning.

1. <u>Training Iterations</u>. The producing Party will apply CAL to the TAR Review Set. Human reviewers will then review the documents prioritized by the CAL scoring process, beginning with documents identified as most likely to be responsive. As the review progresses, the system will be iteratively retrained with the additional confirmed responsive and non-responsive documents. During each iteration, CAL scores will be re-calculated using the additional reviewed documents, and any resulting additional documents recommended will be added to the review queue. For clarity, only documents selected by CAL will be coded responsive and non responsive by reviewers, such that not every reviewed document will be submitted for CAL.

2. <u>When to Validate</u>. Once a producing Party reasonably believes that it has produced or identified for production a reasonable and proportional number of anticipated responsive non-privileged documents, it shall stop the review and conduct validation according to the protocol described in Section III.D.

D. Validation Protocol.

1. The review process should incorporate quality-control and quality-assurance procedures to ensure a reasonable production consistent with the requirements of Federal Rule of Civil Procedure 26(b) and (g). This Validation Protocol assumes that the completeness or adequacy of the TAR Review Set has already been established. A measured Recall estimate under this Validation protocol of 70% shall be presumptively reasonable, but if after completion of its review a party reasonably believes that it cannot obtain this level of recall despite reasonable and proportional efforts, the Parties agree to meet and confer regarding additional measures and/or alternate steps.

2. <u>Validation Sample</u>.  SMEs will review a Statistically Valid Sample of documents (the "Validation Sample") drawn from all documents in the TAR Review Set that were not reviewed by a human (the "Null Set"). The Validation Sample shall be used to assess the adequacy of the TAR process. All responsive documents identified during the review shall be either produced or, if privileged, included in the producing Party's privilege log.

3. <u>Blind Review</u>. During the course of the review of the Validation Sample, the SMEs shall not be provided with any information concerning the TAR software's determination of score. The intent of this requirement is to ensure that the review of the Validation Sample is blind; it does not preclude a Party from selecting as SMEs those who may have had prior involvement in the original review process.

4. <u>Second Disclosure</u>. Within five days of completing a review of a Validation Sample, the producing Party will disclose to the requesting Party:

    a. The number of documents in the Validation Sample;

    b. The estimated recall based on the Validation Sample review; and

    c. The number of documents in the TAR Review Set coded responsive by human reviewers, including documents that are withheld for privilege.

    d. Depending upon the specific TAR vendor and technology being employed, the parties may find it necessary to modify the

validation protocol. As such, the parties shall meet and confer as to the appropriate validation protocol prior to commencing the TAR process. If the parties are unable to agree after meeting and conferring, either party may submit the disputed issue(s) to the Court for resolution.

5. <u>Confidence Interval</u>. Once the requesting Party has received and has had an opportunity to review the information disclosed pursuant to Sections III.B.1, III.C.2, and III.D.4, the producing Party shall calculate exact confidence intervals (using a binomial calculator[1]) of

    a. the number of responsive documents estimated to be in the Null Set based on the review of the Validation Sample ("Validation Interval").

> **Example**: If the Null Set contains 1.9 million documents, the Validation Sample shall contain 2,398 documents (using 95% confidence with 2.5% margin of error). If 24 of the 2,398 documents are coded relevant, this implies that the Null Set contains 19,016 (the "point estimate") documents. Using 24 as the numerator and 2,398 as the denominator in a binomial calculator computes an exact confidence interval of 0.0064 to 0.0149. Multiplying each of these numbers by 1.9 million provides for a **Validation Interval** of 12,160 (lower limit) and 28,310 (upper limit). In other words, there is 95 confidence level that that the Null Set contains between 12,160 and 28,310 responsive documents.

6. <u>Presumption of reasonableness</u>. If the number of documents coded responsive by human reviewers achieves at least 70% recall, as measured at the point estimate of recall in the Responsive Interval, there shall be a rebuttable presumption that the producing Party's inquiry and production were reasonable.

7. <u>Rebutting the presumption of reasonableness</u>. The presumption of reasonableness described in the preceding section may be rebutted if the totality of evidence implies that the producing Party's inquiry and production were not reasonable. If the presumption of reasonableness is rebutted, the Parties agree to meet and confer in good faith to determine whether other evidence reasonably indicates that the producing Party's inquiry and production were reasonable. Such evidence may include the quantity and nature of the

---

[1] For example: http://statpages.info/confint.html

responsive documents identified through sampling and the estimated number of responsive documents based on the Validation Interval. If the presumption of reasonableness is rebutted and, after considering the evidence, the Parties have not agreed that the producing Party's inquiry and production were reasonable, the review should resume and quality assurance process shall continue, and the Validation process shall be repeated as warranted unless a producing Party reasonably believes that it cannot obtain a measured recall estimate of 70 - 80% despite reasonable and proportional efforts, in which case the Parties agree to meet and confer regarding additional measures and/or alternate steps. If the Parties are unable to agree on whether the review is substantially complete, or whether the Validation process must be repeated, the Court shall render a decision.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: October 7, 2021        **ARNALL GOLDEN GREGORY, LLP**

By:   /s/ Matthew M. Lavin
MATTHEW M. LAVIN
AARON R. MODIANO

**DL LAW GROUP**

DAVID M. LILIENSTEIN
KATIE J. SPIELMAN

Attorneys for Plaintiffs

Dated: October 7, 2021        **MCDERMOTT WILL & EMERY LLP**

By:   /s/ Warren Haskel
WILLIAM P. DONOVAN, JR.
JOSHUA B. SIMON
WARREN HASKEL
DMITRIY TISHYEVICH
CAROLINE INCLEDON
CHELSEA COSILLOS

Attorneys for Defendant
CIGNA HEALTH AND LIFE INSURANCE CO.

Dated: October 7, 2021           **PHELPS DUNBAR LLP**

By:   /s/ Errol J. King, Jr.
ERROL J. KING, JR.
CARYS A. ARVIDSON
CRAIG L. CAESAR

Attorneys for Defendant
MULTIPLAN, INC.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: _____

The Honorable Edward J. Davila

United States District Judge

[PROPOSED] STIPULATED ORDER RE: USE OF TECHNOLOGY ASSISTED REVIEW