1
2
3
4               UNITED STATES DISTRICT COURT

5               NORTHERN DISTRICT OF CALIFORNIA

6                     SAN JOSE DIVISION

7

8   RJ, as the representative of her beneficiary        Case No.  5:20-cv-02255-EJD
    son, SJ; LW, as the representative of her
9   beneficiary spouse MW; and DS, an                   **ORDER GRANTING IN PART AND**
    individual, and on behalf of themselves and         **DENYING IN PART DEFENDANTS'**
10  all others similarly situated,                      **MOTIONS TO DISMISS FIRST**
                                                        **AMENDED COMPLAINT**
11                Plaintiffs,
                                                        Re: Dkt. Nos. 75, 76
12          v.

13  CIGNA HEALTH AND LIFE
    INSURANCE COMPANY, et al.,
14
                  Defendants.

15          In this putative class action suit, Plaintiffs challenge Defendant Cigna Behavioral Health,

16  Inc.'s alleged failure to reimburse covered mental health provider claims at the usual, customary,

17  and reasonable ("UCR") rates.  Presently before the Court are two motions to dismiss the First

18  Amended Class Action Complaint ("FAC"); one brought by Cigna Health and Life Insurance

19  Company ("Cigna"), and a separate motion brought by Defendant MultiPlan, Inc. ("MultiPlan")

20  (collectively referred to as "Defendants").[1]  Dkt. Nos.  75, 76.  Plaintiffs filed oppositions (Dkt.

21  Nos. 79-81) and Defendants filed replies (Dkt. Nos. 88, 89).  The Court finds these matters

22  suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons

23  stated below, Defendants' motions will be granted in part and denied in part.

24

25

26  [1] Plaintiffs previously named different Defendants:  Viant, Inc. ("Viant"), MultiPlan Corp., and
    Cigna Behavioral Health, Inc.  Pursuant to the Joint Stipulation and Order to Substitute and
27  Dismiss Defendants, MultiPlan and Cigna were substituted into the case.  Dkt. No. 69.
    Case No.: 5:20-cv-02255-EJD
28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
    DISMISS

United States District Court
Northern District of California

# I.     BACKGROUND[2]

Plaintiff RJ is a participant in an employee benefits plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), which is sponsored and funded by "Inuit, Inc." FAC ¶ 38. RJ is the parent of her beneficiary son, SJ, who is also a behavioral health patient. *Id*. Plaintiff LW is a participant in an employee benefits plan subject to ERISA, which is sponsored and funded by International Paper Co. *Id*. ¶ 39. LW is the spouse of plan beneficiary, MW, who is a behavioral health patient. *Id*. Plaintiff DS is a participant in an employee benefits plan subject to ERISA, which is sponsored and funded by Impossible Foods, Inc. *Id*. ¶ 40. DS is also a behavioral health patient. *Id*. Cigna is responsible for the administration and payment of claims for behavioral services covered under health plans sponsored or administered by Cigna Corporation or its many wholly owned and controlled subsidiaries, including Cigna Behavioral Health. *Id*. ¶ 42. Plaintiffs were all members of policies offering out of network ("OON") benefits which Cigna either sold and underwrote or administered on behalf of employers. *Id*. ¶ 56. MultiPlan is a Delaware corporation with a business address in New York. *Id*. ¶ 43. Viant is a Nevada corporation and wholly owned subsidiary of MultiPlan. *Id*.

Summit Estate, Inc. ("Summit Estate") contacted Cigna to verify coverage before providing treatment ("VOB" calls). A Cigna representative confirmed that RJ's son, SJ, had coverage through an "MRC-1" plan, with benefits covered at the 80th percentile of charges for similar services in the same geographic area. *Id*. ¶278. A Cigna representative confirmed MW's and DS's plans were "MRC-2" policies and verified that claims would be paid at 150% and 110%, respectively, of the Medicare-based schedule rate for all services. *Id*. ¶¶ 310, 340. There is, however, no Medicare schedule rates for the substance use disorder services MW and DS were to receive. The MRC-2 policy provides that where a Medicare based amount is not available, "the MRC is determined based on the lesser of: the health care professional or facility's normal charge for a similar service or supply; *or the MRC Option I methodology based on the 80th percentile of*

---

[2] The Background is a brief summary of the allegations in the FAC. *See* Dkt. No. 63.

*billed charges*." *Id.* ¶ 69 (emphasis added).   Thus, all claims at issue were required to be paid using the MRC-1 methodology.  *Id.* ¶ 70.

Plaintiffs received intensive outpatient program ("IOP") services from Summit Estate for behavioral health disorders, including for mental health and substance use disorders.  *Id.* ¶¶ 54-55, 275, 282, 308.  Plaintiffs submitted timely claims for their treatment to Cigna.  *Id.* ¶ 57.  Cigna approved the claims for payment, but underpaid all of them.  *Id.* ¶¶ 58, 79, 82-83.  Plaintiffs used their own funds and resources to pay the unpaid portion of their claims to their treatment providers.  *Id.* ¶ 59.

Plaintiffs allege that Cigna was required, but failed to pay each and every one of the claims at issue at the usual, customary, and reasonable rate ("UCR").  *Id.* ¶¶ 60, 84.  "That is, it was required to pay an amount based on the competitive fees of similar MH/SUD treatment providers in the same geographic area."  *Id.*  ¶ 60.  "UCR is a commonly accepted term in the healthcare industry and means generally, the competitive rate charged by similar providers of the same specialty in the same geographic area."  *Id.* ¶ 64.  For the claims at issue, the UCR rate is "what Cigna was required to reimburse as the 'Maximum Reimbursable Charge' ('MRC')."  *Id.* ¶ 65. Plaintiffs understood the UCR rate for MRC I policies to mean the same as or substantially similar to what was published on Cigna's website:

> [A] data base compiled by FAIR Health, Inc. (an independent non-profit company) is used to determine the billed charges made by health care professionals or facilities in the same geographic area for the same procedure codes using data. The maximum reimbursable amount is then determined by applying a percentile (typically the 70th or 80th percentile) of billed charges, based upon the FAIR Health, Inc. data. For example, if the plan sponsor has selected the 80th percentile, then any portion of a charge that is in excess of the 80th percentile of charges billed for the particular service in the same relative geographic area (as determined using the FAIR Health, Inc. data) will not be considered in determining reimbursement and the patient will be fully responsible for such excess.

