MATTHEW M. LAVIN
matt.lavin@agg.com
AARON R. MODIANO
aaron.modiano@agg.com
Arnall Golden Gregory LLP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone:    202.677.4030
Facsimile:    202.677.4031

David M. Lilienstein, Esq. (CA SBN 218923)
david@dllawgroup.com
Katie J. Spielman, Esq. (CA SBN 252209)
katie@dllawgroup.com
DL LAW GROUP
345 Franklin Street
San Francisco, CA 94102
Telephone:    415.678.5050
Facsimile:    415.358.8484

*Attorneys for Plaintiffs RJ, et al.*

# UNITED STATES DISTRICT COURT

## Northern DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| RJ, et al.,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>Cigna Health & Life Insurance Co., et al.,<br><br>   *Defendants*. | Case No. 5:20-cv-02255<br><br>Hon. Edward J. Davila<br><br>**Plaintiffs Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Class Certification**<br><br>Hearing Date: May 4, 2023<br>     9:00 AM PT<br><br>**San Jose Courthouse**<br>Courtroom 4 – 5th Floor<br>280 South 1st St.<br>San Jose, CA  95113 |

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

# Table of Contents

Table of Contents ................................................................................................................... i

Table Of Authorities ............................................................................................................. ii

Notice of Motion and Motion ............................................................................................... 1

Statement of Issues to Be Decided ....................................................................................... 1

Memorandum of Points & Authorities .................................................................................. 1

I. RULE 23 STANDARD ....................................................................................................... 1

II. INTRODUCTION ............................................................................................................. 1

III. SUMMARY OF PERTINENT FACTS ........................................................................... 2

  A. 'Maximum Reimbursable Charge' (MRC): MRC-1 & MRC-2 ..................... 2

  B. 'Usual & Customary' ("UCR") Rate Determinations ................................. 4

  C. Verification of Benefits ("VOB") Calls ....................................................... 5

  D. Explanations of Benefits ("EOBs") and Provider Remittance
    Advises ("PRAs") ......................................................................................... 6

IV. PLAINTIFFS' PROPOSED CLASS SATISFIES THE RULE 23
  REQUIREMENTS ....................................................................................................... 9

  A. The Facts in this Case Satisfy the Requirements of Rule 23(a) ................... 9

    1. The Classes Are Sufficiently Numerous ......................................... 10

    2. Commonality Is Satisfied ................................................................ 10

    3. Plaintiffs' Claims Satisfy the Typicality Requirement .................... 14

    4. The Adequacy Requirements of Rule 23(a)(3) Are
      Satisfied ........................................................................................... 15

    5. The Proposed Class Is Ascertainable .............................................. 16

  B. The Requirements of Rule 23(b) Are Satisfied ........................................... 16

    1. The RICO Claims Are Appropriate for Class Certification
      under Rule 23(b)(2) & (b)(3) .......................................................... 17

    2. The ERISA Claims Are Appropriate for Class
      Certification Under Rule 23(b)(1), (b)(2) & (b)(3) ......................... 21

V. CONCLUSION ................................................................................................................ 25

**Table Of Authorities**

**Page(s)**

**Cases**

*Alday v. Raytheon Co.*,
  619 F.Supp.2d 726 (D.Ariz.2008) ................................................................. 22

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) .......................................................................................... 1

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) .......................................................................................... 1

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) .......................................................................... 11

*Baird v. Blackrock Institutional Tr. Co., N.A.*,
  2020 WL 7389772 (N.D. Cal. Feb. 11, 2020) ............................................ 21, 22

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*,
  270 F.R.D. 488 (N.D. Cal. 2010), *modified sub nom. Barnes v. AT & T
  Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562 (N.D. Cal. 2011) ...... 22

*Bias v. Wells Fargo & Co.*,
  312 F.R.D. 528 (N.D. Cal. 2015) ................................................................... 20

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ............................................................. 16, 24, 25

*Buus v. WAMU Pension Plan*,
  251 F.R.D. 578 (W.D. Wash. 2008) ........................................................... 14, 23

*Castillo v. Bank of Am., NA*,
  980 F.3d 723 (9th Cir. 2020) .......................................................................... 11

*Caufield v. Colgate-Palmolive Co.*,
  2017 WL 3206339 (S.D.N.Y. July 27, 2017) ................................................. 16

*In re Citigroup Pension Plan ERISA Litig.*,
  241 F.R.D. 172 (S.D.N.Y. 2006) ..................................................................... 22

*Cohen v. Trump*,
  303 F.R.D. 376 (S.D. Cal. 2014) .................................................................... 20

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .................................................................................... 17, 25

*Congdon v. Uber Techs., Inc.*,
  291 F. Supp. 3d 1012 (N.D. Cal. 2018) .......................................................... 14

*Corcoran v. CVS Health*,
  2017 WL 1065135 (N.D. Cal. Mar. 21, 2017) ............................................... 12

*Dukes v. Wal–Mart Stores, Inc.*,
  603 F.3d 571 (9th Cir.2010) (*en banc*) ...................................................... 10, 17

*Farar v. Bayer AG*,
  2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) ............................................... 24

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ...................................................................................... 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................... 24

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................................................... 14

*Hart v. Colvin*,
   310 F.R.D. 427 (N.D. Cal. 2015) ........................................................................ 16, 23

*Hendricks v. Aetna Life Ins. Co.*,
   339 F.R.D. 143 (C.D. Cal. 2021) ................................................................................ 13

*In re Heritage Bond Litig.*,
   2004 WL 1638201 (C.D. Cal. July 12, 2004) ............................................................... 1

*Huyer v. Wells Fargo & Co.*,
   295 F.R.D. 332 (S.D.Iowa, 2013) ............................................................................... 18

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .......................................................................... 14, 15, 19

*Kazda v. Aetna Life Ins. Co.*,
   2022 WL 1225032 (N.D. Cal. Apr. 26, 2022) ............................................................. 23

*Lane v. Wells Fargo Bank, N.A.*,
   2013 WL 3187410 (N.D. Cal. June 21, 2013) ............................................................. 18

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ...................................................................................... 19

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) .................................................................................... 16

*Lynch v. Rank*,
   604 F. Supp. 30 (N.D. Cal.), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *opinion
   amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985) ..................................................... 16

*In re Managed Care Litigation*,
   298 F.Supp.2d 1259 (S.D.Fla.,2003) ......................................................................... 18

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D. Cal. 2004), *amended in part*, 2012 WL 3070863 (N.D.
   Cal. July 26, 2012) ..................................................................................................... 23

*Motorola Credit Corp. v. Uzan*,
   202 F.Supp.2d 239 (S.D.N.Y., 2002) ......................................................................... 18

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
   823 F.3d 948 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en
   banc* (Aug. 18, 2016) ................................................................................................. 21

*Munro v. University of Southern California*,
   2019 WL 7842551 (C.D. Cal. 2019) ........................................................................... 22

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

*Nat'l Org. For Women, Inc. v. Scheidler*,
  267 F.3d 687 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 154 L. Ed.
  2d 991 (2003) ........................................................................................................... 18

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  238 F.R.D. 482 (C.D. Cal. 2006).............................................................................. 21

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  287 F.R.D. 590 (C.D. Cal. 2012)....................................................................... 17, 20

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ........................................................................ 1, 19, 23

*Orantes-Hernandez v. Smith*,
  541 F. Supp. 351 (C.D. Cal. 1982) ........................................................................... 10

*Peters v. Aetna Inc.*,
  2 F.4th 199 (4th Cir. 2021), *cert. denied sub nom. OptumHealth Care Sols. v.
  Peters*, 142 S. Ct. 1227 (2022) ................................................................................. 13

*Plascencia v. Lending 1st Mortg.*,
  2011 WL 5914278 (N.D. Cal. Nov. 28, 2011) ......................................................... 18

*PRS v. Cigna*,
  No. 5:20-cv-02251-EJD (N.D. Cal. 2020) ................................................................ 16

*Religious Technology Center v. Wollersheim*,
  796 F.2d 1076 (C.A.9 (Cal.),1986) .......................................................................... 18

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .................................................................................. 10

*Schramm v. JPMorgan Chase Bank, N.A.*,
  2011 WL 5034663 (C.D.Cal. Oct. 19, 2011) ........................................................... 18

