Matthew M. Lavin (pro hac vice)
matt.lavin@agg.com
Aaron R. Modiano (pro hac vice)
aaron.modiano@agg.com
**Arnall Golden Gregory LLP**
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone:      202.677.4030
Facsimile:      202.677.4031

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL Law Group**
345 Franklin St.
San Francisco, CA 94102
Telephone:      415.678.5050
Facsimile:      415.358.8484

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| RJ, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>Cigna Health and Life Insurance Company, et al.,<br><br>             Defendants. | Case No. 5:20-cv-02255<br><br>Hon. Edward J. Davila<br><br>**Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Class Certification** |

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040

**Table of Contents**

I.   Introduction ..................................................................................................................1

II.  Analysis .......................................................................................................................2

  A.  Plaintiffs have shown common issues under Rule 23(a). .....................................2

    1.  The primary common issue in this case is Viant—not plan language. ..........................2

    2.  Even if the putative Class members' plans were at issue, they are "substantially similar" as it relates to the issues in this case. .......................................3

    3.  There are not four "buckets" of class members that defeat commonality. (Viant payments are not "offers.") ...................................................................7

    4.  The *Ingenix* cases cited by Defendants are distinguishable and in any case support certification here. .................................................................12

    5.  Defendants' other attempts to individualize Plaintiffs' claims are without merit. ...................................................................................................13

  B.  Plaintiffs have shown common RICO Issues .......................................................15

    1.  There is a common question of Cigna's false "UCR" representations. .......................16

    2.  Plaintiffs do not need to show common evidence of reliance at this stage, but in any case, have done so. ...........................................................16

    3.  Plaintiffs have common evidence of RICO injury ...........................................17

  C.  Plaintiffs have shown typicality and adequacy under Rule 23(a). .......................18

  D.  Plaintiffs satisfy Rule 23(b). ...........................................................................19

III. Conclusion ..................................................................................................................21

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Amara v. CIGNA Corp.*,
    775 F.3d 510 (2d Cir. 2014)......................................................................................8

5

6

*Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*,
    983 F.3d 435 (9th Cir. 2020) ..................................................................................15

7

8

*In re Blue Cross of W. Pennsylvania Litig.*,
    942 F. Supp. 1061 (W.D. Pa. 1996)........................................................................13

9

10

*Brooks v. Educators Mut. Life Ins.*,
    206 F.R.D. 96 (E.D. Pa. 2002)...........................................................................3, 18

11

12

*Burdick v. Union Sec. Ins.*,
    2009 WL 4798873 (C.D. Cal. Dec. 9, 2009) .........................................................19

13

*Caranci v. Blue Cross & Blue Shield of Rhode Island*,
    1999 WL 766974 (D.R.I. Aug. 19, 1999) ..............................................................19

14

15

*Christoffersen* v. *Marchese, Inc.*,
    2020 WL 4926663 (E.D. Wis. Aug. 21, 2020) ......................................................15

16

17

*Churchill v. Cigna Corp.*,
    2011 WL 3563489 (E.D. Pa. Aug. 12, 2011) ...........................................................6

18

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011)................................................................................................20

19

20

*Cole v. Asurion Corp.*,
    267 F.R.D. 322 (C.D. Cal. 2010) ...........................................................................11

21

22

*D'Amico v. CBS Corp.*,
    297 F.3d 287 (3d Cir. 2002)...................................................................................13

23

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ....................................................................................8

24

25

*Des Roches v. California Physicians' Serv.*,
    320 F.R.D. 486 (N.D. Cal. 2017)...........................................................................13

26

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*,
    2016 WL 5938722 (C.D. Cal. May 16, 2016) ..........................................................5

27

*Elkies v. Johnson & Johnson Servs., Inc.*,
    2018 WL 11223465 (C.D. Cal. Oct. 18, 2018)................................................20, 21

28

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ...................................................................................10, 14

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .......................................................................3

*Forest Ambulatory Surgical Assocs. v. United HealthCare Ins.*,
   2011 WL 2748724 (N.D. Cal. July 13, 2011) ..................................................................14

*Franco v. Conn. Gen. Life Ins.*,
   299 F.R.D. 417 (D.N.J. 2014)................................................................................12, 18, 20

*Franco v. Connecticut Gen. Life Ins.*,
   289 F.R.D. 121 (D.N.J. 2013), *aff'd*, 647 F. App'x 76 (3d Cir. 2016) .......................... *passim*

*Fuller v. Fruehauf Trailer Corp.*,
   168 F.R.D. 588 (E.D. Mich. 1996) ......................................................................................6

*Geddes v. United Staffing All. Emp. Med. Plan*,
   469 F.3d 919 (10th Cir. 2006) ......................................................................................6, 13

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................................................14, 17

*Hill v. UnitedHealthcare Ins.*,
   2016 WL 11520269 (C.D. Cal. Oct. 26, 2016) ................................................................13

*J.T. v. Regence BlueShield*,
   291 F.R.D. 601 (W.D. Wash. 2013) .................................................................................19

*Jones v. United Behav. Health*,
   2021 WL 1318679 (N.D. Cal. Mar. 11, 2021) .................................................................15

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ..........................................................................................17

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   609 F. Supp. 3d 942 (N.D. Cal. 2022) .......................................................................16, 17

*Kamar v. Radio Shack Corp.*,
   254 F.R.D. 387 (C.D. Cal. 2008) ......................................................................................14

*Kihn v. Bill Graham Archives, LLC*,
   445 F. Supp. 3d 234 (N.D. Cal. 2020), *rev'd and remanded on other grounds*,
   2022 WL 18935 (9th Cir. Jan. 3, 2022) ...........................................................................15

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) *abrogated in part on other grounds by Bridge
   v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)..............................................................16

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

*Lacko v. United of Omaha Life Ins.*,
    926 F.3d 432 (7th Cir. 2019) ........................................................................20

*LD v. United Behav. Health*,
    2023 WL 2806323 (N.D. Cal. Mar. 31, 2023).............................................20

*Med. Soc'y of New York v. UnitedHealth Grp. Inc.*,
    2019 WL 6888613 (S.D.N.Y. Dec. 18, 2019) ...........................................5, 15

*Miller v. United Welfare Fund*,
    72 F.3d 10664 (2d Cir. 1995)........................................................................20

*Negrete v. Allianz Life Ins. of N. Am.*,
    287 F.R.D. 590 (C.D. Cal. 2012) ..................................................................16

*Noren v. Jefferson Pilot Fin. Ins.*,
    378 F. App'x 696 (9th Cir. 2010) .................................................................13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ...........................................................................7

*Owen v. Regence Bluecross Blueshield of Utah*,
    388 F. Supp. 2d 1318 (D. Utah 2005)...........................................................19

*Pa. Chiro. Ass'n v. Blue Cross Blue Shield Ass'n*,
    286 F.R.D. 355 (N.D. Ill. 2012).....................................................................15

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms.*
    *Co.*,
    943 F.3d 1243 (9th Cir. 2019) .......................................................................17

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ......................................................................6, 10

*Postawko v. Missouri Dep't of Corr.*,
    2017 WL 3185155 (W.D. Mo. July 26, 2017), *aff'd*, 910 F.3d 1030 (8th Cir.
    2018) ................................................................................................................3

*Premier Health Ctr., P.C. v. UnitedHealth Grp.*,
    2014 WL 7073439 (D.N.J. Dec. 15, 2014).....................................................19

*RJ v. Cigna Health & Life Ins.*,
    2022 WL 4021890 (N.D. Cal. Sept. 2, 2022) ...............................................15

*Santillan v. Gonzales*,
    388 F. Supp. 2d 1065 (N.D. Cal. 2005) ...........................................................7