*Id.* ¶¶ 66-67; *see also* ¶¶ 310, 340 ("[I]t was customary and understood by all parties that payment according to the plan would default to either 1) the lesser of Summit Estate's normal charge for a

similar service or supply; or 2) 80th percentile of the healthcare charges made by similar providers in the same geographic area, i.e. the 'Fair Health' 80th percentile benchmark."). For many years and until about 2015, Cigna was legally required to use the "FAIR Health" database to calculate UCR in its payment of claims. *Id.* ¶ 75. "The significant differences between the publicly available FAIR Health estimates and actual payments provide compelling evidence that the Plaintiffs' claims were not paid based on the UCR." *Id.* ¶ 76.

Instead of applying the MCR I methodology, Defendants used Viant's methodology to "fabricate a fraudulent UCR rate and withhold a substantial part of the payment owed for Plaintiffs' claims." *Id.* ¶ 84. "Viant's methodology operates by culling data from a 'Outpatient Standard Analytical File' ('SAF')." *Id.* ¶ 185. An SAF is composed of data collected from Medicare Part B providers for services rendered to Medicare beneficiaries by the Department of Health and Human Services (DHHs) / Centers for Medicaid and Medicaid Services (CMS). *Id.* This methodology produced rates that are a fraction of the FAIR Health benchmark. *Id.* ¶ 164. For example, for RJ/SJ, the Fair Health benchmark was $2,576; the provider charged $2,156 for services, and Defendants' payment rate was $259. *Id.*

As part of the MultiPlan "repricing" process, Plaintiffs received Patient Advocacy Department ("PAD") letters indicating that they should contact Cigna if they "get a bill from a provider for more than the 'What I Owe' amount" indicated in the Cigna Explanation of Benefit ("EOB"). *Id.* ¶¶ 289, 321, 351. The PAD letters informed Plaintiffs for the first time that Cigna "has contracted with Viant to negotiate on your behalf." *Id.* ¶ 359. The letters stated, "[w]e will work with Viant on your behalf to attempt to reduce your expenses from this out-of-network provider." *Id.* ¶¶ 289, 321, 351.

"At no time material to this action did the Plaintiff[s] negotiate with Cigna, MultiPlan, or Viant or agree to alter plan terms, consent to a discounted rate for IOP services, or to be bound by Cigna's, MultiPlan's or Viant's undisclosed payment policies, pricing methodologies or rate schedules with respect to any of the services the Plaintiff[s] received from [Summit Estate]." *Id.*

1   ¶¶ 296, 326, 355.  Notwithstanding the absence of any such agreement, Cigna and MultiPlan

2   applied "an unlawful discount" to the rate they paid Summit Estate.  *Id.*  As a result, RJ has paid

3   balance bills to Summit Estate totaling more than $36,303.16 (*id.* ¶ 298); MW is financially

4   responsible for a balance owed of $38,372.20 (*id.* ¶ 328); and DS is financially responsible for a

5   balance owed of $37,932.62 (*id.* ¶ 355).  Plaintiffs paid the "underpayment amounts" to their

6   providers from their own funds and resources.  *Id.* ¶ 59.

7          **A.   Procedural History**

8          On April 2, 2020, Plaintiff RJ filed the original complaint.  Dkt. No. 1.  Defendants moved

9   to dismiss the complaint (Dkt. Nos. 32-33), which the Court partially granted on March 23, 2021.

10  *See RJ v. Cigna Behavioral Health, Inc.*, No. 20-2255 EJD, 2021 WL 1110261, at *9  (N.D. Cal.

11  Mar. 23, 2021).  The Court dismissed with prejudice the ERISA § 502(c) claim for failure to

12  provide plan materials and the ERISA § 502(a)(3) claim for failure to provide a full and fair

13  review.  *Id.* at *5-6.  The Court also dismissed the following claims with leave to amend: RICO

14  claim (Count I);  claim for equitable relief to enjoin acts (Count VII), and "claim for other

15  appropriate equitable relief" (Count VIII).  *Id.* at *6-10.  Finally, the Court allowed RJ's ERISA §

16  502(a)(1)(B) claims for underpayment of plan benefits (Counts II and III), and alternative claim

17  under ERISA § 502(a)(3) for violation of fiduciary duties (Count V) to proceed.  *Id.* at *3-6.

18         On April 30, 2021, Plaintiffs filed the FAC.  Dkt. No. 63.  Plaintiffs assert the following

19  claims: (1) violations of RICO, 18 U.S.C. § 1962(c) against both Defendants; (2) RICO

20  conspiracy, 18 U.S.C. § 1962(d) against both Defendants; (3) underpayment of benefits in

21  violation of ERISA against Cigna; (4) breach of plan provisions in violation of ERISA §

22  502(a)(1)(B) against Cigna; (5) violation of fiduciary duties of loyalty and duty of care under

23  ERISA and a request for declaratory and injunctive relief against Cigna; and (6) violation of

24  fiduciary duties of loyalty and due care and request for declaratory and injunctive relief against

25  MultiPlan.  The instant motions followed.

26

27  Case No.: 5:20-cv-02255-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
    DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.    STANDARDS

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at  570).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  The plausibility standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support a plaintiff's claim.  *Twombly*, 550 U.S. at 556.

In evaluating the complaint, the court must generally accept as true all "well-pleaded factual allegations."  *Iqbal*, 556 U.S. at 664.  The court must also construe the alleged facts in the light most favorable to the plaintiff.  *See Retail Prop. Trust v. United Bhd. Of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion.  The court, however, "does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."  *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150-51 (9th Cir. 2016) (citing *Bell Atl. Corp.*, 550 U.S. at 555-56); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Claims sounding in fraud are subject to a heightened pleading standard.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-1104 (9th Cir.