*Simpson v. Fireman's Fund Ins. Co.*,
  231 F.R.D. 391 (N.D. Cal. 2005), *modified*, 2007 WL 46785 (N.D. Cal. Jan. 5,
  2007) ......................................................................................................................... 14

*Smith v. United HealthCare Servs., Inc.*,
  2002 WL 192565 (D. Minn. Feb. 5, 2002)................................................................ 12

*Stromberg v. Qualcomm Inc.*,
  14 F.4th 1059 (9th Cir. 2021) ................................................................................... 23

*Tawfilis v. Allergan, Inc.*,
  2017 WL 3084275 (C.D. Cal. June 26, 2017)........................................................... 14

*Trujillo v. UnitedHealth Grp., Inc.*,
  2019 WL 493821 (C.D. Cal. Feb. 4, 2019) .............................................................. 22

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) ..................................................................................... 18

*Vega v. Ocwen Fin. Corp.*,
  2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) ......................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...............................................................................10, 14, 17, 24

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ................................................................. 15

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) .................................................................. 10

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    2014 WL 6888549 (C.D. Cal. Sept. 3, 2014) ........................................ 12

*Wit v. United Behav. Health*,
    317 F.R.D. 106 (N.D. Cal. 2016) ....................................................... 12, 13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir.2010) ........................................................... 11, 25

**Statutes**

18 U.S.C. § 1962(d) ....................................................................................... 2

ERISA § 502(a)(1)(B) ......................................................................... 2, 13, 21

ERISA § 502(a)(3) ................................................................................... 2, 21

ERISA §§ 502(a)(3) and 502(a)(1)(B) ......................................................... 22

ERISA § 502(a)(3) and a .............................................................................. 2

RICO, 18 U.S.C. § 1962(c) ............................................................................ 2

RICO § 1964(c) ........................................................................................... 18

**Other Authorities**

Rule 23(a) ........................................................................... 1, 9, 12, 14

Rule 23(a)(1)(B) ......................................................................................... 22

Rule 23(a)(2) ..................................................................................... 10, 11, 14

Rule 23(a)(3) .............................................................................................. 15

Rule 23(b) ........................................................................................ 1, 16, 25

Rule 23(b)(1) ............................................................................. 16, 21, 22, 23

Rule 23(b)(1)(A) ......................................................................................... 22

Rule 23(b)(1)(B) ......................................................................................... 21

Rule 23(b)(2) ......................................................................................... 17, 23

Rule 23(b)(3) ............................................................................. 17, 18, 21, 24

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

**Notice of Motion and Motion**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 4, 2023 at 9:00 a.m. in Courtroom 4 – 5th Floor, or at such other time as the Court may determine, before the Honorable Edward J. Davila, Plaintiffs RJ *et al.* ("Plaintiffs") in the above-captioned actions will and hereby do move for class certification pursuant to Federal Rule of Civil Procedure 23.

The relief Plaintiffs request in this motion is an order: (1) certifying the proposed Class defined below; (2) appointing Plaintiffs representatives of the Class; and (3) appointing Plaintiffs' counsel, Arnall Golden Gregory, LLP, as class counsel for the Class, as well as any other relief that this Court deems appropriate and proper. This motion is brought pursuant to Federal Rule of Civil Procedure 23, and is supported by this Notice of Motion, Motion, and accompanying Memorandum of Points and Authorities, the Declaration of Aaron R. Modiano, and all exhibits thereto, all pleadings on file in this lawsuit, and such other support as Plaintiffs may present to this Court.

**Statement of Issues to Be Decided**

The issues for this Court to decide are: (1) whether the Court should certify the proposed Class under Fed. R. Civ. P. 23(b)(1)(A), 23(b)(2), and/or 23(b)(3), for class action of the proposed Class; (2) whether the Court should appoint the Plaintiffs as Class representatives for the Class; and (3) whether the Court should appoint Arnall Golden Gregory, LLP as Class Counsel for the Class.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

**Memorandum of Points & Authorities**

## I. RULE 23 STANDARD

Federal Rule of Civil Procedure 23 sets forth the standards for class certification. To qualify for class certification, a class must meet the requirements of Rule 23(a) and one of three alternatives of Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). At this stage of litigation, extensive evidence is not required. *See In re Heritage Bond Litig.*, 2004 WL 1638201, at *2 (C.D. Cal. July 12, 2004). Discussing Rule 23, the Supreme Court has held, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). In evaluating whether Rule 23's prerequisites are met, the Ninth Circuit has clarified that a preponderance of the evidence standard applies. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022).

## II.   INTRODUCTION

This litigation encompasses a putative class with more than 150,000 claims representing more than 390,000 days of treatment for intensive outpatient therapy for more than 8,000 individual patients at more than 3,100 facilities. Plaintiffs and the thousands of putative class members were directly injured by Cigna and MultiPlan's unlawful scheme to underpay valid, medically necessary claims through the fraudulent and deceptive use of the Viant OPR methodology. Plaintiffs and the putative class members' reimbursement claims for out-of-network, intensive outpatient therapy ("IOP") for substance use disorders were submitted to Cigna with HCPCS code H0015 and/or revenue code 0906.[1] Within this overall group, Plaintiffs have asserted claims under ERISA and RICO that are appropriate for class certification. Plaintiffs propose the following: **Proposed Class Definition:**

*Any member of a health benefit plan administered or issued by Cigna and governed by*

---

[1] MultiPlan's "'Missing Value Approach' for Viant OPR MPI0000230, Exhibit 1.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

*ERISA, where the member's plan utilized Cigna's 'Maximum Reimbursable Charge' program for out-of-network benefits and whose claim(s) for intensive outpatient services billed with HCPCS H0015 and/or revenue code 0906 were priced by MultiPlan's Viant methodology, during the class period January 1, 2015 to the present.*

The claims at issue in this litigation are those whose pricing either have been or will be processed with the Viant OPR methodology. These are valid, payable claims that have not been denied on the basis of medical necessity or otherwise. These claims are processed through the Viant OPR methodology as having HCPCS code H0015. (*See* MPI0000230, Exhibit 1). For these claims, the Viant OPR methodology is fraudulently presented to providers, plan sponsors, and patients as "allow[ing] a direct comparison between the facility's billed charge and the facility charges for the same service within the geographic area." (*See* MPI0000216, Exhibit 2). The perpetuating and disseminating of this untrue statement, and representations that flowed from it to patients and providers for IOP services is at the heart of this litigation.

## III.   SUMMARY OF PERTINENT FACTS

Plaintiffs seek (1) violations of RICO, 18 U.S.C. § 1962(c) against both Defendants; (2) RICO conspiracy, 18 U.S.C. § 1962(d) against both Defendants; (3) underpayment of benefits in violation of ERISA against Cigna; (4) breach of plan provisions in violation of ERISA § 502(a)(1)(B) against Cigna; (5) violation of fiduciary duties of loyalty and duty of care under ERISA § 502(a)(3) and a request for declaratory and injunctive relief against Cigna; and (6) violation of fiduciary duties of loyalty and due care and request for declaratory and injunctive relief under ERISA § 502(a)(3) against MultiPlan. Plaintiffs' claims against Cigna and Multiplan are for their systematic, fraudulent use of Viant OPR as co-schemers, resulting in systematic, nationwide, underpayments of out-of-network behavioral health claims for intensive outpatient therapy ("IOP"). The Plaintiffs and the putative class members participate in ERISA governed health benefit plans administered by Cigna with out-of-network benefits whose IOP claims were priced using Multiplan's pricing tool, Viant OPR.