*In re Seagate Tech. II Sec. Litig.*,
    843 F. Supp. 1341 (N.D. Cal. 1994)...............................................................10

*Smith v. I.A.T.S.E. Loc. 16 Pension Plan*,
  2019 WL 6327554 (N.D. Cal. Nov. 26, 2019) ...............................................................13, 15

*Smith v. United HealthCare Servs., Inc.*,
  2002 WL 192565 (D. Minn. Feb. 5, 2002) ...................................................................6

*Spann v. J.C. Penney Corp.*,
  307 F.R.D. 508 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312 (C.D. Cal. 2016) ......................2

*Spinedex Phys. Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*,
  770 F.3d 1282 (9th Cir. 2014) ...............................................................................14

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)................................................................................6, 18

*United States v. Bingham*,
  653 F.3d 983 (9th Cir. 2011) ..............................................................................18

*United States v. Esquivel-Rios*,
  725 F.3d 1231 (10th Cir. 2013) ............................................................................2

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
  546 F.3d 620 (9th Cir. 2008) ..............................................................................13

*Vega v. Ocwen Fin. Corp.*,
  2015 WL 1383241 (C.D. Cal. Mar. 24, 2015)..............................................................18

*Wachtel v. Guardian Life Insurance Co.*,
  223 F.R.D. 196 (D.N.J. Aug. 5, 2004) ...................................................................6, 14

*Waters Corp. v. Millipore Corp.*,
  2 F. Supp. 2d 66 (D. Mass. 1997), *aff'd*, 140 F.3d 324 (1st Cir. 1998).................................3

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  2014 WL 6888549 (C.D. Cal. Sept. 3, 2014) ............................................................6, 12

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) ...................................................................14, 15

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
  571 F.3d 953 (9th Cir. 2009) ...............................................................................3

*Wit v. United Behav. Health*,
  58 F.4th 1080 (9th Cir. 2023) ........................................................................1, 19, 20

*Yokoyama v. Midland Nat. Life Ins.*,
  594 F.3d 1087 (9th Cir. 2010) .............................................................................16

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

I.    **Introduction**

   This case involves a common thread: Every intensive outpatient ("IOP" or "H0015") claim in the putative Class was improperly underpriced by cost-containment tool Viant OPR ("Viant")—*regardless* of plan language—based on inappropriate data. Plaintiffs seek class certification to address this common wrong. Absent certification, the putative Class members have no real remedy—the number and value of claims make individual suits inefficient and cost prohibitive. Defendants oppose certification with four primary arguments: (1) the putative Class contains subgroups—based on plan types and how providers handled claims—that defeat certification; (2) claims at issue were resolved through negotiation because payments made based on Viant were only "offers" to providers; (3) Plaintiffs fail to establish an adequate damages model that addresses damages on a classwide basis or the concerns raised in the Ninth Circuit's *Wit* decision; and (4) Plaintiffs are not typical or adequate because Plaintiffs assigned their claims, are no longer insured by Cigna, and failed to exhaust administrative remedies. Each argument lacks legal or factual merit.

   First, this case does not include any claims that were negotiated and adjusted, that depend in any way on plan language, or for which additional amounts were paid. *Every* claim was priced and paid at the Viant-determined amount. After payment, one of three things happened: 1) no further payments were made; 2) a negotiation occurred that resulted in *some* additional payment; or, 3) an additional payment in full was made based on the maximum reimbursable charge. Only the first of these groups is at issue: The only claims in the putative Class are the many thousands of claims underpaid by Viant using inappropriate data. These claims were never negotiated or repriced and individual plans play no role in determining liability. As is undisputed, Defendants priced every claim at issue through Viant without regard to plan language.

   Second, until Defendants faced this and other lawsuits, no patient or provider in the world ever thought that Viant payments were mere *initial offers*. This argument is nothing more than *post hoc* legal sophistry and flatly contradicted by the weight of evidence in this case.

   Third, since Plaintiffs' motion was filed, and based in part on newly acquired evidence provided in Defendants' Opposition, Plaintiffs have elaborated on their damages model. In their

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

1    experts' rebuttal report, Reply Ex. 1, Plaintiffs' experts calculate the harm to putative Class

2    members in detail. This model recreates the Viant methodology, but instead of applying that

3    methodology to inappropriate data as Defendants did, it relies on Cigna's own data to determine

4    appropriate charge percentiles and payment amounts. This model has two components: The first

5    component calculates damages based on what Plaintiffs should have been paid; the second

6    component calculates improper fees collected by Defendants.

7         Fourth, the named-Plaintiffs are typical and adequate. Each Plaintiff: (1) received

8    medically necessary IOP treatment that was underpriced and paid at the Viant amount *without*

9    *any further payment*; (2) disputed the pricing of their IOP claims; (3) received balance bills from

10   their providers; and (4) paid those balance bills. Only the first is required for the Plaintiffs and

11   putative Class members to have suffered harm.

12   **II.    Analysis**

13        **A.    Plaintiffs have shown common issues under Rule 23(a).**

14        Defendants' principal argument is that Plaintiffs fail to establish commonality under Rule

15   23(a). Dkt. no. 166 ("Opp.") at 20–36. Their argument is premised primarily on differences

16   among putative Class members' plans. *See* Opp. at 21–23. They misunderstand this case.

17   Although plan language is *one* basis for establishing commonality in this case, it is not the only

18   one. *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015), *modified*, 314

19   F.R.D. 312 (C.D. Cal. 2016). Here commonality is established primarily by Defendants' use of

20   Viant to price IOP claims with irrelevant data sources.

21        1.    **The primary common issue in this case is Viant—not plan language.**

22        This case is about the uniform, indiscriminate use of Viant to price IOP claims based on

23   bad data. As stated by now-Justice Gorsuch, "[g]arbage in, garbage out. Everyone knows that

24   much about computers: you give them bad data, they give you bad results." *United States v.*

25   *Esquivel-Rios*, 725 F.3d 1231, 1234 (10th Cir. 2013). Here, Viant priced IOP claims with bad

26   data and gave bad results. Nobody disputes that these claims were valid, payable, and medically

27   necessary. *See, e.g.*, dkt. No. 148 ("Pls. Mot.") Exs. 28–29 (evidencing payment). Nobody

28   disputes that Cigna applied the Viant methodology to all these claims *without regard to plan*

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

*language. See, e.g.*, Pls. Mot., Ex. 10 at ¶ 17 (Ralston Declaration) (admission by former MultiPlan executive that claims were "priced in exactly this same automated way using an identical methodology regardless of plan language"); *id.* Ex. 9 (Praxmarer Depo.) at 51:9–14. In fact, Plaintiffs do not dispute the use of charge percentiles to price IOP claims *per se*. The principal issue—and the common issue—is the data source Viant used to calculate IOP claim prices. *See* Pls. Mot. Ex. 10 at ¶ 14 (Viant data is "at its core, incompatible for use in pricing [IOP] claim."). Notably, none of Defendants' experts opine that the data used by Viant was appropriate for pricing IOP claims. *See, e.g.*, Opp. Ex. 9 (May Depo.) at 72:15–73:15, 82:23–84:15; Reply Ex. 10 (Baker Depo.) at 149:6–150:8. Defendants themselves admit that none of their plans support Viant's use of inappropriate data, as evidenced by their assertion of their new "it was only an offer" defense. Opp. at 7–10.