1    2003) (recognizing that claims "grounded in fraud" or which "sound in fraud" must meet the Rule

2    9(b) pleading standard, even if fraud is not an element of the claim).  The allegations must be

3    "specific enough to give defendants notice of the particular misconduct which is alleged to

4    constitute the fraud charged so that they can defend against the charge and not just deny that they

5    have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

6         Dismissal "is proper only where there is no cognizable legal theory or an absence of

7    sufficient facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732

8    (9th Cir. 2001); *see also Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201, 1208 (9th Cir. 2019)

9    (dismissal may be based on either "the lack of a cognizable legal theory or the absence of

10   sufficient facts alleged under a cognizable legal theory").  If claims are dismissed, a court should

11   grant leave to amend unless "the pleading could not possibly be cured by the allegation of other

12   facts."  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.

13   1990).

14   **III.   DISCUSSION**

15        Cigna seeks dismissal of the RICO claims.  Cigna contends that Plaintiffs (1) fail to

16   plausibly allege predicate acts by Cigna; (2) fail to plead a RICO enterprise; and (3) fail to allege

17   that LW and DS suffered a RICO injury.  Cigna contends that because the RICO claim fails, the

18   RICO conspiracy claim also necessarily fails.  Cigna also argues that Plaintiff LW's claims must

19   be brought in the United States District Court for the Western District of Tennessee in accordance

20   with the forum selection clause in her health benefits plan.

21        MultiPlan similarly argues that the RICO claims are deficient because Plaintiffs fail to

22   adequately plead an "association-in-fact"; a pattern of racketeering activity; RICO standing; and

23   proximate causation.  Further, MultiPlan contends that the sixth claim for equitable relief under

24   ERISA fails to allege sufficient facts to establish a breach of fiduciary duties.  Lastly, MultiPlan

25   contends that Plaintiffs fail to allege sufficient facts to establish they are entitled to injunctive

26   relief.

27   Case No.: 5:20-cv-02255-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

United States District Court
Northern District of California

### A.   RICO Claims

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted)); *see also Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).  "To plead a RICO pattern, at least two predicate acts of racketeering activity need to be alleged."  *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1077 (N.D. Cal. 2018) (citation omitted). "Racketeering activity" is defined as "the commission of a predicate act that is one of an enumerated list of federal crimes."  *Id*. at 1076.  "[W]here RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant."  *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig*., 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012) (emphasis in original); *accord*, *Dooley v. Crab Boat Owners Ass'n*, No. 02-676 MHP, 2004 WL 902361, at *5 (N.D. Cal. Apr. 26, 2004).

### 1.  Predicate RICO Acts- Mail Fraud and Wire Fraud

Mail fraud and wire fraud are among the statutory predicate acts listed in section 1961(1). Mail fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do."  *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 658 (2008) (citing 18 U.S.C. § 1341).  The elements of mail fraud and wire fraud are essentially identical.  *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017).  A plaintiff must show "(1) a scheme to defraud, (2) the use of either the mail or wire, radio, or television to further the scheme, and (3) the specific intent to defraud."  *Id*.  Wire and mail fraud require the intent to deceive *and* cheat—in other words, to deprive the victim of money or property by means of deception."  *United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020) (emphasis in original).

RICO fraud claims must be pled with particularity in accordance with Federal Rule of Civil Procedure 9(b).  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist*., 940 F.2d 397, 405

Case No.: 5:20-cv-02255-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

8

1   (9th Cir. 1991).  To satisfy this standard, a plaintiff must allege "the who, what, when, where, and

2   how" of the fraud.  *Vess*, 317 F. 3d at 1106; *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058,

3   1065-66 (9th Cir. 2004) (requiring pleader of RICO fraud claim to allege the time, place and

4   specific content of false representations as well as the identities of the parties to the

5   misrepresentation).

6   <center>**a)    Reliance**</center>

7   Cigna first argues that to state a RICO claim based on mail or wire fraud, Plaintiffs must,

8   but have failed to, allege "that *someone* relied on the defendant's misrepresentations."  *Bridge*,

9   553 U.S. at  658 (emphasis in original).  Cigna acknowledges that the FAC alleges Plaintiffs relied

10   on Cigna's representations during VOB calls, but argues that this allegation is not plausible

11   because VOB calls generally do not contain sufficiently specific promises to pay.  Mot. at 10.

12   Cigna's argument would have weight if Plaintiffs were asserting a promissory estoppel or breach

13   of contract claim,[3] but this is not their allegation.  Instead, they allege mail and wire fraud.

14   Reasonable reliance on a specific promise to pay is not an element of a RICO claim predicated on

15   mail and wire fraud.  *Bridge*, 553 U.S. at 653 ("we reject petitioners' contention that the

16   'common-law meaning' rule dictates that reliance by the plaintiff is an element of a civil RICO

17   claim predicated on a violation of the mail fraud statute.").[4]  Of course, "it may well be that a

18   RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-

19   party reliance in order to prove causation."  *Bridges*, 553 U.S. at 658.  "But the fact that proof of

20

21   [3] *See ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*, No. 18-243 DOC, 2020 WL 2121372, at *6
    (C.D. Cal. May 4, 2020) ("Plaintiff's allegations about the authorization and verification process

22   are inadequate to support a promissory estoppel claim."); *Pac. Bay Recovery, Inc. v. Cal.
    Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216 (2017) (affirming dismissal of implied contract

23   and estoppel claims where provider claimed "that it was led to believe that it would be paid a
    portion or percentage of its total billed charges, which charges correlated with usual, reasonable

24   and customary charges" on VOB and authorization calls); *Cedars Sinai Med. Ctr. v. Mid-W. Nat'l
    Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) ("[W]ithin the medical insurance

25   industry, an insurer's verification is not the same as a promise to pay.").

26   [4] Cigna's reliance on *Taylor Grp. v. ANR Storage Co.*, 24 F. App'x 319, 323 (6th Cir. 2001) is
    misplaced because it was decided before and is inconsistent with *Bridge*.