## A.   'Maximum Reimbursable Charge' (MRC): MRC-1 & MRC-2

Regardless of whether a patients' Cigna plan's MRC was described as 'MRC-1' or 'MRC-2' in the Summary Plan Description ("SPD"), the allowed amount was determined using

the same Viant OPR methodology for all claims at issue[2]. For all claims at issue it was represented to plan members or their agents that for 'MRC-1' plans, benefits were covered at the a specified, usually 80th, percentile of charges for similar services in the same geographic area and that 'MRC-2' plans be reimburse at a specified percentage of the Medicare schedule rate, typically 150% or more except where no Medicare schedule rates are provided, as MRC-2 plans state, generally, that "the MRC is determined based on the lesser of: the health care professional or facility's normal charge for a similar service or supply; or the MRC Option I methodology based on the 80th percentile of billed charges." (*see generally*, Exhibit 4 Plan Documents; *see also*, Michael Battistoni Deposition Transcript 131:1-10, 188:10-13, Exhibit 5). The SPDs did not include any language that mentioned MultiPlan, Viant, Viant OPR, or the 40th, 50th, or even 60th percentile of charges. *Id.*

Instead, the plans referred to a 'Usual & Customary' or 'UCR' claim determination methodology (Expert Report of Mark A. Hall, Exhibit 5, ¶5). Thus, all claims at issue in this litigation were required to be determined according to UCR. They were not. (*see* January 16, 2023 Expert Report of Ron Luke & Brian Piper, Research & Planning Consultants, LP, Piper ("RPC"), Exhibit 6, ¶¶14, 24, 31-32). This language was most often drafted by Cigna and, in every case, was approved by Cigna so that the MRC program could be applied in the same, systematic way by Cigna's automated claim processing systems[3]. The MRC program was set up within Cigna and MultiPlan's claim systems to apply the Viant OPR methodology consistently and uniformly, regardless of the wording contained within the plan documents and, as confirmed by multiple witnesses and documents produced during discovery, plan documents were not used in determining the MRC amounts[4]. This program provided completely automated claim

---

[2] Gabriel Smith, Product Manager for Cigna's Cost Containment Program, testified Cigna's definition of MRC ⬚⬚⬚⬚⬚⬚⬚ (Deposition Transcript, Exhibit 3, Pg. 67 Ln. 12-18); Hall Report ¶5; Lahav Report ¶13).

[3] *See* Beckstead 68: 17 –69: 2, " ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚ " (emphasis added); *see also*, Smith Dep. 131:8-132:7, 138:11-140:6.

[4] *See* Deposition Transcripts of Kathy Praxmarer, Exhibit 9, Dep. 53:3 " ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚ " *See also* Ralston Dec. ¶ 41.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

processing and pricing by Cigna and MultiPlan using Viant OPR. (See Ralston Dec. ¶ 41). For the entire class, each and every healthcare benefits plan provided for the reimbursement out-of-network claims according to Cigna's MRC program. This program was represented as paying at a percentile of UCR and, in each claim at issue, this was a lie. (*See* Ralston Dec. ¶ 39, 40).

**B. 'Usual & Customary' ("UCR") Rate Determinations**

Every claim at issue was required to have been determined based on UCR. UCR and similar phrases are widely used and understood terms within the healthcare community and refer to the determination of claim pricing based upon prevailing charges of similar healthcare providers in the same or similar geographic area (*see* Hall Report ¶5 & Appendix; RPC Report ¶15). In this litigation, the plan language provided to the Plaintiffs and the putative Class members indicated that IOP services would be determined at UCR rates based upon the charges of similar providers providing the same services in the same geographic area. (*see generally*, Exhibit 4). Viant OPR is represented as a UCR methodology. (*see* Deposition of Karen Beckstead, Exhibit 8, 11:19-24; MPI-C0000216; September 2018 Viant OPR white paper). However, nowhere in the plan documents are the terms MultiPlan, Viant, Viant OPR, or anything similar mentioned. (*see generally*, Exhibit 4). UCR determinations are most often based upon the 80th percentile of similar rates charged by similar providers in the same geographic area and charge percentiles below the 60th percentile are not normally used. (RPC Report, ¶47; *see also*, Deposition Transcript of Creyna Franco, Exhibit 16, Dep. at 30: 13-20; 38:19-23; 68:19-23). The leading source for data to determine UCR rates is FAIR Health (Hall Report, ¶5 & Appendix item 4). FAIR Health is "an independent nonprofit that collects data for and manages the nation's largest database of privately billed health insurance claims… established to bring transparency to healthcare costs and health insurance information.[5]" Under HCPCS code H0015, FAIR Health provides publicly accessible, local, rates for IOP treatment under HCPCS code H0015.

However, instead of processing and reimbursing the IOP claims at issue with a valid UCR methodology and data – such as FAIR Health – Cigna and MultiPlan, together, used the

---

[5] About us: Fair health, About Us | FAIR Health, https://www.fairhealth.org/about-us (last visited Aug 16, 2022).

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

1  Viant OPR methodology to derive a fraudulent, deceptive rate that was a small fraction of the

2  VOB quoted rate – the UCR percentile given on the VOB call – and well below any plausible

3  understanding of the UCR rate. The language contained in the patient's summary plan

4  description is the language referred to by Cigna as 'plan terms.' This language was most often

5  drafted by Cigna and, in every case, was approved by Cigna so that the MRC program could be

6  applied in the same, systematic way by Cigna's automated claim processing systems[6]. The MRC

7  program was set up within Cigna and MultiPlan's claim systems to apply the Viant OPR

8  methodology consistently and uniformly, regardless of the wording contained within the plan

9  documents and, as confirmed by multiple witnesses and documents produced during discovery,

10  plan documents were not used in determining the MRC amounts[7]. This program provided

11  completely automated claim processing and pricing by Cigna and MultiPlan using Viant OPR.

12  **C.  Verification of Benefits ("VOB") Calls**

13  For all claims at issue, the patients' providers verified insurance benefits, as the patients'

14  authorized representatives, prior to providing treatment during a 'verification of benefits'

15  ("VOB") call with Cigna's agents. Cigna's agents verified benefits only after receiving

16  authorization from the plan member their providers were authorized to do so.

17  During the VOB calls, Cigna's agents followed the same procedures and script[8] for Cigna's

18  'Maximum Reasonable Charge' ("MRC") program, relying on information from Cigna's internal

19  claim system (*See* Deposition Transcript of Rachel Murphy, Exhibit 16, Murphy Dep. 65:16-66).

20  Cigna's agents relied upon the system's information that was pulled up for each claim when they

21  stated during the VOB process that claims for mental health / substance use disorder (MH/SUD)

22  treatment would be reimbursed according to a specified percentile of the usual and customary

---

23  [6] See Beckstead Tr. Pg. 68 Ln. 17 – Pg. 69 Ln. 2, "

24

25  ." (emphasis added).

26  [7] *See* Ralston Dec. ¶¶35-37; *see also*, CIG_RJ00922454, Claim Pricing Policy, Exhibit 12, stating .

27  [8] Cigna Behavioral Health Claims Manual, Exhibit 11, CIG_RJ00922318; Cigna's out-of-network allowable
Maximum Reimbursable Charge Call, standard operating procedures produced at attached as Exhibit 13
CIG_RJ00004356; Cigna's Maximum Reimbursable Charge guidelines, Exhibit 14, CIG_RJ00922462

28

rates of similar providers providing the same service in the same geographic area. (*See* BA Screenshots Attached as Exhibit 26). They did not review or request any specific or individual plan documents during this process. (*See* Murphy Dep. 179:21-180:10). Cigna's agents also stated, using the same claim system information, what percentage of that usual and rate would be reimbursed once the out-of-pocket maximum was reached. (*See* VOB Composite, Exhibit 27; Murphy Dep. 264:18-267:5).

None of the system information referenced by Cigna's agents identified that the MRC amount would be determined under a different methodology or would use a different percentile than what was conveyed during the VOB call or contained within SPDs or any other Plan documents. (*See* Murphy Dep. 72:12-73:5). To the contrary, Cigna knew that its agents were conveying intentionally misleading information that did not include that Viant OPR would be utilized or that Viant OPR used the ▨ or ▨ percentile of an inadequate data set to determine the claim amount. ((*See* BA Screenshots Ex. 26) Murphy Dep. 72:12-73:5 (stating that call representatives were not ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨)). Because out-of-network providers have no access to the actual ERISA plans, Cigna and MultiPlan knew and intended that providers rely on the information provided to them during VOB calls and, in turn, knew their customers relied upon what was told to the providers during the VOB calls when deciding whether to proceed with treatment. (*See* Franco Dep. 223:19-22; 224:2-10).