The Court does not need to delve into individual plan language to resolve common issues. *Cf. Waters Corp. v. Millipore Corp.*, 2 F. Supp. 2d 66, 79 (D. Mass. 1997), *aff'd*, 140 F.3d 324 (1st Cir. 1998) (where both parties agreed on plan application, court addressed only "method of calcula[tion]"); *see Brooks v. Educators Mut. Life Ins.*, 206 F.R.D. 96, 101 (E.D. Pa. 2002) (improper methodology for calculating UCR supported certification over other individual issues). Just as the Defendants do, the Court can assume that Viant applies commonly and uniformly to the putative Class members' claims. *See Postawko v. Missouri Dep't of Corr.*, 2017 WL 3185155, at *10 (W.D. Mo. July 26, 2017), *aff'd*, 910 F.3d 1030 (8th Cir. 2018); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014); *cf. In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (defendants' uniform treatment "bear[s] heavily" on predominance and superiority). Indeed, as addressed below, Plaintiffs' damages models calculate damages by applying Viant but with *appropriate* data sources—Cigna's own IOP claims data. *See* Reply Ex. 1 (RPC Rebuttal) ¶¶ 16, 55–61.

## 2. **Even if the putative Class members' plans were at issue, they are "substantially similar" as it relates to the issues in this case.**

Although the Court does not need to assess plan language to resolve common issues here, the plans at issue are nevertheless "substantial[ly] similar[]" to warrant class treatment. *Franco v. Connecticut Gen. Life Ins.*, 289 F.R.D. 121, 135 (D.N.J. 2013) ("*Franco I*"), *aff'd*, 647 F. App'x

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave. NW
Suite 1000
Washington, DC 20037
Telephone 202.677.4040

-3-

1   76 (3d Cir. 2016). Any differences do not impact the common issues. At most, there are two

2   relevant plan types at issue: MRC1 and MRC2. *See* Pls. Mot. Ex. 4 (plan language chart). For

3   MRC1 plans, benefits were covered at a specified percentile of charges for similar services in the

4   same geographic area. For MRC2, benefits were covered at a specified percentage of the

5   Medicare schedule rate for similar services when a Medicare rate exists. When no Medicare rate

6   exists, MRC2 plans default to the MRC1 methodology. *See, e.g., id.*; Opp. at 2–3 (describing

7   plan language). Both of these plan types are a kind of usual, customary, and reasonable ("UCR")

8   methodology in that both types of plans determine reimbursement based on some percentile—

9   typically 80th percentile—of how similar services are priced. Pls. Mot. Ex. 6 at ¶¶ 5–6 (Hall

10  Expert Report); Reply Ex. 4 (Hall Rebuttal Report). Not one plan document mentions MultiPlan,

11  Viant, or the low percentile level applied by Viant. Pls. Mot. Ex. 4; Reply Ex. 4 at 2–5.

12          Although there are superficial differences in some plans regarding their articulations of

13  MRC1 and MRC2, these differences are immaterial to the common issues here. Pls. Mot. Ex. 6

14  at ¶¶ 5–6 ("[T]he substance [of plan provisions] remains the same despite . . . different labels");

15  Reply Ex. 4 at 6–7. Cigna did not internally alter application of its MRC1 and MRC2 programs

16  based upon any individual plan's language describing the program. It applied the Viant pricing

17  tool uniformly regardless of the MRC program. Pls. Mot. Ex. 8 (Beckstead Depo.) at 68:17–69:2.

18  With respect to MRC1 language, Cigna interchangeably refers to MRC1 as usual and customary

19  throughout plan language and internal documentation, and whatever the language, the substance

20  remains the same. Pls. Mot. Ex. 6 ¶ 5; Reply Ex. 4 at 2–5. Similarly, Cigna's arguments with

21  respect to MRC2 plan language fail. Cigna attempts to find variations within the specific

22  percentages that employers may use to set the fee schedule. Opp. at 12–13. All these plans,

23  however, provide that when a Medicare-based fee schedule does not apply, as is undisputedly the

24  case for IOP claims, payment defaults to the MRC1 methodology and is based on the "80th

25  percentile of charges made by providers of the service or supply in the geographic area where it

26  is received." Reply Ex. 4 at 2–5. Despite Defendants' attempts to "gapfill" these to a different

27  code which is payable by Medicare, the plain language of the plans already contemplated how

28  these claims should have been priced. *Id.*; Reply Ex. 1 ¶ 53. Further, Plaintiffs' experts opined

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

-4-

and testified to the inappropriateness of the actual crosswalk Defendants used. Reply Ex. 1 at ¶¶ 15, 29–32, 34, 36–38, 51–53; *id.* Ex. 11 (Luke Depo.) at 78:18–79:13, 234:6–13, 242:10–244:16; *id.* Ex. 12 (Piper Dep.) at 157:11–158:23, 162:6–164:14, 165:14–166:5.

The common thread of all these plans is that they reimburse claims based on how similar providers charge for similar services.[1] *See, e.g.*, Opp. at 2 (acknowledging MRC plans price claims based on "similar services in a similar geographic area"), 12 ("DS's claims [under MRC2 plan] paid using Viant rates, not MRC2")[2]; *see also* Reply Ex. 12 at 89:10–23. They were part of one common Maximum Reimbursable Charge program—or, at worst, two similar programs, MRC1 and MRC2. Pls. Mot. Ex. 6 ¶ 5. Defendants did not reimburse claims based on charges by *similar providers* for *similar services*; instead, they used data that, at all times, was "incompatible," "inappropriate," and "inadequate" to price IOP claims. Pls. Mot. Ex. 10 ¶¶ 14, 34; *id.* Ex. 7 ¶¶ 24, 32; Reply Ex. 1 ¶¶ 14, 15. Accordingly, the Court need not consider differences in what percentiles plans called for or the specific wording each plan uses to describe UCR.[3] *See, e.g.*, *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, 2016 WL 5938722, at *1 (C.D. Cal. May 16, 2016) (concept of UCR same despite "slight or minor variations" in how described); *Med. Soc'y of New York v. UnitedHealth Grp. Inc.*, 2019 WL 6888613, at *2 (S.D.N.Y. Dec. 18, 2019) (uniform policy creates common question). What matters is that each plan required Defendants to reimburse based on similar claims and Defendants failed to do so.

Plaintiffs, like Defendants, are willing to accept that Viant can be used for determining reimbursement under the putative Class members' claims—they dispute only the underlying data used by that methodology. Put another way, the specific wordings of each plan are not relevant

---

[1] This is true even where gapfilling (or "crosswalking") may be required, as stated in the plans and acknowledged by Defendants. *See* Opp. at 2–3, 11, 13 (gapfilling determined based on "similar type of service"). Notably, the Defendants' assertion that "Cigna gapfilled using Medicare's rates for partial hospitalization . . . services," Opp. at 13, is not supported by the testimony or report of either of Defendants' experts and is thoroughly rejected by Plaintiffs' own. *See* Reply Ex. 1 (RPC Rebuttal Report) at ¶¶ 51–53.

[2] Defendants elsewhere attempt to argue, despite this admission, that MRC2 claims are not paid through Viant, even though they always are for cost-containment purposes. *See* Opp. at 18.