27   Case No.: 5:20-cv-02255-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
    DISMISS

<center>9</center>

<div style="writing-mode: vertical-lr">United States District Court
Northern District of California</div>

reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance itself into an element of the cause of action." *Id.* at 659 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 478 (2006), (THOMAS, J., concurring in part and dissenting in part)); *see also In re Bextra & Celebrex Mktg. Sales Pracs. Litig.*, No. 05-1699 CRB, 2012 WL 3154957, at *5-6 (N.D. Cal. Aug. 2, 2012) (granting motion to dismiss with prejudice, and holding that "[i]n cases where the RICO violation involves misrepresentations, such as in mail and wire fraud cases, courts often determine whether proximate cause exists by asking whether there was cases actual reliance on those misrepresentations"). Guided by the analysis in these cases, the Court rejects Cigna's argument that Plaintiffs must allege reasonable reliance on a specific promise to pay in order to plead a RICO violation based on mail or wire fraud. Whether causation is sufficiently pled is discussed in a subsection section of this Order.

### b)    Two Predicate Acts Requirement

Cigna next contends that Plaintiffs alleged predicate acts in the FAC, the three phone calls and the PAD letters, are insufficient to sustain the minimum required two predicate acts of fraud. Cigna reasons that Plaintiffs fail to allege that Cigna made any false or misleading statement during the VOB calls for MW and DS, which leaves only the single VOB call for RJ as a potential predicate act. Cigna contends that the post-service communications, such as the PAD letters, cannot constitute predicate acts of fraud because Plaintiffs could not have relied on the PAD letters before receiving treatment.

The Court finds that the three VOB calls are sufficient to satisfy the predicate acts requirement. Each are pled with particularity. On February 27, 2018, Creyna Franco of Summit Estate called Cigna, and Cigna's representative, "Abby," "verified that MW had active benefits for out of network behavioral health treatment and represented that the plan was an MRC-2 policy which would pay 150% of the Medicare schedule rate for all services." FAC ¶ 310. On August 22, 2019, Creyna Franco of Summit Estate called Cigna, and Cigna's representative, "Mykal," verified that DS had active benefits for out of network behavioral health treatment and represented

United States District Court
Northern District of California

1   that the plan was an MRC 2 policy which would pay 110% of the Medicare schedule rate for all

2   services." *Id.* ¶ 340.  Construing the allegations in the light most favorable to Plaintiffs, the FAC

3   plausibly alleges that Cigna misled Plaintiffs and their providers into believing that rates for

4   MW's and DS's services would be determined based on UCR, even if the Cigna's representatives

5   did not explicitly refer to UCR during the VOB calls.  This is supported by Plaintiffs allegations

6   that "[a]s there is no Medicare schedule rate for the substance use disorder services [MW and DS

7   were] to receive from Summit Estate, it was customary and understood by all parties that payment

8   according to the plan would default to either 1) the lesser of Summit Estate's normal charge for a

9   similar service or supply; or 2) 80th percentile of the healthcare charges made by similar providers

10   in the same geographic area, i.e. the Fair Health 80th percentile benchmark." *Id.* ¶¶ 310, 340.

11   Plaintiffs also plead fraud with particularity as to SJ's services.  On March 4, 2019, Creyna

12   Franco, of Summit Estate called Cigna, and Cigna's representative, "Anna," told Summit Estate

13   that its plan would reimburse claims based on the 80th percentile of UCR.  *Id.* ¶ 278.  The FAC

14   also plausibly alleges that Cigna misled Plaintiffs and their providers by omitting any information

15   about repricing.  *Id.* ¶ 398.  Therefore, the predicate acts requirement for mail and wire fraud is

16   satisfied.[5]

          **c)**        **Specific Intent to Defraud**

18         Defendants contend that the FAC lacks sufficient facts to support a reasonable inference

19   that they acted with the requisite intent to deceive and cheat.  Cigna reasons that most

20   communications that Plaintiffs reference—such as RJ's son's EOB and their OON letters—

21   disclose that Viant priced their claims, which they argue is inconsistent with an intent to defraud.

22   This argument overlooks Plaintiffs' allegation that the fraudulent scheme began with the VOB

23   calls, when Cigna failed to disclose anything about MultiPlan or Viant's role in repricing claims.

24   The lack of transparency about Viant's repricing methodology supports a reasonable inference that

25

26   _____

27   [5] Because the VOB calls are sufficient, it is unnecessary to resolve at this stage in the proceedings whether the post-service communications, such as the PAD letters, also constitute predicate acts.

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendants acted with the intent to defraud, and Cigna subsequent disclosure Viant's role in repricing is not necessarily inconsistent with an intent to defraud. Furthermore, fraudulent intent may be inferred from the extreme discrepancy between on the one hand, Defendants' payment rates of $238 to $259 per diem, and on the other hand, the provider's charge of $2,156 per diem and the Fair Health Benchmark of $2,576 per diem. *See* FAC ¶ 164.

Cigna contends that when the VOB calls were made, it could not have known what actual services would be rendered and therefore could not have intended to defraud Plaintiffs for the subsequently administered IOP services. This argument is unpersuasive at the pleading stage. The FAC alleges that during the VOB calls, Cigna's representatives verified active benefits for OON "behavioral health treatment." *Id*. ¶¶ 278, 310, 340. The FAC also alleges that Cigna and MultiPlan's employees responsible for Outpatient Review (OPR) had FAIR Health data loaded onto their virtual "Toolbox" in their in-house claims routing system. Construing these allegations in the light most favorable to Plaintiffs and considering all reasonable inferences, they are sufficient to support a plausible inference that at the time the VOB calls occurred, Cigna knew what services would be rendered and how they should have been priced.

The FAC satisfactorily alleges two predicate acts of mail and wire fraud.

### 2. Predicate RICO Acts- Health Offenses and Money Laundering

The Court rejected Plaintiffs' first attempt to plead a RICO claim based on "Federal Health Offenses" as defined by 18 U.S.C. § 24 because they "are not among the statutory list of predicate acts that can constitute racketeering under 18 U.S.C. § 1961(1)." *RJ*, 2021 WL 1110261, at *9. Plaintiffs now allege that Cigna "laundered monetary instruments with monies obtained through the commission of Federal Health Offenses." FAC ¶ 175. Cigna contends that this RICO money laundering theory of liability fails because it is not pled with particularity as required by Rule 9(b). Plaintiffs question the applicability of Rule 9(b) to money laundering, and argue that the FAC satisfies Rule 8 by alleging that Defendants conducted financial transactions, that these transactions represented the proceeds of unlawful Federal Health Offenses, that Defendants knew

United States District Court
Northern District of California

1  that the proceeds were derived from the Offenses, and that Defendants intentionally designed the

2  transactions to conceal their illegality.