**D.  Explanations of Benefits ("EOBs") and Provider Remittance Advises ("PRAs")**

After the claims were processed and priced, the members received Explanations of Benefits ("EOBs") from Cigna that stated their claims were priced using Viant and directing them to contact Viant at a dedicated phone number with any questions as to the reimbursement methodology and accompanying remark code. (*See* Composite EOB Exhibit 28). Providers received Provider Remittance Advices ("PRAs") with the same information and direction to contact Viant and the same remark code. (*See* Composite PRAs attached as Exhibit 29). Cigna actually changed this language in 2021, although this change did not change what was said

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

1    during VOB calls or appear anywhere in SPDs or any plan documents.

2        Patients and providers also received a Patient Advocacy Department ("PAD") letter with

3    both Cigna and Viant on the letterhead, generated and sent by MultiPlan[9] directing patients and

4    providers to contact Viant at a dedicated number regarding the reimbursement amount and

5    stating that the reimbursed amounts represented the usual and customary amounts charged by

6    similar providers for the same services in the same geographic area. Due to ongoing confusion,

7    Cigna later removed the MultiPlan logo from the PAD letter[10] but kept the phone number the

8    same. If patients or providers contacted Cigna upon learning that their claim was priced by

9    Viant, they were also directed by Cigna's agents to contact Viant. When contacted by providers,

10   Viant would often send the provider, and only the provider —not the patient, an Explanation of

11   Methodology ("EOM") that again represented the reimbursement amount as the usual and

12   customary charges of similar providers for the same service in the same geographic area.

13       None of this was true for the IOP claims at issue. From the beginning of the class period

14   until late 2018, the Viant OPR methodology took the ⬛⬛⬛⬛⬛⬛ from the CMS standard

15   analytical file ("SAF"), fewer than ⬛⬛ out of the more than 500 million total claims contained[11]

16   within the SAF, and applied ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ H0015 claims to

17   all H0015 claims priced using Viant OPR for Cigna. (*See* Deposition Transcript of Sean

18   Crandell, Exhibit 22, Dep. 149: 5-16., Beckstead Dep. 34:21-35:24; 59:10-60:20; Cothron Dep

19   42:4-16). The SAF file contains Medicare data for Medicare enrollee claims, and consists of a

20   population that is age 65 and older, for claims reimbursed by CMS. (Crandell Dep. 58: 13-59:10;

21   Beckstead Dep. 58: 18-61:16). IOP treatment, billed as H0015 on a UB-04 form, is not covered

22   by Medicare. (*See* Ralston Dec. ¶12). Despite this, and without any knowledge of the contents or

---

[9] *See* Battistoni Dep. at 192: 17-11; Deposition Transcript of Terri Cothron, Exhibit 17, Dep. at 66:18-67:14; Praxmarer Dep. 25:19-28:25; Deposition Transcript of Monica Armstrong, Exhibit 18, Dep. at 143:17-24

[10] *See* MPI-C0012522, Exhibit 19, internal Multiplan email chain dated February-July 2017 relating to updates to PAD letters, specifically Theresa Vasquez stated on June 30, 2017 that "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" Subsequent updates still directed ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛. See MPI-C0016258 and MCP-C0016274, Exhibit 20.

[11] *See* MPI- C0020819, Exhibit 21, September 21, 2018 e-mail from Karen Beckstead to Tom Ralston, both MultiPlan employees, "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛"

Case No. 5:20-cv-02255

specifics of the H0015 claims contained within the SAF (*See* Beckstead Dep. 63:15-64; Crandell Dep. 50: 23-51:3, :), Viant OPR was used to price tens of thousands of H0015 claims and represented them as being the UCR value (*see* Beckstead Dep. 79:22- 85: 9). For H0015 claims, this is an inappropriate methodology and does not produce a UCR. (*See* RPC Report ¶¶17-24).

The H0015 claims priced by Viant OPR from late 2018 on are equally deceptive. Those claims rely upon Viant OPR applying the SAF data for APC [12] and using that data directly to determine the price for H0015 claims. No comparisons of demographics or studies as to the appropriateness of this direct 'crosswalk' were conducted.[13] Viant OPR was used to price at least H0015 claims for Cigna between the first quarter of 2016 and the fourth quarter of 2021. (*See* RPC report ¶36). RPC analyzed the claim data produced to Plaintiffs and opined, the " th and th percentile values for the CIGNA claims are similar to the national values for . The percentile values for H0015 calculated based on CIGNA claims data are reasonable UCR values for commercial claims. There is a large volume of claims data covering the states and including charges for all types of IOP providers. The percentile values for H0015 calculated based on the OPSAF are unreasonable. There are few claims from even fewer providers. There are not claims from all types of IOP providers. The charges are only for the facility or technical component of the service." (¶43-44). However, Ms. Beckstead, testified that no clinical review of the use of APC was conducted and that the decision to equate H0015 to APC was based on her and Thomas Ralston's review of (Beckstead Dep. 17:11-20, 18:16-31:21.)[14] ) (See also Armstrong

---

[12] From the end of 2018 onwards, the Viant OPR methodology

and stating, " MPI C0020819; *see also* Beckstead Dep. :18: 3-5 " and 68: 7-11 " " (emphasis added).

[13] *See* See Battistoni Dep. 47:20-24 " " and how it was pricing l. (Ralston Dec ¶29)

[14] Ms. Beckstead further testified, " " (Beckstead Dep. 57:11-16).

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

Dep. 192:4-192:10; Crandell Dep. 55:10-57:24; 68:3-9; 71:16-72:11). Although Ms. Beckstead

testified that Mr. Ralston undertook "quite extensive research" justifying the use APC ⬜ to

reprice H0015 claims (Beckstead Dep. 155: 2-3). The record evidence produced by MultiPlan

shows that to be untrue and that MultiPlan's crosswalk of H0015 to APC ⬜ was rationalized

for financial, not clinical, reasons (See MPI-C0003432, Exhibit 23).[15]

By contrast, RPC analyzed Viant OPR's use of SAF data ⬜ (¶¶17-24) and APC

⬜ ((¶¶25-32) and found both lacking and not appropriate to generate a local UCR for H0015

claims. RPC opined that both were inappropriate to calculate a UCR value for H0015 claims.

This contrasts with Ms. Beckstead's testimony that Viant OPR produces a usual and customary

reimbursement rate. (Beckstead Dep. 169:17-20). Unlike Ms. Beckstead, Plaintiffs Expert RPC

undertook a meaningful analysis of H0015 claims, showing that Ms. Beckstead and MultiPlan's

UCR claims regarding Viant OPR are unreliable and incorrect.

As Plaintiffs' expert opined, "[n]othing in law or logic requires CIGNA or Multiplan to

base percentile values for all HCPCS codes on the OPSAF data. It is only a Multiplan company

policy." (RPC Report ¶33). This 'policy' allowed Defendants to fraudulently and unlawfully take

in millions of dollars of fraudulent "savings" for which they charged millions of dollars of

fees.[16] This scheme has been continuous since at least 2015, continues in operation to this day,

and will continue into the future without court intervention. Cigna's witnesses testified that

Cigna intends to continue to offer and use Viant OPR in its MRC program. For all of the reasons

set forth below, it is appropriate for the Court to certify Plaintiffs' ERISA and RICO claims for

class treatment.

## IV.   PLAINTIFFS' PROPOSED CLASS SATISFIES THE RULE 23 REQUIREMENTS

### A.  The Facts in this Case Satisfy the Requirements of Rule 23(a)

Rule 23(a) "requires a party seeking class certification to satisfy four requirements:

---

[15] Terri Cothron, a former employee of Cigna who responsible for the relationship between Cigna and Multiplan, and responsible for approving the underlying data to price H0015 claims stated that " ⬜
⬜ " (See Cothron Dep. 87:14-23, 91:4-5.)

[16] See Cigna Vendor Fee Reports, Composite Exhibit 25, CIG_RJ00005784, CIG_RJ00005785, CIG_RJ00804708; CIG_RJ00635020; CIG_RJ608833

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

numerosity, commonality, typicality, and adequacy of representation." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013) Each of these requirements is satisfied.

### 1.      The Classes Are Sufficiently Numerous

Numerosity met if the Court finds the proposed Class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(l). Numerosity may be satisfied in classes "with fewer than 100 members, and as few as 39." *In re Syncor*, 227 F.R.D. at 343. Even when "the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Here, the claims reports produced by the Defendants each contain more than            lines of claim data. The numerosity requirement easily met in this case. (*see* 1 Newberg and Rubenstein on Class Actions § 3:12 (6th ed.) ('a class of 40 or more members raises a presumption of impracticability of joinder'; Expert Report of Alexandra Lahav ¶25, 37).