[3] Indeed, even if the Court accepts Defendants' argument that UCR does not have a uniform meaning in *some* sense, the Court could still find that whatever the variations of UCR, each commonly required reference to sufficiently similar kinds of services.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone 202.677.4040

to determining whether it is appropriate to price IOP claims based on data that has nothing to do with IOP. To hold otherwise and permit the use of data that bear no relation to IOP claims to price IOP claims would be a "virtually meaningless" interpretation and, by definition, arbitrary and capricious. *See Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 930 (10th Cir. 2006). Courts often find commonality in similar situations. *See, e.g.*, *Wachtel v. Guardian Life Insurance Co.*, 223 F.R.D. 196, 213 (D.N.J. Aug. 5, 2004) (citing cases and finding "existence of different plans does not outweigh the predominance of the common questions"), *vacated and remanded on other grounds*, 453 F.3d 179 (3d Cir. 2006); *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 596 (E.D. Mich. 1996) ("Common questions are present [if plans] consistent on key points."); *Smith v. United HealthCare Servs., Inc.*, 2002 WL 192565, at *3 (D. Minn. Feb. 5, 2002) (similar); *Churchill v. Cigna Corp.*, 2011 WL 3563489, at *4 (E.D. Pa. Aug. 12, 2011) (plan variation "not significant enough" to defeat commonality when plaintiffs "harmed by Cigna's uniform policy"). The key common issue is the data, which has nothing to do with plan language. It is no different than if Defendants chose to price claims based on lottery numbers or zodiac charts. No one would doubt that such a practice would create common issues that did not require a case-by-case analysis of plan language. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013) (arbitrary and capricious pricing scheme warrants certification despite different contracts). Defendants cannot shield themselves from liability by tinkering with a few words that have nothing to do with their conduct.

This is not a line drawing case: It is a "yes-no" question of whether, under *any* plan, Viant can price IOP claims based on source data that has nothing to do with IOP claims. *See Parsons v. Ryan*, 754 F.3d 657, 684 (9th Cir. 2014). It is not simply that Viant is using artificially depressed but otherwise relevant data to price IOP claims—like in the Ingenix cases—or applying an unfavorable, but theoretically permissible methodology that Plaintiffs don't like and think strays too far from plan requirements—like in *Franco I*. 289 F.R.D. at 136–37. Defendants are using bad data that make their payment calculations categorically incorrect.

Another key common aspect of this case is that it is specific to IOP claims for treatment provided by out-of-network providers. *Compare In re WellPoint, Inc. Out-of-Network UCR*

*Rates Litig.*, 2014 WL 6888549, at *3 (C.D. Cal. Sept. 3, 2014) (plaintiffs "weld together the claims of millions of subscribers and providers"). Not one plan document produced by Defendants includes language regarding the pricing of IOP services specifically. *See* Pls. Mot. Ex. 4. The key issue of IOP pricing data is one the Court can resolve without looking into plan language because plan language will not address it. The parties, plans, and common sense all agree that reimbursement must relate in some meaningful way to the kinds of services provided. *See, e.g.*, Opp. at 11, 13; Pls. Mot. Ex. 6 ¶¶ 5–6. Plaintiffs say Defendants failed to do that, and Defendants disagree. The Court can resolve that dispute for tens of thousands of plaintiffs in "one stroke"—without having to consider plan language. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022). Indeed, as discussed further below, Plaintiffs' proposed damages model does exactly that by applying Viant's methodology using appropriate data. *See* section II.D; Reply Ex. 1 (outlining damages model).

3.  **There are not four "buckets" of class members that defeat commonality. (Viant payments are not "offers.")**

Defendants also try to defeat commonality by creating artificial differences among class members. They divide the relevant claims into four "buckets": (1) claims resolved through bill negotiations, (2) MRC1 claims, (3) MRC2 claims, and (4) VOB call claims. This is an attempt to inject individual issues where none exist: The first bucket is not part of the proposed Class, the second and third buckets are not materially different for the purposes of resolving the common issues in this case, and the fourth bucket is not a bucket at all but a standard of practice that applies to the actions of providers prior to admitting patients. In addition, even if the Court were convinced additional subclasses were warranted, the Court has discretion to change, narrow, or otherwise divide the proposed class into subclasses as it deems appropriate. *See, e.g.*, *Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1071–72 (N.D. Cal. 2005); Fed. R. Civ. P. 23(c)(5).

a.  The proposed Class does not include negotiated and adjusted claims. Viant payments were not "offers" that providers accepted.

The proposed Class *does not include* any claims that were resolved through actual negotiations. Pls. Mot. at 1–2 (proposed class definition). The proposed class includes only claims priced by Viant for cost-containment *without further payment by Defendants*. Claims

1    resolved through genuine negotiations are not, by definition, claims priced and paid at the Viant-

2    determined amount. Defendants attempt to muddy this issue by arguing, for the first time, that

3    Viant-based payments were merely *offers* that began negotiations with providers on behalf of—

4    but unknown to—Cigna members. This argument does not withstand even the barest scrutiny.

5    When people provide a service and receive a payment for that service, they do not assume

6    payment is an offer beginning the process of negotiation. That's common sense. Defendants'

7    attempt to argue otherwise is just a gamble—a *post hoc* rationalization for their bad conduct.[4]

8         Indeed, as the record demonstrates, providers did not treat Viant payments as offers.

9    Reply Exs. 15 (Desert Cove Declaration), 16 (Westwind Recovery Declaration), 17 (PCI Centers

10   Declaration), 18 (New Life Declaration); Pls Mot. Ex. 16 at 28:23–29:16. Indeed, there was no

11   reason that they should. Providers received payment for the relevant claims *before* they even

12   knew the claims were priced by Viant. No provider was told during a VOB call that medically

13   necessary claims would be paid with a negotiable, initial offer. *See id*. Negotiations on amounts

14   paid occurred only *after* a patient received a balance bill. Otherwise, MultiPlan goes "forward

15   with the assumption that the provider is satisfied with the payment"—an assumption never

16   shared with the patient or provider—leaving no room for any "counteroffer." Pls. Mot. Ex. 5 at

17   284:9–285:6; *see id.* Ex. 17 at 78:13–21 (noting Viant cannot negotiate or adjust a claim unless

18   there is "evidence of balance billing"). And when claim prices are sent on from MultiPlan to

19   Cigna, they are "closed out." Pls. Mot. Ex. 5 at 104:17–105:5; *id.* Ex. 9 at 29:1–30:4. In fact,

20   many providers were not informed about Viant's involvement in claim pricing, even when

---

22   [4] The Defendants also hypothesize that some putative Class members could be worse off if
     Plaintiffs prevail. *See* Opp. at 5, 25. They provide three "hypothetical," but unrealistic examples
23   in support. It is extremely unlikely, however, that putative Class member would be worse off
     under Plaintiffs' damages models. *See Amara v. CIGNA Corp.*, 775 F.3d 510, 521 (2d Cir. 2014)
24   (rejecting similar argument where defendant failed to identify potentially harmed members). For
     one, each example assumes the patient is below the out-of-pocket maximum ("OPM"). Opp. Ex.
25   7 ¶ 64. This is extremely unrealistic given that most patients receiving substance abuse treatment
     will exceed deductibles and shatter the OPM limit. *See* Reply Ex. 1 ¶ 47; *see also id.* Exs. 7, 22.
26   Moreover, the 'potentially harmed' members cited by Dr. May, Opp. Ex. 8 figs. 16–17, are not
     even putative class members. *See* Reply Ex. 23. In any case, there is no requirement that
27   plaintiffs seeking class certification show that every putative class member would be better off if
     the class action succeeds. *See, e.g., In re Deepwater Horizon*, 739 F.3d 790, 814 (5th Cir. 2014)
28   (citing cases); *Amara*, 775 F.3d at 521.

-8-

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

providers asked Cigna that question specifically. Pl. Mot. Ex. 15 at 267:16–268:2, 270:8–270:16. Providers learned about Viant cost-containment and the reasoning behind the amount reimbursed only when they received EOBs or EOPs. *See* Pls. Mot. Ex. 28– 29. At least before March 2021, those forms stated: "We reduced the allowed amount based on Viant's facility bill review program. If you have questions about this discount contact Viant at 866.233.0121." Plt. Mot. Ex. 28; *see* Reply Ex. 22 (Incledon Letter).