3      Although there are differences of opinion, "[m]ost courts have held the money laundering

4  involves an element of fraud, and therefore must be pled with particularity under Rule 9(b). *See*

5  *Desoto v. Condon*, No. 08-514 AHS, 2008 WL 11338151, at *10 (N.C. Cal. Oct. 3, 2008)

6  ("Courts have held that allegations of money laundering must satisfy Rule 9(b)'s requirements

7  because money laundering involves an element of fraud."), *aff'd*, 371 F. App'x 822 (9th Cir.

8  2010); *see also Best Deals on TV, Inc. v. Naveed*, No. 07–1610 SBA, 2007 WL 2825652, at *7

9  (N.D. Cal. Sept. 26, 2007).  However, the issue is academic because Plaintiffs' allegations are

10  insufficient to satisfy the more lenient Rule 8 pleading standard for several reasons.

11      To establish money laundering under 18 U.S.C. § 1956(a)(1), a plaintiff must allege and

12  ultimately prove that defendants:  (1) engaged in a financial transaction which involved proceeds

13  from specified illegal activity, (2) knew the proceeds were from illegal activity, and (3) intended

14  the transaction either to promote the illegal activity or to conceal the nature, source, or ownership

15  of the illegal proceeds.  *United States v. Marbella*, 73 F.3d 1508, 1514 (9th Cir. 1996).  Here, the

16  first element is lacking.  The FAC only vaguely refers to "Federal Health Offenses," without

17  specifying which offense(s) Defendants allegedly committed.  Plaintiffs' Opposition brief lists

18  several statutory violations (18 U.S.C. § 1035, § 664, § 1347, § 1027, § 1349, § 1341, and § 1343),

19  but these do not appear anywhere in the FAC, and therefore will not be considered.  *See Schneider*

20  *v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)) (instructing that a deficient

21  pleading cannot be cured by new allegations raised in a plaintiff's response to a motion to

22  dismiss); *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1009 (N.D. Cal. 2015) ("In determining the

23  propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's

24  moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.")

25  (quoting *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (emphasis in original)).  The

26  FAC also lacks sufficient facts to plausibly allege the third element of money laundering, namely

27

28

that Defendants intended the transactions to promote the illegal activity or to conceal the nature, source, or ownership of the illegal proceeds.  "[W]here a defendant takes no steps to disguise or conceal the source or destination of [allegedly laundered] funds, . . those transactions conspicuously lack the convoluted character associated with money laundering." *United States v. Wilkes*, 662 F.3d 524, 545 (9th Cir. 2011) (internal quotations omitted).  Plaintiffs allege that Defendants underpaid claims and profited from the underpayments (Opp'n at 8 (citing FAC)), but do not allege that they disguised or concealed the source or destination of allegedly laundered funds.  Furthermore, profiting from an alleged fraud does not alone constitute money laundering.  "The money laundering statute criminalizes behavior that masks the relationship between an individual and his illegally obtained proceeds; it has no application to the transparent division or deposit of those proceeds." *Metaxas v. Lee*, No. 19-3819 EMC, 2020 WL 7025095, at *10 (N.D. Cal. Nov. 30, 2020) (quoting *United States v. Adefehinti*, 510 F.3d 319, 322 (D.C. Cir. 2007)); *see also United States v. Esterman*, 324 F.3d 565, 570 (7th Cir. 2003) ("[W]e have stressed that the mere transfer and spending of funds is not enough to sweep conduct within the money laundering statute; instead, subsequent transactions must be specifically designed to hide the provenance of the funds involved."); *United States v. Caldwell*, 560 F.3d 1214, 1222 (10th Cir. 2009) ("Money laundering requires more than simply writing a check with the proceeds of unlawful activity. We have repeatedly stated that § 1956 is not a money spending statute.").  Moreover, because Plaintiffs have self-funded plans, it is not plausible for Cigna to engage in money laundering.

Accordingly, the RICO claim is dismissed to the extent it is based on money laundering.

### 3. Association-in-Fact Enterprise

To plead an association-in-fact enterprise for a RICO claim, "plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

The Court rejected Plaintiffs' first attempt at alleging an association-in-fact enterprise

because all the complaint described was a contractual relationship between Defendants, and courts have uniformly held that a routine commercial dealing is insufficient to establish RICO liability. *RJ*, 2021 WL 1110261, at *7. The Court noted the failure to plead with particularity sufficient facts to plausibly show that Cigna and Viant knowingly formed an enterprise to fraudulently underpay claims at below the UCR rates. *Id.*

Defendants argue that the FAC does not cure the deficiencies previously identified by the Court. Specifically, Cigna argues that its contract to use Viant to negotiate discounts is not enough to plead a RICO enterprise. MultiPlan similarly argues that the FAC fails to allege that it did anything more than carry out the terms of its contract with Cigna. Plaintiffs counter that the allegations of a RICO enterprise are substantially similar to those found sufficient in *LD v. United Behavioral Health*, 508 F. Supp. 3d 583, 601-02 (N.D. Cal. Dec. 18, 2020) and urges this Court to also find their allegations sufficient.