### 2.      Commonality Is Satisfied

Under Rule 23(a)'s commonality requirement, there must be "common *questions* of law and fact". *Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir.2010) (*en banc*) (emphasis in original). However, "answering those questions," on the other hand, "is the purpose of the merits inquiry, which can be addressed at trial and at summary judgment." *Id.* The Ninth Circuit construes the commonality requirement of Rule 23(a)(2) permissively. *See e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). There is no requirement that members of the proposed class "share every fact in common or completely identical legal issues". *Rodriguez* 591 F.3d at 1122 (9th Cir. 2010). No more than a single common question is required for the commonality requirement of Rule 23(a)(2) to be satisfied. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). As to Plaintiffs' RICO claims specifically, the Ninth Circuit follows "an approach that favors class treatment of fraud claims stemming from a 'common course of conduct.'" *In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006). Class treatment has been permitted where "a standardized sales pitch is employed" and has "rejected a "talismanic rule that a class action may

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

not be maintained where a fraud is consummated principally through oral misrepresentations, unless those representations are all but identical," observing that such a strict standard overlooks the design and intent of Rule 23." *Id.* Plaintiffs have provided substantial record evidence showing a 'common course of conduct.'

Commonality demands only that "class members' 'situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir.2010). Rule 23(a)'s "commonality inquiry does not require plaintiffs to demonstrate the 'predominance' of common issues over individualized ones, nor the 'cohesion' of the class." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020). Commonality is satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members". *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Plaintiffs' proposed class satisfies this requirement as, overall, Plaintiffs' lawsuit challenges the system-wide use of Viant OPR for IOP claims. Plaintiffs have identified numerous common questions that are susceptible to common answers; even though, "[f]or purposes of commonality requirement for class certification, even a single common question will do." Fed. R. Civ. P. 23(a)(2).

Plaintiffs have submitted record evidence and expert opinions as to the system-wide practices and policies in Cigna's MRC program *supra* and the Defendants use of the Viant OPR methodology. Individual considerations do not prevail to defeat Plaintiffs' claims of commonality. Ralston's declaration soundly rebuts this argument as he states that "Regardless of plan language, all claims are processed precisely the same way by MultiPlan. To my knowledge, Viant cost containment services do not consider plan language and plan language is never sent to MultiPlan or considered by MultiPlan." (Ralston Dec. ¶40).

The evidence shows that not only did Cigna provide plans with template language for their Summary Plan Descriptions ("SPDs"), it also evaluated and determined internally that the SPD language used supported the use of Viant OPR in the MRC program. Further, the MRC program, for H0015 claims, employed a single methodology, Viant OPR, in pricing all of the putative class members' claims. It is the use of Viant OPR methodology and the fraud

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

surrounding its use with the MRC program that Plaintiffs are challenging at the programmatic level. The program occurred mechanically, repetitively, and in the same manner for every claim in the putative class.

This distinguishes the present litigation from cases such as *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 2014 WL 6888549 (C.D. Cal. Sept. 3, 2014) that involved "the claims of millions of subscribers and providers, which arise out of tens of thousands of WellPoint insurance contracts." Here, Plaintiffs' class is tailored to challenging Defendants' MRC program and the Viant OPR methodology used to fraudulently determine reimbursement rates for Plaintiffs' and class members IOP / H0015 claims. Plaintiffs have shown through record evidence and the reports of its experts that commonality under Rule 23(a) exists for the claims Plaintiffs are seeking to have certified as a class. Overstating the effect of small differences in benefit plans is a common tactic used by Defendants in attempting to avoid class certification; as stated by another district court, "[a]lthough UHC accentuates the existence of thousands of different employer-sponsored health care benefits plans in 29 states, minor variations in the phrasing of the relevant plan language do not make the claims atypical with respect to the claims alleged in the Complaint." *Smith v. United HealthCare Servs., Inc.*, 2002 WL 192565, at *4 (D. Minn. Feb. 5, 2002). The court in *Wit v. United Behav. Health*, 317 F.R.D. 106 (N.D. Cal. 2016), addressing a similar argument, and much of the same case law, held "[t]he court in *In re Wellpoint* did not, however, suggest that the mere fact that class members were insured under different plans precluded commonality. To the contrary, it recognized that it is possible to satisfy the commonality requirement when there are multiple ERISA plans, for example, where the 'ERISA plans at issue had terms that were common across the proposed class.'" *Id.* at 129. The Viant OPR methodology is the same for every claim at issue in the proposed class and its fraudulent application to IOP / H0015 claims is at the heart of Plaintiffs' case[17].

---

[17] Likewise, cases following *In re WellPoint* are similarly distinguished. *Corcoran v. CVS Health*, 2017 WL 1065135, at *5 (N.D. Cal. Mar. 21, 2017) found that, even more important than the differing contracts was that "several executives from the largest PBMs in the industry have submitted declarations expressing their understanding that the HSP prices at issue in this litigation were not considered U&C prices." *Id.* at *6. Here, Multiplan never received the plan language for the claims relevant to Plaintiffs' claims and did not price the claims according to that language.

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

1   It is not the case that each Plaintiff needs to show that the rate reimbursed on *their* claim

2 was unreasonable under the terms of *their* plan based on the information available to Defendants

3 at the time they determined the reimbursement amount. As in *Wit* 317 F.R.D. at 127, where the

4 Court stated "Plaintiffs seek only an order that UBH develop guidelines that are consistent with

5 generally accepted standards and reprocess claims for coverage that were denied under the

6 allegedly faulty guidelines", Plaintiffs seek an order that the MRC program and claims whose

7 reimbursement amount was determined through the Viant OPR methodology that adopts a

8 transparent and accurate reimbursement methodology. In situations such as this, "varying EOBs,

9 plans, and damages[, w]hile these distinctions among proposed class members may affect the

10 dollar amount or scope of the available remedies, they do not reflexively defeat class

11 certification when the underlying harm derives from the same common contention . . . we fail to

12 see how surcharge, disgorgement, or declaratory and injunctive relief would necessarily be

13 foreclosed here in a class context." *Peters v. Aetna Inc.*, 2 F.4th 199, 243 (4th Cir. 2021), *cert.*

14 *denied sub nom. OptumHealth Care Sols. v. Peters*, 142 S. Ct. 1227 (2022).

15   Plaintiffs' claim for improper denial of benefits under ERISA § 502(a)(1)(B) similarly

16 has common questions of law and fact. Class certification is appropriate when an ERISA §

17 502(a)(1)(B) claim "has the capacity "to generate common *answers* apt to drive the resolution of

18 the litigation" *Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143, 148 (C.D. Cal. 2021) (emphasis

19 in original, citation omitted). Plaintiffs' ERISA § 502(a)(1)(B) claim involves the common

20 question as to whether the pricing of Plaintiffs' and the putative Class' claims priced through

21 Viant OPR produced a valid UCR. (FAC ¶¶460-467). Also, commonality is satisfied as the

22 Plaintiffs have shown that the ERISA plans at issue have common or substantially similar terms

23 concerning the implementation of MRC for the claims of Plaintiffs and the putative class[18].

24   The commonality requirement is also easily met here for both ERISA and RICO claims.

25

26 [18] *See Wit v. United Behav. Health*, 317 F.R.D. 106, 128 (N.D. Cal. 2016) "The court in *In re Wellpoint* did not,
however, suggest that the mere fact that class members were insured under different plans precluded commonality.

27 To the contrary, it recognized that it is possible to satisfy the commonality requirement when there are multiple
ERISA plans, for example, where the "ERISA plans at issue had terms that were common across the proposed

28 class." *Id.* at *11.

Fed. R. Civ. P. 23(a)(2). Commonality requires that the plaintiff demonstrate that a 'common contention' that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The core common contention here is that the Viant OPR pricing methodology did not produce a UCR rate but rather systematically underpriced claims. This factual contention is the same for every class member and is central to their claims. (See Lahav Report ¶¶38-41) Accordingly, the commonality requirement is met for all of Plaintiffs' claims.