That language cannot transform Defendants' payments into offers. Words matter. Nowhere do Defendants use the term "offer" or in any way indicate to providers that Defendants have opened the floor to negotiations. The language indicates the claims have been "paid"—in the past tense—closing the transaction. When shown this language, Defendants' expert would not opine that an 'offer' was understood by the providers. Reply Ex. 9 at 110:12–111:2, 112:16–114:23. At best, Defendants provided a telephone line for "questions" about Defendants' "discount." That does not an offer make. And indeed, providers who attempted to contact this number never found themselves on the other side of an open negotiation and never received a higher payment. *See* Reply Exs. 15–18.

To be sure, according to Defendants, as of March 23, 2021, they changed the language on the EOBs and EOPs: "[T]his is the Viant allowed amount offered, direct inquiries to 866.233.0121. Member: you may owe more if offer is not accepted." *See* Reply Ex. 22. This change almost certainly arose as a result of this litigation, and it absolutely makes clear that even Defendants knew that prior to March 2021 payments sent to providers were not offers and would never be interpreted as offers. Reply Exs. 15–18.[5] Notably, Defendants have not provided any provider declarations that directly support their "offer" theory. Defendants have provided three declarations, but none of these providers actually suggest that they treated Viant payments as offers. *See* Opp. Ex. 8 ¶ 86; *id.* Exs. 25–26. During the course of discovery, Defendants have not produced a single explanation of benefit ("EOB") or explanation of payment ("EOP") referencing the supposed new "offer" language. In addition, Sean Petree, a senior manager of

---

[5] If the Court were to accept Defendants' position as to claims after March 23, 2021—it shouldn't—the Court could still certify the class as to claims prior to that time.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

Cigna's Special Investigation Unit, recognized all three providers as providers investigated by his unit—raising questions about these providers' motives. Reply Ex. 13 (Petree Depo.) at 146:4–16, 148:21–149:20; 150:8–9; *see* Reply Ex. 14 (Cigna Depo. in TML Recovery). Finally, Plaintiffs' new proposed damages model itself excludes any claims that were negotiated, adjusted, or otherwise paid at the maximum reimbursable charge. Reply Ex. 1. at ¶¶ 55–61. In sum, claims that were genuinely negotiated and adjusted are not within the proposed Class, and Defendants' gambit to make all claims priced by Viant into negotiations claims should be rejected.[6]

        b.    <u>The MRC1 and MRC2 buckets are not materially different with respect to the common issues relating to the putative Class.</u>

As for the differences in the MRC1 and MRC2 plans, those differences are immaterial to the common issues in this class as described above. *See* section II.A.2.

        c.    <u>The VOB bucket is not a separate bucket of claims but a common course of conduct relevant to the common issues.</u>

There is no unique VOB bucket of claims. The proposed class definition does not depend on the content or even existence of VOB calls. Pls. Mot. at 1–2. Nor is it VOB calls that make plan interpretation unnecessary, as Defendants suggest. *See* Opp. at 15; *see* section II.A.2. The core common issue in this case—Defendants' use of inappropriate data to price claims through Viant—does not turn on any of the phone calls at issue. The data was wrong for all claims at issue, whatever Defendants said. Of course, VOB calls—as well as prior authorization and utilization review calls—are important. They evidence Defendants' common course of conduct and provide context for Defendants' improper conduct. *In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006) ("common course of conduct" in oral representations satisfies Rule 23). They substantiate the expectations of providers regarding reimbursement of IOP claims and Defendants' deceptive practices. *See id.*; Pls. Mot. Ex. 16 at 223:8–224:5. Although these common practices do create additional common issues warranting class certification, they are not the sole or primary basis for commonality here and they "do not impede the generation of

---

[6] At the very least, the Court may consider the question of whether Viant payments were offers a common question fit for class treatment. *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1351 (N.D. Cal. 1994) (intent can form common question).

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

common answers" to the key issues. *See Parsons v. Ryan*, 754 F.3d 657, 684 (9th Cir. 2014).

But, even if this case did turn on the VOB calls, Defendants' argument that the phone calls are too individualized to allow for class certification is overstated. First, the differences Defendants emphasize do not relate to the core issue in this case. *See* Opp. at 15. For instance, Defendants' focus on differences in the phone calls relating to plan language does not matter when the common issue in this case is Viant pricing of claims *regardless* of plan language. *See* section II.A.2. What matters is that Defendants misled the providers about how they would be reimbursed as part of a "centrally orchestrated strategy." *See, e.g., Cole v. Asurion Corp.*, 267 F.R.D. 322, 327 (C.D. Cal. 2010). Second, whatever the superficial details of the calls, a single common course of conduct emerges: Defendants misleadingly represented to providers that their claims would be reimbursed at the maximum reimbursable charge—based on charges of similar providers in the same geographic area for IOP claims—when in fact Defendants knew otherwise. *See* Pls. Mot. Ex. 26–27; *see also id.* Ex. 15 at 267:16–268:2 ("[Plan will] be paid based on a usual and customary."), 312:23–313:2 (similar); *id.* Ex. 16 at 221:3–12 (provider had no reason to believe claims would be priced by Viant); *id.* Ex. 17 at 85:1–13 (MultiPlan made Cigna aware of its Viant pricing). The common point of the calls—*all* the calls—is that Defendants did not tell providers that their claims would be priced by Viant based on data that had nothing to do with IOP claims.[7] Courts in the Ninth Circuit have routinely certified classes where the claims involved varied oral interactions, where there was some common thread. *See, e.g., Cole*, 267 F.R.D. at 327 (in such situations "the center of gravity of the fraud transcends the specific details of oral communications"); *see also* Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendments ("[F]raud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action."). Accordingly, the minor factual differences in phone calls emphasized by Defendants do not overcome the common issues or supersede the Defendant's common course of conduct.

---

[7] Notably, Defendants cite to Murphy's testimony to suggest putative Class members were told that their claims would be repriced using Viant. Opp. at 15. Murphy's testimony does not support that assertion. She testified that Cigna representatives use "Benefits Access" to gather benefits information during calls. Benefits Access does not reference Viant or MultiPlan—it references only "bill negotiation services." Pls. Mot. Ex. 15 at 33:1–34:21, 49:1–12.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave. NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

4.    **The Ingenix cases cited by Defendants are distinguishable and in any case support certification here.**

Defendants cite several Ingenix cases to support the proposition that commonality cannot be established where plan language differs among the class and its claims are premised on a flawed pricing methodology. *See* Opp. at 21–30; *see, e.g.*, *Franco I*, 289 F.R.D. 121; *Franco v. Conn. Gen. Life Ins.*, 299 F.R.D. 417 (D.N.J. 2014) ("*Franco II*"); *WellPoint*, 2014 WL 6888549. These cases are distinguishable and—in important ways—*support* certification here.