In *LD*, the court concluded that plaintiffs had plausibly alleged RICO enterprise based on allegations that (1) the defendants "collaborated and conspired to develop and use a database and pricing tool that would generate the lowest possible reimbursement rates for the OON IOP services at issue, which employed data that did not represent the customary rates of similar IOP providers in the geographic area as required by plaintiffs' plans"; and (2) the enterprise's affairs existed for the common purpose of keeping reimbursements for IOP claims artificially low. *Id.* at 602. The *LD* rejected as premature the defendants' argument that they were merely engaged in a routine contractual relationship with a goal of cost-containment, and found that the plaintiffs raised a plausible inference that the defendants' contractual relationship was a cover for their scheme to profit from the fraud at the plaintiffs' expense. *Id.*

Here, Plaintiffs' FAC includes allegations that are substantially similar to those in *LD* and likewise support a plausible inference that Defendants engaged in a RICO enterprise. *See*, *e.g.*, FAC ¶¶ 215-268. Cigna argues that the Court should not follow *LD* because it was incorrectly decided insofar as it did not consider *Eclectic Props. E., LLC*, which instructed that "[w]hen

companies engage in . . . and operate legitimate businesses for years thereafter, and otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." 751 F.3d at 997-98.  The FAC, however, includes the requisite "significant level of factual specificity" from which to infer a RICO enterprises.  Plaintiffs allege that Cigna sent MultiPlan an arbitrarily selected "target rate" for each claim at issue for repricing.  FAC ¶¶ 234, 236.  Viant then repriced the claim based on nation-wide median rates charged by Medicare facilities, not amounts charged by intensive outpatient substance use providers in a given geographic area.  *Id.* ¶¶ 221-32.  When Viant did not have data for a certain service, its software engineers would select the service rate.  *Id.* ¶¶ 225-27.  MultiPlan actively offered the Viant methodology to Cigna as a product capable of underpaying claims with minimal provider pushback, and MultiPlan knew and explained to Cigna that the Viant methodology could provide the appearance of legitimacy and offer cover for the fraudulent underpayment of IOP claims.  *Id.* ¶ 240.  MultiPlan secretly discussed the Viant OPR Review methodology with Cigna at annual events hosted by the Client Advisory Board of MultiPlan ("CAB").  *Id.* ¶ 240.  The Viant methodology was specifically designed to be adapted and customized based on input and direction from the insurer, here Cigna.  *Id.* ¶ 242.  Defendants jointly developed the underpayment scheme, including collaborating on "Whitepapers," which explained how the Viant methodology could be implemented to output any payment price Cigna wanted in order to maximize profits, without regard to, and in violation of, the patients' health plan provisions.  *Id.* ¶¶ 250, 259, 264; *see also* ¶¶ 256 (MultiPlan sought input from Cigna), 261 (Cigna reviewed, commented, and provided feedback on the Whitepapers "in order to structure Cigna's relationship with MultiPlan and implement the Viant methodology to underpay claims"), 262 (Cigna provided "direction").  "Cigna partnered with MultiPlan to use the Viant methodology so that the 'UCR' rate produced through Viant's methodology could be presented as 'independent' and 'defensible,' permitting Cigna and other insurers to abdicate their responsibility for the derived rates."  *Id.* ¶ 251.  MultiPlan executives regularly met with Cigna to

discuss Viant's methodology and how to lower the rates paid for services, without ever seriously discussing the employee benefits plan language. *Id.* ¶¶ 255-59. The FAC includes additional factual allegations to show Cigna directed the affairs of the alleged enterprise. *Id.* ¶¶ 134, 137, 198, 261-64. Defendants' fee structure incentivized MultiPlan to reprice claims below Cigna's "target" rate for IOP treatment. *Id.* ¶¶ 237, 267. After repricing claims, Defendants sent Plaintiffs joint letters in which they represented that the providers will be paid the maximum reimbursable amount allowed under Plaintiffs' plans if the provider does not agree to Viant's rate. *Id.* ¶ 368. The providers, however, never received the maximum reimbursable rate. *Id.* ¶ 370. The Court finds that Plaintiffs' non-conclusory allegations are sufficient to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "That a legitimate contractual relationship between the defendants exists does not undermine plaintiffs' plausible allegations that defendants also engaged in an enterprise to defraud them and used the contractual relationship as a cover." *LD*, 508 F. Supp. 3d at 602.

### 4. Plaintiffs LW's and DS's Alleged RICO Injury

Cigna contends that LW's and DS's RICO claim fails because they do not allege they actually made any out-of-pocket payments. The FAC is vague in that it alleges they are "financially responsible for a balance owed" to Summit Estate (FAC ¶¶ 328, 355), which suggests that LW and Ds may not have paid their providers. Elsewhere, however, the FAC alleges that "Plaintiffs paid the underpayment amounts to their treatment providers from their own funds and resources." *Id.* ¶59. "Plaintiffs" refers to "RJ, as the representative of her beneficiary son, SJ; LW as the representative of her beneficiary spouse, MW; and, DS, an individual." *Id.* ¶ 1. The Court accepts Plaintiffs' unequivocal allegation that they paid their treatment providers and finds that LW and DS have satisfactorily alleged a RICO injury.

### 5. Standing and Proximate Cause

To establish RICO standing, a plaintiff must allege an injury to business or property proximately caused by the alleged RICO offense. *Gilbert v. Bank of Am.*, No. 13-1171 JSW, 2014

1   WL 12644028, at *4 (N.D. Cal. Sept. 23, 2014).  "When a Court evaluates a RICO claim for

2   proximate causation, the central question it must ask is whether the alleged violation led directly

3   to the plaintiff's injuries."  *Anza v. Ideal Steal Supply Corp*., 547 U.S. 451, 461 (2006).

4   MultiPlan argues that the FAC is deficient because Plaintiffs do not and cannot allege

5   MultiPlan had any responsibility for a communication to Plaintiffs that was material to their

6   decision-making at the beginning of the treatment process.  MultiPlan reasons that Cigna allegedly

7   issued the benefits plans and responded to the VOB calls, and the FAC does not allege any facts to

8   suggest MultiPlan was in any way responsible for these actions.  MultiPlan acknowledges that the

9   FAC alleges it sent the OON letters, but argues that these letters were not the proximate cause of

10  the alleged harm because they were sent *after* Plaintiffs sought and received treatment.  The

11  argument is unpersuasive because as already discussed above, Plaintiffs satisfactorily allege that

12  Cigna and MultiPlan were co-participants in a RICO scheme that caused harm.  Having pled a

13  cognizable RICO scheme, "the statements and acts of co-participants in a scheme to defraud [are]

14  admissible against other participants."  *See In re Volkswagen "Clean Diesel" Mktg, Sales*

15  *Practices, and Prods. Liab. Litig.*, MDL No. 2672 CRB, 2017 WL 4890594, at *12 (N.D. Cal.