### 3. Plaintiffs' Claims Satisfy the Typicality Requirement

Rule 23(a) typicality focuses on the connections between the facts and issues among the class and its representatives. *See Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 585 (W.D. Wash. 2008) *citing Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1184 n. 12 (9th Cir. 2007). "[F]or purposes of typicality, it is enough to find that plaintiffs' theory of their injury is the same theory of injury for the entire class" *Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1027 (N.D. Cal. 2018); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Differences in the amount of harm sustained 'do not negate a finding of typicality, provided the cause of those injuries arises from a common wrong.'" *Tawfilis v. Allergan, Inc.*, 2017 WL 3084275, at *9 (C.D. Cal. June 26, 2017) (citation omitted). Under the typicality requirement, a court examines "the defendants' conduct and plaintiff's legal theory", not the injury caused to the plaintiff, and does not require that "all class members suffer the same injury as the named class representative." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005), *modified*, 2007 WL 46785 (N.D. Cal. Jan. 5, 2007). Plaintiffs have asserted the same theory of injury for the entire class and have shown that Viant OPR applied the same flawed pricing methodology to their IOP claim as it did to every other class member's claim.

The named Plaintiffs and putative Class members have all suffered a RICO injury that resulted from the activity and operation of the RICO enterprise; it is irrelevant if the injuries were the result of different predicate acts, as the injuries are all the result of the same scheme. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017) ("[T]ypicality [is] satisfied

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

1  where plaintiff's 'injuries stem from the same scheme, although the specific predicate act that

2  caused her injury may differ from the acts that caused injury to other class members. . .

3  [Plaintiff's] allegation of harm based on some of the activities comprising the RICO violation is

4  sufficient.'"). Each named Plaintiff and putative Class member has financial responsibility for

5  the difference between their provider's billed charges and the Viant OPR determined

6  reimbursement amount. The Viant OPR amount is below the UCR amount that should have been

7  reimbursed. Thus, whether patients paid this amount out-of-pocket or incurred injury in the form

8  of owing the balance amount, or even endured the time and stress of attempting to have their

9  claim properly reimbursed, they suffered a RICO injury. *Id.* at 1108.

10  Plaintiffs' ERISA claims likewise meet the typicality requirement. Plaintiffs' claims were all

11  processed and priced through Viant OPR, each having a remark code representing Viant OPR

12  (*see* EOB Composite Exhibit 28) Here, the named plaintiffs are typical of the class as a whole

13  because they all filed claims for reimbursement for out-of-network intensive behavioral therapy

14  from Cigna and their claims for treatment were all underpriced through the same flawed

15  methodology, Viant OPR. The SPDs from the sample claims agreed to by the parties show that

16  all the plans were substantially similar in reimbursing under UCR rates. All providers obtained

17  information from a single source provided by Cigna pursuant to the company's policy (as

18  evidenced by the testimony of Cigna executives and recordings), providers reasonably relied on

19  this information (as evidenced by that same testimony), and the class members claims were all

20  processed using uniform methodology contained in a single database – Viant OPR (*See* Lahav

21  Report ¶41). Accordingly, the typicality requirement is met.

**4.  The Adequacy Requirements of Rule 23(a)(3) Are Satisfied**

**a)  Plaintiffs Are Adequate Class Representatives**

24  Class members are adequate class representatives when (1) they have a sufficient interest

25  in the outcome of the case to ensure vigorous advocacy, and (2) there is no reason to believe that

26  a conflict exists between the class representatives and the other putative class members. The

27  underlying merits of any particular class representative's claim have no bearing on their ability to

28  act as class representatives. *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998). In the

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

Ninth Circuit, "the adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative." *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, fn.2 1162 (9th Cir. 2001). Plaintiffs have all participated in the discovery process by producing documents, responding to Defendants' interrogatories, and sitting for depositions. They have actively participated in the prosecution of this matter so far and will continue to do so (*see* Lahav Report ¶¶42-45). Plaintiffs have sat for depositions, demonstrated a general understanding of the litigation, and shown that they will act in the interests of the class. *See Caufield v. Colgate-Palmolive Co.*, 2017 WL 3206339, at *5 (S.D.N.Y. July 27, 2017).

### b)    Plaintiffs' Attorneys Are Experienced and Qualified Class Counsel

Plaintiffs' attorneys have successfully prosecuted nationwide actions against insurance companies for ERISA violations. There is no conflict with Plaintiffs' counsel's prior representation of healthcare providers in the previously dismissed *PRS v. Cigna*, No. 5:20-cv-02251-EJD (N.D. Cal. 2020). Further, "[m]ere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification." *Hart v. Colvin*, 310 F.R.D. 427, 436 (N.D. Cal. 2015). Accordingly, Plaintiffs' attorneys are experienced and qualified to serve as class counsel.

### 5.    The Proposed Class Is Ascertainable

The proposed Class is ascertainable and defined by objective criteria. The exact number of persons in the proposed Class does not need to be determined for a class to be certified. *See Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal.), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *opinion amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985) (collecting cases). The Ninth Circuit held, "the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). The proposed Class is defined by objective criteria as set forth *supra* and the reports of Plaintiffs' experts, and is, therefore, ascertainable.

### B.  The Requirements of Rule 23(b) Are Satisfied

"Rule 23(b)(1) allows a class to be maintained where 'prosecuting separate actions by or

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

1    against individual class members would create a risk of' either '(A) inconsistent or varying

2    adjudications', or '(B) adjudications . . . that, as a practical matter, would be dispositive of the

3    interests of the other members not parties to the individual adjudications or would substantially

4    impair or impede their ability to protect their interests.'" *Wal-Mart Stores, Inc. v. Dukes*, 564

5    U.S. 338, 346 n. 2 (2011). Rule 23(b)(2) allows a class to be maintained "when 'the party

6    opposing the class has acted or refused to act on grounds that apply generally to the class, so that

7    final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

8    whole.'" *Wal-Mart Stores, Inc* 564 U.S. at 345–46. "Rule 23(b)(3) states that a class may be

9    maintained where 'questions of law or fact common to class members predominate over any

10   questions affecting only individual members,' and a class action would be 'superior to other

11   available methods for fairly and efficiently adjudicating the controversy.'" *Wal-Mart Stores, Inc.*

12   564 U.S. at 346 n. 2. The predominance requirement is unique to (b)(3) and not required of

13   (b)(1) or (b)(2). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

>    **1.    The RICO Claims Are Appropriate for Class Certification under Rule 23(b)(2) & (b)(3)**

15   Under both Rule 23(b)(2) and 23(b)(3) any reliance analysis in this case does not require

16   individual inquiry. (Lahav, ¶¶ 39-40). Further, the 'reliance' that satisfies a civil RICO claim has

17   been interpreted broadly and is not intended to impose a high bar. *See, e.g., Negrete v. Allianz*

18   *Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 596 (C.D. Cal. 2012), affirming certification of a civil

19   RICO class "where proof of reliance is 'a milepost on the road to causation'" citing *Poulos v.*

20   *Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir.2004). The Court affirmed the use of a

21   "common sense" under the circumstances in *Negrete*, 287 F.R.D at 613. The same "common

22   sense" approach is well-suited to the facts of this case[19].