First, in the *Franco* cases, commonality *was* established for the class, even if class certification was denied on other grounds. The court found commonality present for the class's ERISA § 502(a)(1)(B) and (a)(3) claims based on the common factual questions raised by Cigna's use of the Ingenix database. *Franco I* at 131. Here, Plaintiffs similarly raise a common issue of whether Viant relied on inappropriate data. Second, the Ingenix cases involved significantly broader putative classes relating to *all* types of claims, rather than to specific types of services like IOP. For example, in *In re WellPoint*, an unreported case, the class included *all* subscribers to ERISA health plans for *all* claims processed using the Ingenix database without differentiation, creating a broad scope of plans and claims. 2014 WL 6888549, at *1–*3. In addition, these cases involved plans with clauses that allowed the defendants to modify reimbursement based on the "nature and severity" of a condition. *Id.* at *8–*9 (citing *Franco II*). This "call[ed] for investigation into the individual characteristics of the medical issue underlying the claim." *Id.* (quoting *Franco II*, 299 F.R.D. at 425). Here, the proposed class is much more tailored—to IOP claims—and does not implicate any medical severity clause or other individualized issues. Indeed, none of the claims were denied. All were deemed covered by Cigna and paid, albeit underpaid. Third, the key issue in the Ingenix cases was one of degree— whether the databases had artificially low claims data for reimbursement of all claim types. *See, e.g.*, *Franco II*, 299 F.R.D. at 428. That question of degree could, as the Ingenix courts seemed to think, create an individualized question, based on a particular plan or claim, of whether reimbursement was too low or whether Ingenix pricing was adequate.[8] Here, by contrast, the

---

[8] In fact, some plans in those cases even called for the use of Ingenix—another key distinguishing feature. *See*, *e.g.*, *WellPoint*, 2014 WL 6888549, at *6.

question relates to a difference of *kind*: Whether Defendants may price IOP claims based on data that has nothing to do with IOP claims. No plan language can salvage that position.

### 5.   Defendants' other attempts to individualize Plaintiffs' claims are without merit.

Defendants next raise a medley of arguments in an attempt to inject individualized issues into this class. These arguments are without merit.

**Standard of Review**: The Standard of Review issue does not overwhelm the common issues. Defendants argue that "individualized analysis is needed to determine what standard of review applies." Opp. at 29. Defendants overstate the requirements of Rule 23. As courts have repeatedly found, the fact that some ERISA plans may be subject to different standards of review does not defeat class certification "as long as the claims share a common factual core." *Hill v. UnitedHealthcare Ins.*, 2016 WL 11520269, at *4 (C.D. Cal. Oct. 26, 2016). Any individualized determinations regarding the appropriate standard of review, if any, are subordinate to this central question. Indeed, the possibility that the Court "will need to apply at most two different standards to the plans at issue" does not defeat commonality.[9] *See Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 502 (N.D. Cal. 2017); *see also Geddes*, 469 F.3d at 930.

**Exhaustion**: Defendants argue that Plaintiffs have failed to show that "***all*** putative class members satisfied exhaustion requirements." Opp. at 29–30. That is not what the law requires. Exhaustion is not always a requirement to recover under ERISA,[10] and even where exhaustion is required, there are many exceptions, including futility, inadequate remedy, and unreasonable procedures. *See Noren v. Jefferson Pilot Fin. Ins.*, 378 F. App'x 696, 698 (9th Cir. 2010) (outlining exceptions); *see also, e.g.*, *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002) (exhaustion not required for (a)(3) claims); *Smith v. I.A.T.S.E. Loc. 16 Pension Plan*, 2019 WL 6327554, at *3 (N.D. Cal. Nov. 26, 2019) (same). Further, exhaustion applies only after an adverse benefit determination requiring an appeal has occurred. *See, e.g.*, *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008); *In re Blue Cross of W. Pennsylvania Litig.*, 942 F. Supp. 1061, 1064 (W.D. Pa. 1996). As every claim at issues has been

[9] In addition, the Court could create subclasses to address Defendants' concerns, if appropriate.
[10] And, of course, Plaintiffs' RICO claims do not require exhaustion.

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

1    paid and medical necessity is not in dispute, it has not been established that there is an adverse

2    benefits determination requiring appeal. Moreover, exhaustion is only necessary when appeal is

3    explicitly required by plan documents, and Defendants have not pointed to any plan documents

4    that actually require exhaustion. *See Spinedex Phys. Therapy USA, Inc. v. United Healthcare of*

5    *Ariz., Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014); *see* also Opp. 29–30.

6           In addition, exhaustion of remedies is an affirmative defense rather than a pleading

7    requirement. *See Forest Ambulatory Surgical Assocs. v. United HealthCare Ins.*, 2011 WL

8    2748724, at *5 (N.D. Cal. July 13, 2011). At the certification stage, a class need only "provide

9    support" for its excuse (*i.e.*, futility) from the exhaustion requirement at this stage. *In re*

10   *WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 919 (C.D. Cal. 2012).

11   This generally requires showing that at least "*someone* unsuccessfully exhausted their

12   administrative remedies." *Id.* Here, Plaintiffs, even without knowledge of the flawed underlying

13   data used by Viant, nevertheless attempted to appeal their claims to no avail. *See* Reply Ex. 3

14   (Depo. of RJ) at 148:3–156:12 (describing RJ's appeals), 162:18–23 (similar). In fact, the

15   question of exhaustion here may itself present a classwide common question. In *Franco*, the

16   court found that "[t]o the extent the ERISA claims relate to Cigna's use of the Ingenix database

17   . . . the question of whether . . . futility . . . would excuse exhaustion would . . . apply to the entire

18   class." *Franco I*, 289 F.R.D. at 142 (citing *Wachtel*, 223 F.R.D. at 207–08).

19          **Defenses**: Defendants argue that potential defenses—like a statute of limitations

20   defense—preclude commonality. Opp. at 30–31. The mere existence of unique defenses,

21   however, does not preclude class certification. *See, e.g., First Alliance*, 471 F.3d at 995;

22   Newberg and Rubenstein on Class Actions § 3:45 (6th ed. 2022) (noting courts have "balked" at

23   such arguments). Where unique defenses do not substantially impact the class representatives'

24   ability to represent the class, courts routinely allow certification. *See, e.g., Kamar v. Radio Shack*

25   *Corp.*, 254 F.R.D. 387, 397 (C.D. Cal. 2008). Unique defenses may defeat class certification

26   only where they "threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*,

27   976 F.2d 497, 508 (9th Cir. 1992). In addition, courts generally require the opponent of class

28   certification to make a sufficiently clear showing that the alleged defense will occupy a

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

-14-

significant portion of the litigation before concluding that the unique defense precludes

certification. *See Kihn v. Bill Graham Archives, LLC*, 445 F. Supp. 3d 234, 247 (N.D. Cal.

2020), *rev'd and remanded on other grounds*, 2022 WL 18935 (9th Cir. Jan. 3, 2022).

Defendants have failed to make that showing. The possibility that some small number of putative

Class members may have their claims barred by statutes of limitations does not threaten to

overwhelm this litigation and can easily be dealt with by class notice or otherwise at later, merit

stages of the litigation. *Christoffersen* v. *Marchese, Inc.*, 2020 WL 4926663, at *3 (E.D. Wis.

Aug. 21, 2020) (rejecting similar argument).

    **Assignment**: Defendants argue that "assignment issues" preclude certification. Opp. at

31–32. The possibility of assignment does not preclude certification. *See, e.g.*, *Jones v. United*

*Behav. Health*, 2021 WL 1318679, at *6 (N.D. Cal. Mar. 11, 2021) (rejecting defendant's

assignment argument relating to typicality); *Franco I*, 289 F.R.D. at 132–33 (assignment did not

defeat typicality or standing); *Medical Society of New York*, 2019 WL 6888613, at *2 (S.D.N.Y.

Dec. 18, 2019) (rejecting assignment argument). Here, whether some putative Class members, in

theory, assigned their claims, the common issue is the same: the Viant pricing of their claims.

Notably, Defendants cite only two cases in support of this argument that involve class actions,

and neither of those cases are *patient* class actions—they are *provider* class actions. *See. e.g.*, *Pa.*

*Chiro. Ass'n v. Blue Cross Blue Shield Ass'n,* 286 F.R.D. 355 (N.D. Ill. 2012); *WellPoint*, 903 F.