16  Oct. 30, 2017) (quoting *United States v. Stapleton*, 293 F.3d 1111, 1262 (9th Cir. 2002)).  That

17  MultiPlan did not have a direct role in issuing the benefits plans and responding to the VOB calls

18  is of no moment.  *See LD v. United Behavioral Health*, No. 20-2254 YGR, 2021 WL 930624, at

19  *7 (N.D. Cal. Mar. 11, 2021) ("That Viant (MultiPlan's subsidiary) allegedly began to handle

20  claims for IOP services only after United had already made alleged misrepresentations during

21  VOB calls does not alter the fact that plaintiffs plausibly allege that MultiPlan knowingly

22  participated and directed the scheme which, again, encompassed the VOB calls in question as well

23  as other conduct in furtherance of the scheme that took place before and after Viant began to

24  handle IOP claims.").

25      **B.    RICO CONSPIRACY CLAIM**

26  As discussed above, Plaintiffs plead a substantive violation of RICO based on the predicate

United States District Court
Northern District of California

1   acts of mail and wire fraud, but not based on the predicate act of money laundering.  Therefore the

2   RICO conspiracy claim survives to the extent it is based on mail and wire fraud.  The RICO

3   conspiracy claim fails to the extent it is based on money laundering.  *See Howard v. Am. Online*

4   *Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO

5   existed if they do not adequately plead a substantive violation of RICO."); *Sanford v.*

6   *MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Because we conclude that the section

7   1962(c) claim cannot be saved by amendment, it follows that the section 1962(d) claim also

8   cannot be saved.").

9   ### C.   FORUM SELECTION CLAUS IN LW'S PLAN

10  Cigna contends that LW's claims should be dismissed because her health benefits plan

11  contains a forum selection clause requiring a participant or beneficiary to bring an action in

12  connection with the plan in the United States District Court for the Western District of Tennessee.

13  Plaintiffs raise several arguments in response, none of which are persuasive.  First, Plaintiffs assert

14  that a Rule 12(b)(6) motion to dismiss is not the appropriate procedural mechanism for enforcing a

15  forum selection clause.  In the Ninth Circuit, whether a Rule 12(b)(6) motion is a proper

16  mechanism for enforcing a forum selection clause is an unsettled question.  In *Atl. Marine Const.*

17  *Co. v. U.S. Dist. Court for W. Dist. of Texas*, the Court held that 28 U.S.C § 1404(a) is the proper

18  "mechanism for enforcement of forum-selection clauses that point to a particular federal district,

19  and expressly declined to consider "whether defendant in a breach-of-contract action should be

20  able to obtain dismissal under Rule 12(b)(6) if the plaintiff files suit in a district other than the one

21  specified in a valid forum-selection clause."  571 U.S. 49, 61 (2013).  Since then, a few out-of-

22  circuit courts have permitted parties to assert a forum selection clause in a Rule 12(b)(6) motion.

23  *See Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014)

24  ("Absent a clear statement from the Supreme Court to the contrary, the use of Rule 12(b)(6) to

25  evaluate forum selection clauses is still permissible in this Circuit."); *Smith v. Aegon Cos. Pension*

26  *Plan*, 769 F.3d 922, 934 (6th Cir. 2014) (affirming Rule 12(b)(6) dismissal predicated on

27

28  Case No.: 5:20-cv-02255-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
    DISMISS

United States District Court
Northern District of California

1    enforcing a forum selection clause); *Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017)

2    (finding Rule 12(b)(6) is an acceptable means of enforcing a forum selection clause).  Other

3    district courts within the Ninth Circuit have come to the same conclusion.  *See Verifone, Inc. v. A*

4    *CAB, LLC*, No. 15-157 GMN, 2016 WL 4480686, at *2 (D. Nev. Aug. 24, 2016) (dismissing

5    counterclaims related to a services agreement where the agreement contained a forum selection clause,

6    and "accept[ing] VeriFone's characterization of its motion as brought under Rule 12(b)(6)"); *see also*

7    *Mix v. Neeb,* No. 14-1594 KJM, 2014 WL 6469130, at *2 (E.D. Cal. Nov. 17, 2014) ("It appears no

8    controlling precedent precludes 12(b)(6) dismissal based on a contrary forum selection clause. . . .

9    This court accepts Sampson's characterization of its motion as brought under Rule 12(b)(6).").

10   Consistent with the First, Third and Sixth Circuit and the district court decisions cited above, this

11   Court concludes that a Rule 12(b)(6) motion is an acceptable means of enforcing a forum selection

12   clause.

13           Second, Plaintiffs contend that the forum selection clause is unenforceable because it is

14   stated in the benefits booklet (summary plan description ("SPD")), and not the governing

15   employee benefits plan document.  The SPD states, however, that the "booklet also serves as the

16   portion of the official plan document governing covered benefits" and "constitutes part of, and is

17   incorporated by reference into" LW's benefits plan.  Dkt. No. 76-4 at 43.  Moreover, the benefits

18   plan contains the same forum selection clause.  Dkt. No. 89-2 at 33.

19           Third, Plaintiffs argue that the forum selection clause is void as a matter of public policy

20   because it is contrary to the language and purpose of ERISA.  This argument has been considered

21   and rejected by the Ninth Circuit.  *See In re Becker*, 993 F.3d 731, 733 (9th Cir. 2021) (holding

22   that "ERISA does not bar forum selection clauses"); *see also Rapp v. Henkel of Am., Inc.*, No. 18-

23   1128 JLS, 2018 WL 6307904, at *4 (C.D. Cal. Oct. 3, 2018) (noting that "district courts in this

24   circuit. . . have uniformly found that forum-selection clauses in ERISA plans do not contravene

25   ERISA's venue provision and are enforceable"); *Rodriguez v. PepsiCo Long Term Disability*

26   *Plan,* 716 F. Supp. 2d 855, 860 (N.D. Cal. 2010) ("[e]nforcement of a forum selection clause is

27   Case No.: 5:20-cv-02255-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

United States District Court
Northern District of California

1   not inconsistent with the terms or policy rationales of ERISA."); *Marin v. Xerox Corp.*, 935 F.