23   Having thus established a class-wide presumption of reliance, the "presumption cannot be

24   rebutted by showing that <u>individual absent class members</u> did not rely upon the fraudulent

25   ___

     [19] *See* Murphy Depo. 325:11-332:24 (discussing the VOB calls and recordings of Cigna call center agents providing

26   benefits information to providers for members with the MRC programs stating that Cigna "                    "

27                                                                                                    VOB recording

     and testimony thereon relating to the MRC Program. *See also* Appendix to Hall Supp. providing numerous examples

28   of usual and customary and its congeners and generally accepted and understood meaning within healthcare.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

omissions. The presumption [can] be rebutted on a class-wide basis only if there is evidence that can be properly generalized to the class as a whole." *Plascencia v. Lending 1st Mortg.*, 2011 WL 5914278, at \*2 (N.D. Cal. Nov. 28, 2011) (underlining added). Defendants have produced no such evidence and therefore cannot rebut the class-wide presumption of reliance at this stage of the litigation. Regarding a RICO injury, it is well established that a debt constitutes an economic injury for many purposes. *See e.g. Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410, at \*11 (N.D. Cal. June 21, 2013) ("debt is an economic injury"); *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241, at \*8 (C.D. Cal. Mar. 24, 2015). It is well established that "damages as compensation under RICO § 1964(c) for injury to property must, under the familiar rule of law, place [the injured parties] in the same position they would have been in but for the illegal conduct." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 122 (2d Cir. 2013). In *In re U.S. Foodservice*, the court found RICO damages on the fact of that case were "the amount of overcharge—the amount customers paid [Defendant] as a result of its deception." *Id.* at 123. RICO damages can be measured in a similar manner in this litigation as the amount that Defendants under-reimbursed as the result of the Enterprise's fraudulent use of Viant OPR. (*see* Ralston dec. ¶ 34). Further, the actual determination of damages for Plaintiffs' civil RICO claims is not of a nature that would preclude class certification. *See e.g.*, *Schramm v. JPMorgan Chase Bank, N.A.*, 2011 WL 5034663, \*11–12 (C.D.Cal. Oct. 19, 2011); 2 Newberg on Class Actions § 4:57 (5th ed.). Further, a prospective injunction is appropriate because the MRC program with Viant OPR continues to be used by the Defendants in the same fraudulent manner and as a part of the same scheme that gave rise to the present litigation.[20]

Plaintiffs' RICO claims meet the "common question" requirements for class certification under Rule 23(b)(3). "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is

---

[20] *Accord*, *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 344 (S.D.Iowa, 2013); *In re Managed Care Litigation*, 298 F.Supp.2d 1259, 1283 (S.D.Fla.,2003); *Motorola Credit Corp. v. Uzan*, 202 F.Supp.2d 239, 244 (S.D.N.Y., 2002); *but see*, *Religious Technology Center v. Wollersheim*, 796 F.2d 1076 (C.A.9 (Cal.),1986) (finding injunctive relief unavailable to civil RICO plaintiffs). Plaintiffs urge the Court to reject *Wollersheim* and instead follow *Nat'l Org. For Women, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 154 L. Ed. 2d 991 (2003) for the same reasons outlined in the cases cited.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

Case No. 5:20-cv-02255

*capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs

would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th

651, 666–67 (9th Cir. 2022) (emphasis in original). "[A] district court cannot decline

certification merely because it considers plaintiffs' evidence relating to the common question to

be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue."

*Olean*, 31 F.4th at 667. The Ninth Circuit continued, "we have held that a district court is not

precluded from certifying a class even if plaintiffs may have to prove individualized damages at

trial." *Olean*, 31 F.4th at 668–69. For purposes of Rule (23)(b)(3), Plaintiffs need only propose a

valid method for calculating class-wide damages, not perform an actual calculation of damages.

*See Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013).

This Court has already held Plaintiffs sufficiently alleged that they were harmed as a

natural and foreseeable consequence of Cigna and MultiPlan's alleged RICO enterprise and that

Plaintiffs did not need to allege first-party reliance on the Defendants' misrepresentations or

omissions (*see* Dkt. 116) and Plaintiffs have now supported these allegations with record

evidence and expert opinions as set forth *supra*. Plaintiffs' RICO claims have them and members

of the class incurring financial obligations that they would not have otherwise incurred if their

claims had been paid according to a genuine UCR methodology. It is irrelevant if the injuries

were the result of different predicate acts, as the injuries are all the result of the same scheme.

*See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017) (See Lahav Report ¶66).

Balance bills are irrelevant to all of the claims at issue and is a common practice for out-of-

network healthcare providers and is done as a part of their usual course of business[21].

Defendants knew and intended that MRC program and Viant OPR in particular were conveyed

as determining reimbursement rates based on UCR, a term that is widely used and understood in

the healthcare field and by Defendants (*see* Ralston dec. ¶¶ 11, 14, 37) and Defendants had full

knowledge that Viant OPR *never* produced a UCR for IOP claims (Ralston dec. ¶¶ 14, 37) and

---

[21] *See* Declaration of Michael Borkowski Regarding Subpoena Issued to SBH Union IOP, LLC D/BA/ Serenity at Summit/Summit Behavioral Health, Exhibit 26, CIG_RJ00972180; Borsten depo. at 108:2 – 112:25; Franco Depo. 151:18 – 151:23.)

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

these issues are resolvable on a class-wide basis.

a)       **RICO Reliance Can Be Determined on a Class-Wide Basis**

Plaintiffs have presented evidence such that a finder of fact could find reliance and, as stated by a sister court, "[b]ecause plaintiffs' evidence may enable them to establish reliance and thus causation in this case, the Court finds that common issues regarding [Defendant's] alleged overarching fraudulent scheme predominate over questions affecting only individual members of the nationwide class." *Negrete* 238 F.R.D at 492 (C.D. Cal. 2006). Plaintiffs' allegations of third-party reliance by Plaintiffs' providers on what Cigna told the providers told within VOB calls, the PAD letters, and other communications using the mail and wires, are sufficient (*see* MTD Order, Dkt. 60 pg. 13 - 18). These representations are based on common policies and procedures of the Defendants and are appropriate for class certification.

Every provider, when calling to verify a member's benefits, asked Cigna's agent for the same information: the rate at which out-of-network substance abuse behavioral health claims would be paid. Cigna's agents followed the same script and procedure each time and informed the provider that claims would be paid based upon the UCR as set forth *supra*. Cigna knew that providers would call to verify benefits, be told the UCR rate from Cigna's claim system, and the providers relied on this information, as did the patients, in deciding to proceed with treatment.[22] The patients and providers then proceeded with treatment, causing the patients to incur liability for the cost of the services provided to them. It was only after treatment was provided, after the patients' claims were processed using the fraudulent Viant OPR methodology, that the patients and their providers felt the sting of the Defendants' 'bait-and-switch' when the patients were left with overly large personal liability for the balance of what should have been paid at 'usual and customary' rates. Where, as here, the same fraudulent scheme affects every member of the class, a RICO class action is appropriate. *See, Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 537 (N.D. Cal. 2015); *Cohen v. Trump*, 303 F.R.D. 376 (S.D. Cal. 2014).

Further, consistent with and reinforcing the Defendants' scheme to defraud and supporting the providers' reliance upon statements made to them during the VOB calls, providers

[22] *See* VOB Composite Exhibit 27; Depo. of JoAnne Forrest 192:18 – 192:23, 211:6 – 211:13, 212:25 – 213:23.

Case No. 5:20-cv-02255

1   were required to call Viant if they disputed the reimbursement amount, then received a common,

2   scripted, 'education' on Viant's methodology, and were provided intentionally misleading and

3   incorrect EOMs to bolster the Defendants' fraudulent scheme. This is an ongoing, repeated

4   process in furtherance of the RICO enterprise.

### b)   Superiority

5   

6   Under Rule 23(b)(3), the superiority requirement for class action is met where class-wide

7   litigation of common issues will reduce litigation costs and promote greater efficiency. *See*

8   *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 493 (C.D. Cal. 2006). The superiority

9   requirements are clearly met here. First, most individuals are unlikely to independently bring suit

10   for their claims. For many, the recovery would be too small to independently pursue and the

11   putative class consists of patients that sought treatment for substance use disorders, a population

12   with a chronic disease that is not necessarily well suited to pursue their rights through

13   complicated litigation. Further, if every class member brought a claim, courts nationwide would

14   be congested and overburdened with having to determine whether Viant OPR employed a valid

15   'usual and customary' methodology and whether such actions formed part of a RICO enterprise.

### 2.   The ERISA Claims Are Appropriate for Class Certification Under Rule 23(b)(1), (b)(2) & (b)(3)

16   

17   Plaintiffs' claims for equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

18   and improper denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) are

19   appropriate for class resolution.

### a)   Plaintiffs' ERISA Claims Are Appropriate Under Rule 23(b)(1)

20   

21   Certification of an ERISA class action under Rule 23(b)(1) is "particularly appropriate in

22   cases involving ERISA fiduciaries who must apply uniform standards to a large number of

23   beneficiaries." *Baird v. Blackrock Institutional Tr. Co., N.A.*, 2020 WL 7389772, at *14 (N.D.