Supp. 2d 880 (C.D. Cal. 2012); *see also Beverly Oaks Physicians Surgical Ctr., LLC v. Blue*

*Cross & Blue Shield of Illinois*, 983 F.3d 435, 441 (9th Cir. 2020) (waiver may be unenforceable

if claims administrator fails to raise issue until litigation).

    **Fiduciary Issue**: Defendants argue that MultiPlan is not a fiduciary in this case.

However, the court has already addressed this issue and rejected MultiPlan's efforts to dismiss

fiduciary claims against it. *See RJ v. Cigna Health & Life Ins.*, 2022 WL 4021890, at *11 (N.D.

Cal. Sept. 2, 2022).

    **B.**    **Plaintiffs have shown common RICO Issues.**

    As for Plaintiffs' RICO claims, Defendants first argue that the RICO class fails for the

same reasons as the ERISA class (*i.e.*, the claims require an analysis of the plan language). Opp.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

at 32. This argument is without merit for the same reasons explained above. *See* section II.A.2.

In addition, Defendants engaged in a common course of conduct by representing to providers in

phone calls that the claims at issue would be priced at UCR when Defendants knew otherwise.

*See* Pl. Mot. Ex. 26–27; *see Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004)

(affirming RICO class certification against health insurers based in part on defendant's

systematic practice of misrepresentations) *abrogated in part on other grounds by Bridge v.*

*Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

### 1.   **There is a common question of Cigna's false "UCR" representations.**

Defendants next argue that there are no common questions regarding the representations

made by Cigna in phone calls. Opp. at 32–33. They assume that Plaintiffs must establish that

every call was exactly the same and that every provider understood the calls identically. As

explained above, courts have held that a "centrally orchestrated strategy" involving phone calls

may justify class certification—that is, class certification may be appropriate even where phone

calls underlying the claims are individualized. *See* section II.A.3.c.

Defendants also attempt to individualize the claims by focusing on potentially different

understandings held by providers in response to the calls. Opp. at 39. These potential

individualized differences exist in any case involving oral representations, however, and do not

overcome the common factual and legal issues here. *See, e.g.*, *Yokoyama v. Midland Nat. Life*

*Ins.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *see also Negrete v. Allianz Life Ins. of N. Am.*, 287

F.R.D. 590, 602 n.5 (C.D. Cal. 2012) (*First Alliance* and *Yokoyama* "show why variations in the

language used by a defendant may be immaterial for purposes of class certification").

### 2.   **Plaintiffs do not need to show common evidence of reliance at this stage, but in any case, have done so.**

Defendants also argue that Plaintiffs have failed to provide common evidence of reliance.

Opp. at 33–35. Reliance in the RICO context is not intended to be a high bar and Plaintiffs

satisfy it. *See* Pls. Mot. at 17–20; *see, e.g.*, *Negrete,* 287 F.R.D. at 596. Indeed, Plaintiffs need

only show that "someone" can establish reliance. *See In re JUUL Labs, Inc., Mktg. Sales Pracs.*

*& Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 970 (N.D. Cal. 2022) (quoting *Bridge*, 553 U.S. at

658). Here, named Plaintiffs underwent Viant-underpaid IOP treatment, received balance bills

from their providers, and paid those balance bills. Pl. Mot. Ex. 28 (EOBs evidencing treatment);

Reply Ex. 2 at 18:18–19:8; 34:25 – 35:3 (noting unpaid portion of balance bill); 186:1–186:17

(noting partial payments of balance bill); 189:16–197:10 (similar); *id.* Ex. 7 (showing DS's

balance bill payment of $15,141.96); *id.* Ex. 3 at 77:2–77:4 (noting receipt of balance bill); *id.*

Ex. 8 (showing RJ's balance bill payment of $33,728.16).[11] The Plaintiffs' providers relied upon

Cigna's representations when deciding whether to admit the Plaintiffs to treatment and would not

have admitted Plaintiffs had they known their claims would be priced by Viant. Pl. Mot. Ex. 16

at 223:19–224:5. Putative Class members suffered similar injuries as a result of the same

scheme. That is enough reliance to satisfy Plaintiffs' burden at this stage. *See, e.g.*, *Painters &*

*Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1260

(9th Cir. 2019); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017) (potential

individualized issues of reliance did not defeat class certification on RICO claim). In addition,

reliance is not a basis for denial of class certification unless issues of individual reliance

predominate over common ones. *See Hanon*, 976 F.2d at 509; *In re JUUL Labs*, 609 F. Supp. 3d

at 970 (individualized reliance issues did not preclude RICO class).

### 3.  Plaintiffs have common evidence of RICO injury.

Defendants argue that Plaintiffs lack common evidence of a RICO injury. First, they

argue that establishing a RICO injury will require analyzing Plaintiffs' plans—an argument

addressed above. *See* section II.A.2. Second, they argue that Plaintiffs have offered no damages

model to prove the alleged injury. As explained below, Plaintiffs now have damages models that

do just that. *See* section II.D; Reply Ex. 1 (outlining damages model). Third, Defendants suggest

that Plaintiffs have offered "no methodology to isolate class members who actually paid a

balance bill, even though they are the only ones with potential RICO injury." Opp. at 35; *see also*

Reply Exs. 7–8, 19–20 (evidencing provider balancing billing and receipt of payment). At this

stage of the litigation, however, Plaintiffs do not require a method to isolate members who paid

balance bills. *See, e.g.*, *Franco II*, 156 F.R.D. 289 F.R.D. at 143 (finding that question of balance

---

[11] Providers also routinely sent balance bills to patients whose claims were repriced with Viant. *See* Reply Exs. 19 (Declaration of PCI Estate), 20 (Declaration of Summit Estate).

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

1   billing was a "question of remedy" that did not defeat certification); *Brooks v. Educators Mut.*

2   *Life Ins.*, 206 F.R.D. 96, 105–06 (E.D. Pa. 2002) (rejecting similar balance bill arguments). In

3   any case, Plaintiffs can easily identify all patients who were balance billed through the tools and

4   mechanisms available to them during the class notice period. Reply Ex. 1 ¶ 47.

5           In addition, even in the absence of balance billing, the denial of Plaintiffs' entitled

6   benefits and the imminent threat of economic loss can constitute a RICO injury, as outlined in

7   Plaintiffs' motion. Pls. Mot. at 17–20. Plaintiffs had a "protectable interest" in their health

8   benefits and that interest was injured when Defendants' refused to properly pay those benefits.

9   *See, e.g.*, *In re U.S. Foodservice*, 729 F.3d at 122; *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241,

10  at *8 (C.D. Cal. Mar. 24, 2015). Simply put, Plaintiffs paid for insurance that Defendants failed

11  to provide. Fourth, Defendants argue that the RICO claims against MultiPlan fail for lack of

12  reliance or proximate cause because Plaintiffs have no evidence that MultiPlan communicated

13  with providers before treatment. Opp. at 35. RICO allows, however, for the imposition of

14  liability on co-conspirators based on the actions of their co-conspirators, even if they did not

15  have direct communications with the injured parties. *See, e.g.*, *United States v. Bingham*, 653

16  F.3d 983, 998 (9th Cir. 2011). Importantly, MultiPlan was well aware of Cigna's scheme, shared

17  in its profits, and understood the foreseeable outcome of its use of Viant. *See, e.g.*, Pls. Mot. Ex.