2   Supp. 2d 943, 946 (N.D. Cal. 2013) ("Courts, however, have held that enforcement of forum

3   selection clauses is not inconsistent with the terms or policy rationales of ERISA.").  A forum

4   selection should not be enforced where doing so would deprive a plaintiff of her day in court.

5   *Rodriguez*, 716 F. Supp. 2d at 861.  Here, however, Plaintiffs have not shown that the prospect of

6   LW having to travel to Tennessee to litigate her claims is so burdensome such that it will

7   effectively deny her of her day in court.

8        Fourth, Plaintiffs argue that LW is not asserting "an action in connection with the plan"

9   because the plan is not a defendant, and therefore her claims do not fall within the scope of the

10   forum selection clause.  However, the forum selection clause applies to actions "in connection

11   with the plan" without regard to who is named as a defendant.  Therefore, the Court rejects

12   Plaintiffs' argument and concludes that LW's claims are within the scope of the forum selection

13   clause.  *See Wallace v. International Paper Company*, No. 20-2242 JVS, 2020 WL 4938361, at *6

14   (C.D. Cal. July 2, 2020) (concluding that claims for breach of fiduciary duties were within scope

15   of forum selection clause pertaining to actions "in connection with the Plan").

16       **D.**    **Sixth Claim For Breach of ERISA Fiduciary Duties against MultiPlan**

17        The sixth claim is brought against MultiPlan under 29 U.S.C. § 1132(a)(3).  Under section

18   1132(a)(3), a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin

19   any act or practice which violates any provision of this subchapter or the terms of the plan, or (B)

20   to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any

21   provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).

22           **1.**   **Breach of Fiduciary Duties**

23        In ruling on MultiPlan's previous motion to dismiss, the Court found that Plaintiffs'

24   allegations were sufficient to allege MultiPlan's status as an ERISA fiduciary, but that the claim

25   was otherwise deficient.  In its second motion to dismiss, MultiPlan advances no reason to revisit

26   the Court's prior ruling regarding MultiPlan's status as an ERISA fiduciary.  MultiPlan maintains,

27

28   Case No.: 5:20-cv-02255-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS

1  however, that the FAC fails to rectify any of the pleading deficiencies.

2          As an initial matter, MultiPlan mischaracterizes the breach of fiduciary duties when it

3  focuses solely on misrepresentations.  The claim is based on broader allegations.  Plaintiffs allege

4  that MultiPlan breached its fiduciary duties to Plaintiffs by, among other things, "refusing to

5  properly determine appropriate reimbursement for Plaintiffs claims for medically necessary IOP

6  treatment"; employing a cursory, incomplete and/or biased reimbursement methodology through

7  the use of the Viant methodology"; and "failing to utilize an adequate and appropriate database in

8  determinations as to the UCR reimbursement amount in that the database did not contain similar,

9  representative charges of similar providers of similar services in the same geographic area as

10 Plaintiffs' providers."  FAC ¶¶ 485-91. These alleged breaches, which do not sound in fraud, are

11 supported with sufficient factual allegations to provide MultiPlan fair notice of what the claim is

12 and the grounds upon which it rests.

13         To the extent the breach of fiduciary duties claim is based on misrepresentations, Plaintiffs

14 must plead and prove: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2)

15 a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and

16 (4) detrimental reliance by the plaintiff on the misrepresentation."  *In re Computer Scis. Corp.*

17 *ERISA Litig.*, 635 F. Supp. 2d 1128, 1140 (C.D. Cal. 2009).  The allegations that support

18 Plaintiffs' RICO claim also support the breach of fiduciary claim.  Accordingly, MultiPlan's

19 motion to dismiss the sixth claim is denied.

20                              **2.  Equitable Relief**

21         Lastly, MultiPlan contends that Plaintiffs fail to plead they are entitled to equitable relief.

22 MultiPlan is correct that in general, "[f]or a plaintiff to establish that it is entitled to an injunction,

23 it must demonstrate, among other things, that "remedies available at law, such as monetary

24 damages, are inadequate to compensate for" plaintiff's injuries.  *Ctr. for Biological Diversity v.*

25 *Mattis*, 868 F.3d 803, 827 (9th Cir. 2017).   In the context of ERISA, however, a plaintiff may

26 seek relief in the alternative.  *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 962 (9th Cir.

27 Case No.:  5:20-cv-02255-EJD

28 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
   DISMISS

United States District Court
Northern District of California

1    2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016) ("allowing plaintiffs to

2    seek relief under both Sections 1132(a)(1)(B) and 1132(a)(3) is consistent with ERISA's intended

3    purpose of protecting participants' and beneficiaries' interests."). Certainly, Plaintiffs may not

4    obtain double recovery. *Id*. at 961. At the pleading stage, however, "[i]t is exceedingly premature

5    . . . to engage in a battle over whether or not a specific equitable remedy is appropriate. *Akhalaghi*

6    *v. Cigna Corp.*, No. 19-3754 JST, 2020 WL 6260012, at *7 (N.D. Cal. July 27, 2020) (quoting

7    *Dennis v. Cal. Physicians' Serv.*, No. 18-06708 WHA, 2019 WL 1301757, at *3 (N.D. Cal. March

8    21, 2019)).

9    ## IV.    CONCLUSION

10            For the reasons stated above, Defendants' motions to dismiss is GRANTED in part and

11   DENIED in part. The RICO claims are dismissed to the extent they are based on the predicate act

12   of money laundering. LW's claims are also dismissed. These claims are dismissed without leave

13   to amend because further amendments would be futile. *See Gardner v. Martino*, 563 F.3d 981,

14   990 (9th Cir. 2009) (leave to amend may be denied "where the amendment would be futile." );

15   *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already

16   granted a plaintiff leave to amend, its discretion . . . is particularly broad."). Defendants' motions

17   are DENIED in all other respects.

18            **IT IS SO ORDERED.**

19

20   Dated: September 2, 2022

21                                                    _____
                                                      EDWARD J. DAVILA
22                                                    United States District Judge

23

24

25

26

27   Case No.: 5:20-cv-02255-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
28   DISMISS

23

*(left margin, rotated)* United States District Court / Northern District of California