24   Cal. Feb. 11, 2020) (collecting cases, internal citations and quotations omitted). In particular, the

25   Ninth Circuit has held that certification under Rule 23(b)(1)(B) is appropriate for an ERISA class

26   that is based on oral representations that were made "where the defendant's representations were

27   allegedly made on a uniform and classwide basis, individual issues of reliance do not preclude

28   class certification." *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 964-5 (9th Cir. 2016), *as*

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

*amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016). Courts in the Ninth and other Circuits have all certified 23(b)(1)(A) & (B) classes in ERISA cases. *Id*[23]. Because the primary relief sought by Plaintiffs under ERISA is a reprocessing of claims under an appropriate UCR standard, certification under Rule 23(b)(1)(A) and (B) is appropriate. Under Rule 23(b)(1)(A), there is the risk that different adjudicative bodies could apply different applications or approaches to the usual and customary determinations. *Cf. Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 496 (N.D. Cal. 2010), *modified sub nom. Barnes v. AT & T Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562 (N.D. Cal. 2011). Rule 23(a)(1)(B) is also met because "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner" *Alday v. Raytheon Co.*, 619 F.Supp.2d 726, 736 (D.Ariz.2008), thus applying the determination of usual and customary for one member to all other plan members.

Plaintiffs are challenging Defendants method of calculating reimbursement and the incidental effect of likely having to pay additional reimbursement amounts when using an appropriate, objective, methodology is consistent with the many cases where courts have certified classes. As discussed *supra*, the practices that Plaintiffs contend constitute violations of ERISA §§ 502(a)(3) and 502(a)(1)(B) involve determinations that would necessarily involve determinations for other plan members, making certification under Rule 23(b)(1) appropriate. (*See* Lahav Report ¶¶47-48). Cigna has one program, the MRC program, and its obligations under this program do not vary from in a significant or meaningful way between plans for class members' claims. As stated by a sister court in *Trujillo v. UnitedHealth Grp., Inc.*, 2019 WL 493821, at *8 (C.D. Cal. Feb. 4, 2019), "[t]he Court concludes that the requirements of Rule 23b(1)(A) are met here… if this Court were to find that the terms of United plans and ERISA claim processing and notice rules required United to act in a certain fashion, and another court found that those same terms and rules required United to act in a different fashion, United would

---

[23] *See also, In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006); *Munro v. University of Southern California*, 2019 WL 7842551, *9-10 (C.D. Cal. 2019); *Baird v. Blackrock Institutional Tr. Co.*, 2020 WL 7389772, at *14 (N.D. Cal. Feb. 11, 2020).

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

face an 'incompatible standard of conduct.'" As the such the putative class should be certified

pursuant to Rule 23(b)(1).

      **b)**        **The ERISA Classes Are Appropriate for Class Certification Under Rule 23(b)(2): Injunctive Relief**

"Rule 23(b)(2) requirements are unquestionably satisfied when members of a putative

class seek uniform injunctive or declaratory relief from policies or practices that are generally

applicable to the class as a whole." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067 (9th Cir.

2021). The relief sought by Plaintiffs is applicable to class as a whole. As to ERISA claims, the

reprocessing of all the claims at issues using an objective reimbursement methodology and

requiring such a methodology for those plans that continue to participate in the MRC program

with Viant OPR, is equitable relief that is appropriate under Rule 23(b)(2). *See Buus* 251 F.R.D.

at 588 ("Plaintiffs also seek equitable relief in the form of a recalculation of the accrued benefits

of class members based upon the old, pre cash balance formula for calculating benefits… This

relief applies to each subclass as a whole. Rule 23(b)(2) is satisfied."). As sister courts have held,

"[a] reprocessing injunction—requiring the defendants to reprocess denied claims— [is] an

appropriate basis for class certification under Rule 23(b)(2)." *Kazda v. Aetna Life Ins. Co.*, 2022

WL 1225032, at *6 (N.D. Cal. Apr. 26, 2022)). Further, "the Supreme Court has long recognized

that in cases seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing

to satisfy Article III." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th

651, 682 (9th Cir. 2022) (collecting cases). Plaintiffs and the Class members are all seeking

declaratory and injunctive relief to remedy the same conduct on the part of Cigna and MultiPlan:

their uniform practice and fraudulent use of Viant OPR,[24]. All class members were, and will be,

affected by Defendants' policies and practices in the same way. There can be no doubt, therefore,

that this action "necessarily involve[s] acts that are generally applicable to the class." *Moeller v.*

*Taco Bell Corp.*, 220 F.R.D. 604, 612 (N.D. Cal. 2004), *amended in part*, 2012 WL 3070863

(N.D. Cal. July 26, 2012); *Hart v. Colvin*, 310 F.R.D. 427, 435 (N.D. Cal. 2015). It is irrelevant

---

[24] Beckstead Depo. 85:7 – 85:9, 172:2 – 172:18.; Praxmarer Depo. 222:12 – 223:12.); Deposition Transcript of Keith Jones, Exhibit 30, Depo. at 155:13 – 155:21.); Crandell Depo. 20:23 – 21:5, 31:3 – 32:10, 119:5 – 123:1.

whether the reprocessing of the claims ultimately changes the reimbursement outcome[25], every claim at issue in this matter was processed using Viant OPR (*see* Lahav Report ¶¶49-54), and class certification is appropriate.

### c) The ERISA Classes Are Appropriate for Class Certification Under Rule 23(b)(3): Predominance & Superiority

Under Rule 23(b)(3), "a class may be maintained where 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 346 n. 2 (2011).

### (1)    Predominance

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted). All class members seek the same relief, and their entitlement to such relief does not depend on individualized issues as set out *supra.* (See Lahav Report ¶¶55-62). Therefore, the proposed Class therefore satisfies the predominance requirement of Rule 23(b)(3).

### (2)    Superiority

The requirements of Rule 23(b)(3) are met where common questions of law or fact occupy a significant aspect of the case and can be resolved for all members in a single adjudication. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) *overruled on other grounds* by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Plaintiffs have provided an objective class definition appropriate for Rule 23(b)(3) certification and, most importantly, the class definition is objective. *See Farar v. Bayer AG*, 2017 WL 5952876, at *13-14 (N.D. Cal. Nov. 15, 2017). Likewise, in *Briseno* the Ninth Circuit squarely rejected the claim that, for

---

[25] Further, Cigna's 30(b)(6) deponent testified

30(b)(6) Depo. of G. Smith 139:6 – 139:19.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.677.4030
WWW.AGG.COM

certification, a plaintiff must show an "administratively feasible" way to identify class members. 844 F.3d at 1133. The Court stated, "an independent administrative feasibility requirement is unnecessary." *Id*. Not only is such a requirement unnecessary, it also "conflicts with the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Id*. at 1128.

Further, the putative Class satisfies the superiority requirement because a "class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010) (quotations omitted). Here, "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Id*. at 1175. Based on the record evidence presented and discussed *supra*, the putative class satisfies the requirements of Fed. R. Civ. P. 23(b)(3)(A)-(D). There are overriding common issues in this case that allow for a finding of liability against the Defendants under Plaintiffs' ERISA claims and for the application of a common remedy (Lahav, ¶ 61). Certification of the class, therefore, would best serve the interest of both the individual class members and judicial economy.

### (3)     Plaintiffs' Damages Model Satisfies the *Comcast* Standard

Under a damages model for class certification pursuant to Rule 23(b), "[c]alculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (internal citations omitted). The model proposed by Plaintiffs meets this standard and is consistent with their liability case. *See* Hall Report ¶5; RPC Report ¶48. MultiPlan's witness Ms. Beckstead when asked about using other data sources or even the claim data already within MultiPlan's possession testified "there's all sorts of options as to what we could do" and agreed that the claims of the putative class could be reprocessed using the payor charge data already in MultiPlan's possession (Beckstead Tr. Pg. 39 Ln. 3 Pg. 40 Ln. 21).

### V.     CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully ask the Court to certify the proposed Class, as well as any other such relief that the Court deems just and proper.

1

2  Dated: January 17, 2023                                    Arnall Golden Gregory LLP

3                                                             /s/ Matthew M. Lavin

4                                               By:              MATTHEW M. LAVIN
                                                                AARON R. MODIANO
5

6                                                            DL LAW GROUP

7                                               By:          /s/ David M. Lilienstein
                                                            DAVID M. LILIENSTEIN
                                                            KATIE J. SPIELMAN
8

9                                                           Attorneys for Plaintiffs RJ, et al.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28