18  18 at 31:11–16 (Cigna pays MultiPlan a percentage of Viant savings); *id.* Exs. 25 (evidence of

19  MultiPlan's vendor fees), 2 (Viant methodology whitepaper), 20 (Viant letterhead included on

20  Cigna letters). Accordingly, MultiPlan can be held liable for its collective actions with Cigna.

21          **C.      Plaintiffs have shown typicality and adequacy under Rule 23(a).**

22          Defendants next argue that Plaintiffs are not typical or adequate because: (1) Plaintiffs

23  assigned their claims, (2) are no longer insured by Cigna, and (3) failed to exhaust administrative

24  remedies. Opp. at 36–37. Defendants' assignment and exhaustion arguments are addressed

25  above. *See* section II.A.5. As to Defendants' argument that the named Plaintiffs are no longer

26  insured by Cigna, that is not a basis for denying certification here. The fact that Plaintiffs are no

27  longer insured by Cigna is relevant, if at all, only with respect to prospective relief—primarily

28  declaratory relief. *See, e.g.*, *J.T. v. Regence BlueShield*, 291 F.R.D. 601, 608 n.9 (W.D. Wash.

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

-18-

2013); *Burdick v. Union Sec. Ins.*, 2009 WL 4798873, at *7 (C.D. Cal. Dec. 9, 2009). It does not affect, however, the named Plaintiffs' ability to seek retrospective relief in this case—which forms the primary basis for suit. *See id.* In any case, courts have also allowed plaintiffs to seek prospective relief in similar situations particularly when past wrongs may recur, the plaintiffs' interests are not antagonistic to the class, and plaintiffs' pending claims with the insured have not yet been resolved. *See, e.g.*, *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 2014 WL 7073439, at *5 (D.N.J. Dec. 15, 2014) (rejecting similar argument; pending repayment demands function as "prospective" relief); *Caranci v. Blue Cross & Blue Shield of Rhode Island,* 1999 WL 766974, at *17 (D.R.I. Aug. 19, 1999) (rejecting several arguments seeking to disqualify former insured as plaintiffs; plaintiff "does not have a conflict of sufficient magnitude to make him inadequate to represent"); *Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1328 (D. Utah 2005) (former insured whose injury might recur would be adequate plaintiff).

Here, Plaintiffs have outstanding claims against Defendants—aligning their interests with insured class members. Plaintiffs have claims priced by Viant for which no further payments were made. *See* Reply Exs. 5 (rows 692-721 of "CLAIMS – CIGNA (secondary) 2019" tab and rows 413-432 of "CLAIMS - CIGNA (secondary) 2020" tab (showing unadjusted claims priced by Viant)), 6 ("Spreadsheet" tab (showing unadjusted claims priced by Viant)). Also, the Plaintiffs' injury can recur. *See* Reply Ex. 3 at 98:8–99:7 (noting RJ's repeated need for treatment); *id.* Ex. 9 at 220:18–224:10 (noting high relapse rates). Patients who suffer from substance use disorders may relapse, and the size and scope of Defendants' market share—as well as the possibility that Plaintiffs could resume prior employment and obtain similar benefits—make it plausible that Plaintiffs could suffer the same harm.

### D.    Plaintiffs satisfy Rule 23(b).

Defendants first argue that Plaintiffs cannot satisfy Rule 23(b)(1) or (2) because they seek a remedy not cognizable under *Wit*. Opp. at 37–39. Plaintiffs, however, now propose a damages model that addresses Defendants' concerns. Reply Ex. 1. This damage model starts with the parties underlying assumption—Viant may be applied to the claims at issue—but addresses Plaintiffs' common concern: the data. Plaintiffs' model applies the Viant methodology but

ARNALL GOLDEN GREGORY LLP
LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

-19-

ARNALL GOLDEN GREGORY LLP

LIMITED LIABILITY PARTNERSHIP
2100 Pennsylvania Ave., NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4040

1   instead of using irrelevant data, it uses Cigna's *own* IOP claims data to appropriately price the

2   services. This model has two components: The first component calculates damages based on

3   what Plaintiffs should have been paid, and the second calculates improper fees collected by

4   Defendants. This model is tied to Plaintiffs' theories of liability and the common classwide

5   issues, which is all that is required at this stage. *Elkies v. Johnson & Johnson Servs., Inc.*, 2018

6   WL 11223465, at *9 (C.D. Cal. Oct. 18, 2018); *see also Franco II*, 299 F.R.D. at 428–29.

7        Significantly, the damages Plaintiffs propose do not involve any "reprocessing" remedy,

8   as rejected in *Wit* and *LD*. *See Wit v. United Behav. Health*, 58 F.4th 1080 (9th Cir. 2023); *LD v.*

9   *United Behav. Health*, 2023 WL 2806323 (N.D. Cal. Mar. 31, 2023).[12] Here, Plaintiffs seek

10  damages primarily under Rule 23(b)(3), and Plaintiffs need nothing from Defendants to calculate

11  damages: Plaintiffs' models can calculate the putative Class members' damages based on claims

12  data already obtained from Cigna. Reply Ex. 1. In addition, for Plaintiffs' (a)(3) claim, and

13  unlike the plaintiffs in *Wit*, Plaintiffs can demonstrate that the remedy they seek comports with

14  remedies typically available in equity. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011).

15  Plaintiffs here are seeking the same remedies traditionally available in equity—disgorgement of

16  profits, accounting, and surcharge. The relief sought under (a)(3) includes these equitable

17  remedies in so far as Defendants' violation of their fiduciary duties resulted in improper profits.

18       Defendants next argue that Plaintiffs have not established the predominance requirement

19  of 23(b) for the same reasons they allege Plaintiffs did not establish commonality. Opp. at 39.

20  Their arguments are without merit for the same reasons addressed above with respect to

21  commonality. *See* II.A. Finally, Defendants argue that Plaintiffs have failed to establish an

22  _____

23  [12] To be sure, the decision in *Wit* is not applicable to this case for several reasons. First, there is
    no question of whether the claims in this case are valid, payable claims and thus no question of
24  whether Plaintiffs are entitled to benefits in the first place, as was the question in *Wit*. None of
    the claims at issue here have been denied. Second, Plaintiffs assert that benefits exist for all
25  members of the putative class. Plaintiffs in *Wit* did not assert that all class members were entitled
    to benefits. Third, in *Wit*, the Plaintiffs sought initial reprocessing to determine if coverage even
26  existed, a novel remedy the Court rejected. In contrast, this case involves a remedy that was
    typically available in equity. Fourth, Plaintiffs' claims also include RICO claims. In any case,
27  *Wit* is currently subject to an *en banc* petition and reprocessing is an appropriate remedy in other
    courts. *See, e.g.*, *Lacko v. United of Omaha Life Ins.*, 926 F.3d 432, 447 (7th Cir. 2019); *Miller v.*
28  *United Welfare Fund*, 72 F.3d 1066, 1073–74 (2d Cir. 1995).

adequate damages model. Opp. at 29. This argument is without merit for the same reasons

discussed above. Plaintiffs have created models tied to their theory of liability that addresses a

common issue. *See*, *e.g.*, *Elkies,* 2018 WL 11223465, at *9.

**III.**     <u>**Conclusion**</u>

For all the reasons stated above, Plaintiffs respectfully ask the Court to certify the

proposed Class, as well as any other such relief that the Court deems just and proper.


Dated: May 16, 2023                                  Arnall Golden Gregory LLP

                                        By:     */s/ Matthew M. Lavin*
                                                Matthew M. Lavin
                                                Aaron R. Modiano


                                                DL Law Group

                                        By:     */s/ David M. Lilienstein*
                                                David M. Lilienstein
                                                Katie J. Spielman

                                        Attorneys for Plaintiffs RJ, SJ, LW, MW, DS
                                        and the putative Class